Kenneth Stohner, Jr.
State Bar No. 19263700
Vienna F. Anaya
State Bar No. 24091225
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile

William W. Kannel, Esq. (#546724)
Admitted *pro hac vice*
Charles W. Azano, Esq. (#655775)
*Pro hac vice* application pending
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000 Telephone
(617) 542-2241 Facsimile

Joseph R. Dunn, Esq. (#238069)
Admitted *pro hac vice*
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road
San Diego, California 92130
(858) 314-1500
(858)314-1501

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 19-30283-hdh11 |
| MAYFLOWER COMMUNITIES, INC., | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF UMB BANK, N.A., AS
TRUSTEE, TO TRANSFER VENUE OF BANKRUPTCY CASE
TO SOUTHERN DISTRICT OF INDIANA**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................3

RELIEF REQUESTED...........................................................................................................6

BASIS FOR RELIEF.............................................................................................................6

A.     Legal Standard .......................................................................................................6

B.     Venue of the Bankruptcy Case Should be Transferred to the Southern District of Indiana for the Convenience of Parties ...............................................................8

        (i)     The Overriding Factor in this Case is that all of the Debtor's assets are located in Indiana, which strongly favors transfer of venue to the Southern District of Indiana ...................................................................8

        (ii)     The proximity of creditors and location of witnesses favors transferring venue to the Southern District of Indiana ..............................12

        (iii)     The economic and efficient administration of the estate favors transferring venue to the Southern District of Indiana ..............................14

        (iv)     The necessity for ancillary administration if a liquidation should occur favors transferring venue to the Southern District of Indiana...............14

        (v)     Indiana's interest in the Debtor and the Bankruptcy Case favors transferring Venue to the Southern District of Indiana.........................15

        (vi)     The proximity of the Debtor's board members and officers to this Court is outweighed by the other factors favoring transfer to the Southern District of Indiana ...........................................................15

C.     Venue of the Bankruptcy Case should be transferred to the Southern District of Indiana in the interest of justice .........................................................................16

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

In re Abacus Broadcasting Corp.,
154 B.R. 682 (Bankr. W.D. Tex. 1993) ..............................................................................8

In re Commonwealth Oil Ref. Co., Inc.,
596 F.2d 1239 (5th Cir. 1979) .............................................................8, 10, 14, 15

In re Crosby Nat'l Golf Club, LLC,
534 B.R. 888 (Bankr. N.D. Tex. 2015) ............................................................9, 10, 16

In re ERG Intermediate Holdings, LLC,
Case No. 15-31858, 2015 Bankr. LEXIS 3639 (Bankr. N.D. Tex. Oct. 26,
2015) .................................................................................................6, 8, 16, 17

In re Grand Dakota Partners, LLC,
573 B.R. 197 (Bankr. W.D. N.C. 2017) ........................................................... *passim*

In re Newport Creamery Inc.,
265 B.R. 614 (Bankr. M.D. Fla. 2001) ..................................................8, 9, 12, 15

In re Old Delmar Corp.,
45 B.R. 883 (Bankr. S.D.N.Y. 1985) ..............................................................9, 10, 11

In re Pavilion Place Assocs.,
88 B.R. 32 (Bankr. S.D.N.Y. 1988) ..............................................................9, 10, 11, 17

In re Pinehaven Assoc.,
132 B.R. 982 (Bankr. E.D.N.Y. 1991) ............................................................. *passim*

In re Pope Vineyards,
90 B.R. 252 (Bankr. S.D. Tex. 1988) ..................................................9, 10, 15

In re Rehoboth Hospitality, LP,
Case No 11-12798, 2011 Bankr. LEXIS 3992 (Bankr. D. Del. Oct. 19, 2011) ............... *passim*

In re Standard Tank Cleaning Corp.,
133 B.R. 562 (Bankr. E.D.N.Y. 1991) ............................................................11, 14

In re West Coast Interventional Pain Med., Inc.,
435 B.R. 569 (Bankr. N.D. Ind. 2010) ..................................................7, 11, 17

Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.),
282 B.R. 140 (Bankr. D. Del. 2002) ..................................................................7, 8

**Federal Statutes**

11 U.S.C. § 101, *et seq*........................................................................................... *passim*

28 U.S.C. § 1408...........................................................................................................2. 6

28 U.S.C. § 1412......................................................................................................1, 2, 6, 7

**Rules**

Fed. R. Bankr. P. 1014.................................................................................................1, 6, 7

22335251v.1

UMB Bank, N.A., in its capacity as trustee (the "Trustee"), hereby files this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure, for an order transferring venue of the above-captioned bankruptcy case of Mayflower Communities, Inc. (the "Debtor") from this Court to the Southern District of Indiana (the "Motion"). In support of the Motion, the Trustee states as follows:

## PRELIMINARY STATEMENT

Courts in this Circuit and around the country have recognized that when a chapter 11 case revolves around the operation of real property located exclusively within a state *other than* where the case is filed, it is appropriate to transfer venue of the case to the state where the property is located. The policies underlying this general rule are simple. First and foremost, administering the case in the "home state" promotes the economic and efficient administration of the estate. This is particularly true where the operation and/or disposition of the property is governed by state law and the stakeholders who are most affected by such actions are located at or near the property. In addition, administering the case in the "home state" provides those stakeholders with convenient access to the Court, a voice in the process, and fair opportunity to protect their interests in any actions affecting the property.

This case falls squarely within this general rule and transfer of venue is necessary to promote these policies. The Debtor in this case operates a state-regulated continuing care retirement community ("CCRC"), known as "The Barrington of Carmel" (the "Facility"), located in Carmel, Indiana a suburban edge city on the north side of Indianapolis, Indiana. That Facility and related real property – which the Debtor seeks to market and sell in this bankruptcy case – is located exclusively in the Southern District of Indiana. The approximately 270 residents of the Facility, all of whom have an interest in the administration of this case, and some of whom are identified as the largest unsecured creditors in this case, reside in the Southern District of Indiana,

more than 1,000 miles from this Court. Indeed, 20 of these residents constitute the Top 20 unsecured creditors listed by the Debtor in its petition. The Debtor's day-to-day decision makers, including the Executive Director, the Director of Sales, the Director of Human Relations, the Health Services Administrator, and the Director of Plant Operations, all work from and are located at the Facility in Indiana. And as important, the state regulators that oversee the Facility and the Debtor's compliance with Indiana laws and regulations – the Indiana Securities Division and the Indiana Department of Health – are located in Indiana.

In fact, each of the relevant factors considered under Section 1412 overwhelmingly weighs in favor of transfer to the Southern District of Indiana. The vast majority of the parties identified on the Debtor's creditor matrix – over 80% of the 1,400 – have addresses in Indiana. Many of the potential witnesses with knowledge about the day-to-day operations of the Facility are on the ground in Indiana. These residents, creditors and employees of the Debtor will, of course, be directly affected by the administration of this estate – which is comprised almost exclusively of the Facility in Indiana and accompanying assets. To be sure, officials from the State of Indiana and the County of Hamilton, Indiana also have a compelling interest in having the case administered locally, where they can protect those governmental and public interests during the Debtor's case, and ensure any sale of the Facility is consistent with those interests and in compliance with Indiana law.

Notwithstanding the overwhelming local interests of having this case heard in the "home state" of Indiana, the Debtor elected to file this case almost 1,000 miles away from its Facility, thereby negatively impacting the ability of these stakeholders to otherwise participate in these proceedings. The Trustee does not dispute, for purposes of this Motion, that venue may be proper in this District under 28 U.S.C. § 1408 based on the location of certain members of the Debtor's

2

management and Board. Even so, however, the realities of this case dictate that venue must be transferred to Indiana to ensure the economic and efficient administration of the estate. The Debtor's case will revolve around the interim operation and ultimate disposition of the Property, not a restructuring or recapitalization. Thus, the stakeholders on the ground in Indiana – creditors, residents, employees and regulators – undoubtedly have the greatest interest in ensuring the case is administered in a fair and convenient manner. Venue should be transferred to the Southern District of Indiana.

## **BACKGROUND**

1. The Debtor owns and operates a state-regulated continuing care retirement community known as "The Barrington of Carmel", located in Carmel, Indiana, a suburban edge city on the north side of Indianapolis, Indiana. The Facility consists of 134 independent living units, 7 catered living units, 56 assisted living units, 26 memory support units and 48 nursing beds, along with related parking common and administrative areas, and amenities. Currently, there are at least 270 residents that live at the Facility. Continuing care retirement communities, such as the Debtor, are regulated in Indiana by the Indiana Securities Division and the Indiana Department of Health.

2. Specifically, the Indiana Securities Division regulates the offer and sale of the resident care agreements in accordance with Indiana state statutes. The Indiana Department of Health is responsible for licensing health facilities, including the licensed comprehensive care and residential care sections of The Barrington of Carmel. The Department of Health has ongoing statutory and regulatory duties to ensure the Facility continues to provide adequate care and service to the residents.

3. The Debtor failed to make its monthly debt service payments to the Trustee for each of November 2018, December 2018 and January 2019, resulting in more than $1.88 million in

3

unpaid debt service, yet continued to collect and use all revenues generated from its Facility. The Trustee's efforts to reach a consensual resolution and agreeable sale process through entry into a forbearance agreement were frustrated by the Debtor's insistence on unreasonable demands, including the Debtor's desire to continue making prohibited affiliate payments in the budgeted amount of $103,000 a month and payments to professionals in the budgeted amount of $43,000 per week (all while the Facility was undergoing a severe liquidity crisis). Thus, the Trustee was forced to exercise its only option to protect bondholders and the viability of the Facility: it notified the Debtor that it was in default, accelerated the more than $93 million in unpaid principal and interest owed by the Debtor, and filed a state-court action in Indiana seeking the appointment of a receiver – as agreed to by the Debtor in the loan documents and mandated under Indiana state law.

4. The Debtor could not and did not dispute that the Trustee was entitled to the appointment of a receiver under Indiana law. Instead, the Debtor responded to the receivership action by delaying the receiver's appointment while continuing to unnecessarily diminish the Trustee's collateral through tactical forum shopping. First, the Debtor claimed discovery was necessary before the state court could take action, despite the undisputed facts supporting a legally mandated receiver. After the state court dismissed this argument and scheduled an expedited hearing over the Debtor's objection, the Debtor removed the receivership action to the United States District Court for the Southern District of Indiana on the eve of that hearing. Then, less than 24 hours after the District Court scheduled an expedited hearing on the appointment of a receiver, the Debtor commenced this bankruptcy case in Dallas, Texas – nearly 1,000 miles away from its Facility, its residents, and the regulators overseeing operation of the Debtor and the Facility. Despite the Debtor's default and its maneuvers thereafter, the Trustee continued to request the Debtor engage in a consensual process to allow for the sale of the Facility that will maximize the

4

value of the Debtor's assets, but the Debtor refused to respond to the Trustee's requests in any meaningful way, and instead elected to file this case under Chapter 11 of the Bankruptcy Code.

5.      This Chapter 11 case, which the Debtor admits was commenced for the purpose of effectuating a sale of the Facility, must be administered in a manner that not only protects and maximizes the value of the Debtor's assets, but provides the opportunity for all stakeholders to have a voice in the process. The Trustee believes the first step in achieving that end is to transfer venue of this case to the Southern District of Indiana – where the Facility and the vast majority of the stakeholders, regulators, employees, vendors and residents of the Facility are located.

6.      In its voluntary petition for relief (the "Petition"), the Debtor identifies its "principal place of business" as 15601 Dallas Parkway, Suite 200, Addison, Texas 75001." Petition, p. 1. The Debtor also identified its 20 largest unsecured creditors, all of whom are "Residents" of the Facility and who, upon information and belief, reside at the Facility.

7.      The creditor matrix filed by the Debtor reflects that the overwhelming number of creditors of the Debtor reside in Indiana.[1] Specifically, 1,140 of the 1,400 parties listed on the matrix (approximately 81%) have mailing addresses in Indiana. In contrast, only 49 of those parties (approximately 3.5%) have mailing addresses in Texas, with only 35 of those (approximately 2.5%) with mailing addresses in the Northern District of Texas.

8.      Importantly, the Indiana Department of Health has voiced its support for transfer of venue to Indiana, and has submitted a declaration in support of the Motion, a copy of which is attached hereto as **Exhibit A**.  The same rationale in support of a change of venue to Indiana applies to the Debtor's other regulator, the Indiana Securities Division.

---

[1] The Debtor has not filed its Schedules of Assets and Liabilities or its Statement of Financial Affairs.

## RELIEF REQUESTED

9.      By this Motion, the Trustee, pursuant to 28 U.S.C. § 1412 and Rule 1014(a) of the

Federal Rules of Bankruptcy Procedure, seeks entry of an order transferring venue of the

Bankruptcy Case to the Southern District of Indiana.

## BASIS FOR RELIEF

### A.      Legal Standard

10.      28 U.S.C. § 1408 governs venue of bankruptcy cases and provides that a bankruptcy

case may be commenced in the district:

> (1) in which the *domicile*, *residence*, *principal place of business* in the United
> States, or *principal assets* in the United States, of the person or entity that is the
> subject of such case have been located for the one hundred and eighty days
> immediately preceding such commencement, or for a longer portion of such
> one-hundred-and-eighty-day period than the domicile, residence, or principal
> place of business, in the United States, or principal assets in the United States,
> of such person were located in any other district; or

> (2) in which there is pending a case under title 11 concerning such person's
> affiliate, general partner, or partnership.

28 U.S.C. § 1408(1)-(2) (*emphasis added*). Venue, therefore, is generally proper only in the district

where the debtor (i) is domiciled or resides, (ii) has its principal place of business, (iii) has its

principal assets, or (iv) where an affiliate, general partner, or partnership has commenced a case

under title 11. Id.

11.      Even if venue is proper under section 1408, a court nevertheless "may transfer a

case or proceeding under title 11 to a district court for another district, in the interest of justice or

for the convenience of the parties." 28 U.S.C. § 1412. See, e.g., In re ERG Intermediate Holdings,

LLC, Case No. 15-31858, 2015 Bankr. LEXIS 3639, at *12 (Bankr. N.D. Tex. Oct. 26, 2015)

("Even if venue is technically proper, courts may still exercise their discretion to transfer a case to

another District in the interest of justice or for the convenience of the parties.") (citing 28 U.S.C.

6

§ 1412 and Fed. R. Bankr. P. 1014(a)(1)); see also In re Grand Dakota Partners, LLC, 573 B.R. 197, 202 (Bankr. W.D. N.C. 2017).

12. The statutory basis for transfer of venue is 28 U.S.C. § 1412 and Bankruptcy Rule 1014. Section 1412 states:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412. Bankruptcy Rule 1014, in turn, provides that:

> If a petition is filed in a proper district, on timely motion of a party in interest, and having hearing on notice to the petitioners, the United States trustee and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a)(1).

13. Under the framework established by 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(a)(1), if either the "interest of justice" or "the convenience of the parties" favors the transfer of venue, the Court may grant such relief. See In re West Coast Interventional Pain Med., Inc., 435 B.R. 569, 579 (Bankr. N.D. Ind. 2010). The moving party bears the burden of showing that either the "convenience of the parties" or the "interests of justice" merits the transfer of the case; however, "[t]he decision of whether to transfer venue is within the court's discretion based on a case-by-case analysis of the facts underlying each particular case." Grand Dakota Partners, 573 B.R. at 201 (internal citation omitted).

14. While a debtor's selection of a particular forum is entitled to some deference in connection with requests to transfer venue, "the weight afforded to a debtor's choice is diminished when the 'choice of forum is not directly related to the operative, underlying facts of the case.'" Grand Dakota Partners, 573 B.R. at 203 (quoting In re Rehoboth Hospitality, LP, Case No 11-12798, 2011 Bankr. LEXIS 3992, at *10 (Bankr. D. Del. Oct. 19, 2011)); see also Son v. Coal

7

Equity, Inc. (In re Centennial Coal, Inc.), 282 B.R. 140, 144-45 (Bankr. D. Del. 2002)); In re Abacus Broadcasting Corp., 154 B.R. 682, 686-87 (Bankr. W.D. Tex. 1993) (expressing concern about a debtor's right to forum shop).

15.     Here, under both the "convenience of the parties" and the "interest of justice" tests, the overwhelming facts of this case warrant transfer of the Bankruptcy Case to the Southern District of Indiana, where substantially all of the Debtor's assets and creditors, the vast majority of parties-in-interest, including the regulators that oversee the Debtor's operations, and, of course, the property itself (which is to be marketed and likely sold), are located.

**B.      Venue of the Bankruptcy Case should be transferred to the Southern District of Indiana for the convenience of parties**

16.     "Courts in the Fifth Circuit evaluating whether to transfer a case for the convenience of the parties consider six factors: (1) the proximity of creditors of every kind to the Court; (2) the proximity of the debtor to the Court; (3) the proximity of witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if bankruptcy should result." ERG Intermediate, 2015 Bankr. LEXIS 3639, at *13 (citing In re Commonwealth Oil Ref. Co., Inc., 596 F.2d 1239, 1247 (5th Cir. 1979) ("CORCO")); see also Grand Dakota Partners, 573 B.R. at 201-02. "In addition, a number of courts have included as an additional consideration or factor, a state's interest in having local controversies decided within its borders." In re Newport Creamery Inc., 265 B.R. 614, 618 (Bankr. M.D. Fla. 2001) (collecting cases).

**(i)      The overriding factor in this case is that _all_ of the Debtor's assets are located in Indiana, which strongly favors transfer of venue to the Southern District of Indiana.**

17.     In the years since CORCO was decided, bankruptcy courts following the analytical framework provided by that case have placed increased importance on the location of the debtor's

assets. See In re Pope Vineyards, 90 B.R. 252, 258 (Bankr. S.D. Tex. 1988). Indeed, the location

of the debtor's assets "must be considered as one of paramount importance." Id. This is particularly

true in cases involving the sale, or potential sale, of real estate, as emphasized by the court in Pope

Vineyards:

> "'Special Consideration' should be given to the 'situs of the assets where those assets consist of real property: Matters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'"

Id. (quoting In re Baltimore Food Systems, Inc., 71 B.R. 795, 803 (Bankr. D.S.C. 1986)); see also

Grand Dakota Partners, 573 B.R. at 202 ("There is ample support for the proposition that a Chapter

11 case can, and should, be administered in the bankruptcy court closest to a debtor's major

asset.").

18.     Applying this general rule, courts regularly find that when a debtor's real estate

assets and operations are in one state, yet the debtor files bankruptcy in a different state, transfer

of the case to the state where the debtor's assets are located is appropriate. See In re Crosby Nat'l

Golf Club, LLC, 534 B.R. 888 (Bankr. N.D. Tex. 2015) (transferring venue to California when the

debtor's principal asset was a golf course located in that state); Grand Dakota Partners, 573 B.R.

at 202-04 (transferring venue to North Dakota when the debtor's principal asset was a hotel located

in that state); Newport Creamery, 265 B.R. at 620 (transferring venue to Rhode Island when the

debtor's operations emanated from that state); Rehoboth, 2011 Bankr. LEXIS 3992 (U.S. Bankr.

D. Del. Oct. 19, 2011) (transferring venue to Texas when the debtor's principal asset was a hotel

located in that state); In re Pinehaven Assoc., 132 B.R. 982 (Bankr. E.D.N.Y. 1991) (transferring

venue to Mississippi when the debtor's principal asset was a motel located in that state); In re

Pavilion Place Assocs., 88 B.R. 32 (Bankr. S.D.N.Y. 1988) (transferring venue to Minnesota when

the debtor's principal asset was a shopping center located in that state); In re Old Delmar Corp.,

22335251v.1

45 B.R. 883 (Bankr. S.D.N.Y. 1985) (transferring venue to Texas when the debtor's principal asset was an income-producing apartment complex located in that state).

19. In <u>Grand Dakota Partners</u>, for example, the court transferred venue from the Western District of North Carolina to North Dakota where the debtor operated a "full-service hotel with restaurant, bar and conference facilities[.]" <u>Id.</u> at 199. Noting that "the Hotel and related operational assets, which are [the debtor's] sole source of income, are located in Dickinson, North Dakota[,]" the court found, consistent with <u>Rehoboth</u>, <u>Pinehaven</u>, <u>Pavilion Place</u> and <u>Old Delmar Corp.</u>, that the location of the debtors' assets favored venue transfer to the district in which the debtors' primary assets were physically located and concluded the location of all or substantially all of the debtors' assets in North Dakota supported transfer of the cases to North Dakota. <u>Id.</u> at 202.

20. The same result was reached in <u>Pope Vineyard</u>, where the court transferred venue from the Southern District of Texas to the Northern District of California finding:

> The case under consideration is one that concerns real property. The location of the bulk of the assets must weigh heavily as a factor because the business of this debtor relies upon its realty. The facts of this business greatly differ from the facts faced by the [<u>CORCO</u>] court. Based on this consideration, venue is property where the vineyard is located, in the district federal court responsible for Napa Valley, California.

<u>Pope Vineyard</u>, 90 B.R. at 258. The same is true of <u>Crosby Nat'l Golf</u>, where this court transferred venue from the Northern District of Texas to the Southern District of California, in part, because the bankruptcy involved real property in California and "[t]he law has always recognized real property rights as being unique and, as such, the state of California has a compelling interest in settling real property disputes that are governed by its laws." <u>Crosby Nat'l Golf</u>, 534 B.R. at 891.

21. As noted by one court, "[i]n virtually every single asset improved real estate partnership case which we have seen, the court has transferred the bankruptcy to the jurisdiction

22335251v.1

where the assets are located." <u>Pavilion Place</u>, 88 B.R. at 36 (collecting cases); <u>see also</u> <u>Old Delmar Corp.</u>, 45 B.R. 883 ("It is particularly appropriate for the locale of the income producing property to administer this estate."); <u>Pinehaven</u>, 132 B.R. at 989; <u>Rehoboth</u>, 2011 Bankr. LEXIS 3992, at 16. Such outcomes are unsurprising, particularly when the central issue in the bankruptcy revolves around the sale of improved real estate located in a foreign venue. <u>See</u>, <u>e.g.</u>, <u>Grand Dakota Partners</u>, 573 B.R. at 202-03; <u>see also</u> <u>In re Standard Tank Cleaning Corp.</u>, 133 B.R. 562, 568 (Bankr. E.D.N.Y. 1991). Transferring venue in such circumstances does not impose an unfair burden on the debtor because the debtor elected to operate its business in that venue and, therefore, "knowingly subjected itself to the possibility of legal action in that state, be the action by tenants or creditors." <u>Pavilion Place</u>, 88 B.R. at 36.

22.     The general rule applied in the above cases is particularly applicable here. The Facility, and indeed all of the Debtor's operating assets, are located within the Southern District of Indiana and its operations are highly regulated by the local and state agencies of Indiana. The factors identified by the above courts in support of the general rule of transferring a case to the venue where a debtor's real estate is located, including the interests of State of Indiana, the County of Hamilton, the interest of State regulators including the Indiana Securities Division and the Indiana Department of Health, and the benefit of having the case administered in the same state where the assets are being sold, are all present in this case. <u>See</u>, <u>e.g.</u>, <u>Rehoboth</u>, 2011 Bankr. LEXIS 3992, at * 14-15 (transferring venue to district where debtor's hotel was located because, in part, "the result of this case and the future of the Hotel is of primary importance to the community in which it resides"); <u>West Coast Interventional</u>, 435 B.R. at 579 (considering "the impact of venue on regulatory authorities who can be reasonably foreseen to be involved in a Chapter 11 case"

when considering a request to transfer venue). Accordingly, this factor weighs in favor of transferring venue to the Southern District of Indiana.

      **(ii)**    **The proximity of creditors and location of witnesses favors transferring venue to the Southern District of Indiana.**

23.     While the location of the Debtor's assets is generally given the most weight when determining whether to transfer venue, other factors are also considered. Here, those factors support transfer to the home state of Indiana. For example, it would be in the best interest of most creditors to have the Bankruptcy Case transferred to Indiana. In Grand Dakota Partners, the court found that transfer of venue was appropriate under this factor when:

> The vast majority of the Debtors' creditors (including counterparties to executory contracts) are located in North Dakota where the Hotel is operated. Trade creditors in North Dakota likely would bear substantial hardship traveling to defend their claims in North Carolina. The formation and function of an unsecured creditor's committee would more likely be successful in North Dakota than North Carolina. North Dakota would [*sic*] is the best place for the overwhelming majority of the Debtors' creditors and contract counterparties to participate in these two bankruptcy cases.

Grand Dakota Partners, 573 B.R. at 202; see also Newport Creamery, 265 B.R. at 618-19 (transferring venue from Florida to Rhode Island when more than half of the debtor's creditors, including the largest secured creditor, as well as the debtor's employees, landlords, and vendors, are located outside of Florida and the creditors' committee is comprised only of creditors located in Florida).

24.     Here, all twenty of the top unsecured creditors that the Debtor identified in its petition are located in Indiana. Given that the Debtor's top twenty creditors are all residents of the Facility, it is reasonable to conclude that most of the Debtor's 270 residents – who paid substantial entrance fees to reside at the Facility – are the largest unsecured creditors in this case. The residents undoubtedly have an interest in the Bankruptcy Case, but are unlikely to be able to travel almost 1,000 miles to this District for hearings. Indeed, 1,140 of the 1,400 parties listed on the matrix

12

(approximately 81%) have mailing addresses in Indiana. In contrast, only 49 of those parties (approximately 3.5%) have mailing addresses in Texas, with only 35 of those (approximately 2.5%) with mailing addresses in the Northern District of Texas. Accordingly, this factor weighs in favor of transferring venue to Indiana.

25.    Similarly, many of the potential witnesses necessary to the administration of the estate are located in Indiana. While many of the potential witnesses in this case are professionals that can appear in Dallas equally well as they can in Indiana, there are several categories of witnesses and interested parties for whom Indiana is a far more convenient forum.

26.    All of the individuals who make the day-to-day decisions at the Debtor's Facility reside in Indiana. This includes the Executive Director, the Director of Sales, the Director of Human Relations, the Health Services Administrator, and the Director of Plant Operations. See Pinehaven, 132 B.R. at 988 (emphasizing the importance of day-to-day operations of the debtor over executive-level operations in connection with a real estate case involving a motel); see also Grand Dakota Partners, 573 B.R. at 203 (noting that the personnel on-site at the debtor's North Dakota based hotel were "responsible for the Hotel's day-to-day operations and likely would be the witnesses to provide any testimony regarding such on-site and day-to-day operations").

27.    In addition, the interests of Indiana state regulators – who will have a role in this case regardless of whether it is administered in Texas or Indiana – are more easily protected if this case is administered locally in Indiana. Indeed, if this case is administered in Texas, these individuals may not be able to appear at hearings at all.[2] Accordingly, this factor weighs in favor of transferring venue to Indiana.

---

[2] It is widely known that Texas state regulators generally take an active role in CCRC bankruptcies of Texas-based facilities. If a debtor were to avoid such scrutiny by filing in another state based solely on the location of its parent entity and management company, the interests of Texas's CCRC residents would be put at risk and Texas' regulators

**(iii)** **The economic and efficient administration of the estate favors transferring venue to the Southern District of Indiana.**

28.     The "economic and efficient administration" factor under the <u>CORCO</u> analysis "is not independent of the other factors since proximity of the parties, witnesses and location of the assets certainly affects the economy and efficiency of administration." <u>Pinehaven</u>, 132 B.R. at 989 (internal citation omitted). "This final criterion . . . is 'actually a summary of the previous four [factors].'" <u>Id.</u> (quoting <u>In re Consolidated Pier Deliveries, Inc.</u>, 34 Bankr. 327, 329 (Bankr. E.D.N.Y. 1983)).

29.     Here, for the reasons outlined above, the economic administration of the Debtor's estate weighs heavily in favor of transferring the case to Indiana. Specifically, the day-to-day management of the Debtor's Facility (and many other employees) is located in Indiana; the residents all live in Indiana; the vendors who service the Facility on a daily basis are presumably located in Indiana, and the Indiana state regulators that will have a key role in this case are all in Indiana. Additionally, the bankruptcy court in the Southern District of Indiana will have greater familiarity with the locale and physical property at issue and is better situated to determine issues relating to the property, including issues relating to the transfer of the Facility, which is the stated goal of the Debtor. <u>See</u>, <u>e.g.</u>, <u>Grand Dakota Partners</u>, 573 B.R. at 204; <u>see also</u> <u>Rehoboth</u>, 2011 Bankr. LEXIS 3992, at * 15-16; <u>Standard Tank</u>, 133 B.R. at 568.

30.     Accordingly, this factor weighs in favor of transferring venue to Indiana.

**(iv)** **The necessity for ancillary administration if a liquidation should occur favors transferring venue to the Southern District of Indiana.**

31.     In the unlikely event the Bankruptcy Case is converted and a Chapter 7 trustee is appointed, or should it be necessary to appoint a Chapter 11 trustee, a trustee in Indiana would be

---

forced to endure the burden of monitoring and participating in a case in a foreign jurisdiction. The same considerations should be given to Indiana's state regulators who have oversight responsibilities with respect to Indiana CCRCs.

better able to efficiently and economically administer or liquidate the estate than a trustee located in Texas. See, e.g., Newport Creamery, 265 B.R. at 620-21; see also Pope Vineyards, 90 B.R. at 259. Accordingly, this factor weighs in favor of transferring venue to Indiana.

> **(v)** **Indiana's interest in the Debtor and the Bankruptcy Case favors transferring venue to the Southern District of Indiana.**

32.     The Debtor operates a senior living community within the borders of Indiana, as regulated under Indiana state law. Thus, Indiana has a substantially greater interest in the Debtor, the Debtor's operations, and the outcome of the Bankruptcy Case as compared to Texas. In addition to the state's interests in protecting its senior citizens, Indiana's regulators, including the Indiana Department of Health and the Indiana Securities Division, will have a significant interest in any sale of the Facility and licensing of any new operator. Thus, any sale (or continued operation) of the Facility will likely require involvement of the regulators as part of the sale process and the general operations of the Facility.

33.     As such, this factor weighs in favor of transferring venue to Indiana.

> **(vi)** **The proximity of the Debtor's board members and officers to this Court is outweighed by the other factors favoring transfer to the Southern District of Indiana.**

34.     The only factor that arguably may favor the Debtor under the CORCO analysis is the alleged location of the Debtor's principal place of business. However, even if the Court determines that venue is proper in the Northern District of Texas, the balance of the factors still supports transferring the Bankruptcy Case to the Southern District of Indiana.

35.     To be sure, even if the Debtor's "nerve center" is determined to be located within this District, this conclusion alone is insufficient for the Court to retain the Bankruptcy Case. In Rehoboth, the Court recognized that while the debtor's principal place of business for "all executive-level operational and financing decisions" was in Pennsylvania, the "true day-to-day

operational and managerial decisions for the hotel are conducted on-site at the hotel in Texas" and that this factor favored transfer of the case to Texas. Rehoboth, at *11-12. Similarly, in Pinehaven, the Court found this same argument to be unpersuasive, *i.e.* that venue should remain in New York because "Pinehaven's major decisions and general supervision emanates" from New York. Pinehaven, 132 B.R. at 989. There, the court explained that the Debtor exaggerated the nexus of New York to the administration of the case while minimizing the role of the day-to-day manager of the motel. Id.

36.    Here, even if the Debtor's principal place of business is Texas, the day-to-day operations of the Facility are conducted in Indiana. Moreover, it would be easier for the Debtor's few principals to travel to Indiana (as they presumably do from time to time) rather than have the Debtor's on-site managers, employees, and residents travel to Texas, away from their responsibilities at the Facility. As such, the Debtor's officers' and directors' proximity to Texas is far outweighed by consideration of all of the other factors that weigh heavily in favor of transferring this case Indiana. See Crosby Nat'l Golf, 534 B.R. at 893.

**C.    Venue of the Bankruptcy Case should be transferred to the Southern District of Indiana in the interest of justice**

37.    "When considering the 'interest of justice' courts consider 'a broad and flexible standard,' which must be applied on a case-by-case basis." Grand Dakota Partners, 573 B.R. at 205 (quoting In re Patriot Coal Crop., 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012)). "Under this standard, a court must consider (a) the venue in which the estate can be most efficiently administered, (b) the venue that will promote judicial economy and efficiency, (c) the parties' ability to receive a fair disposition, and (d) a state's interest in having local controversies decided within its borders." ERG Intermediate, 2015 Bankr. LEXIS 3639, at *18 (quoting Crosby Nat'l Golf Club, 534 B.R. at 888). Courts will also "commonly consider whether a debtor has engaged

16

in abusive forum shopping, and will transfer a case if the court finds such abuse." Id. (citing In re Lazaro, 128 B.R. 168, 174 (Bankr. W.D. Tex. 1991)). Additionally, courts should consider "the impact of venue on regulatory authorities who can be reasonably foreseen to be involved in a Chapter 11 case[.]" West Coast Interventional, 435 B.R. at 579. "As a practical matter, in most cases, if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer." Grand Dakota Partners, 573 B.R. at 205 (quoting Pinehaven, 132 B.R. at 990).

38.    Here, as discussed above, retaining venue in Texas would make it difficult and expensive for interested parties – in particular the residents, employees, vendors and regulators – to participate in the case. The majority of the non-insider creditors and contract counterparties are located in Indiana. There is little doubt that distance and cost would unfairly hinder and reduce creditor participation in the Chapter 11 process.

39.    Finally, there is no doubt that the Trustee – owed over $93 million by the Debtor – is the largest financial stakeholder in this Chapter 11 case. While the Trustee has great respect for this Court and the judges of this District, the Trustee seeks to have this case administered in Indiana, where the local Bankruptcy Judges are experienced with the real property, regulators, vendors and state laws and regulations that may impact the sale process and other actions proposed in this case. The preference of the Trustee, given its financial interest in the outcome of the Debtor's action, should be given some weight in the Court's decision on the most appropriate venue. See Pavilion Place, 88 B.R. at 35-36 (giving weight to creditors' preferences to have venue transferred).

40.    Consequently, transferring venue of the Bankruptcy Case to the Southern District of Indiana is in the best interests of justice.

## CONCLUSION

For the reasons set forth above, the Trustee requests that the Court transfer venue of the

Bankruptcy Case to the Southern District of Indiana.

Dated: February 5, 2019               Respectfully submitted,

**JACKSON WALKER L.L.P.**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile

*/s/ Kenneth Stohner, Jr.*
J. Scott Rose
State Bar No. 17252800
112 E Pecan Street, Suite 2400
San Antonio, TX 78205
(210) 978-7760 – Direct Dial
(210) 242-4645 – Direct Fax
Email: srose@jw.com

Kenneth Stohner, Jr.
State Bar No. 19263700
(214) 953-6803 – Direct Dial
(214) 661-6803 – Direct Fax
Email: kstohner@jw.com

Vienna F. Anaya
State Bar No. 24091225
(214) 953-6047 – Direct Dial
(214) 661-6647 – Direct Fax
Email: vanaya@jw.com

**LOCAL COUNSEL UMB BANK, N.A., AS TRUSTEE**

-and-

William W. Kannel, Esq. (#546724) (admitted *pro hac vice*)
Charles W. Azano, Esq. (#655775) (*pro hac vice* application pending)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center

18

Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
E-mail: wwkannel@mintz.com
        cwazano@mintz.com

Joseph R. Dunn, Esq. (#238069) (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501
Email: jrdunn@mintz.com

**ATTORNEYS FOR UMB BANK, N.A., AS TRUSTEE**

## CERTIFICATE OF SERVICE

     I hereby certify that on 5th day of February 2019, a true and correct copy of the foregoing was served (a) electronically on all persons via the Court's CM/ECF system; and (b) via regular first class mail on the parties listed below and the attached service list:

| **Proposed Counsel to the Debtor** | **U.S. Trustee's Office** |
|---|---|
| Andrew Zollinger<br>DLA Piper LLP (US)<br>1717 Main Street, Suite 4600<br>Dallas, TX 75201-4629 | Office of the United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242 |
| Thomas R. Califano<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas<br>New York, NY 10020-1104 | |
| Rachel Nanes<br>DLA Piper LLP (US)<br>200 South Biscayne Blvd,, Suite 2500<br>Miami, FL 33131 | |

                                          /s/ *Vienna F. Anaya*
                                          Vienna F. Anaya