

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 7, 2019**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 19-30283-hdh11 |
| MAYFLOWER COMMUNITIES, INC., | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

### INITIAL INTERIM ORDER (1) AUTHORIZING USE OF CASH AND (2) PROVIDING ADEQUATE PROTECTION

Upon the motion of (the "Motion") of the above-captioned debtor (the "Debtor") for the entry of an order authorizing the Debtor to use certain cash in which UMB Bank, N.A., in its capacity as trustee (the "Trustee"), asserts a security interest; and upon the proceedings held before this Court; and good and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS**:

A.      On January 30, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced a case thereunder (the "Chapter 11 Case"). The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee of unsecured creditors has yet been appointed in the Chapter 11 Case.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The Trustee has asserted the following with respect to certain existing financing of the Debtor:

1.      On August 1, 2012, the City of Carmel, Indiana issued the bonds (the "Bonds") in the original principal amount of $112,020,000 pursuant to the Bond Trust Indenture dated as of August 1, 2012 (the "Bond Indenture") between the City of Carmel and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Trustee. The proceeds of the Bonds were loaned to the Borrower by the City of Carmel pursuant to a Loan Agreement dated August 1, 2012 (the "Loan Agreement") between the City of Carmel and the Borrower.

2.      The Borrower's obligation to repay the amounts borrowed is evidenced by, among other things, a Direct Note Obligation, Series 2012A in the amount of $94,575,000 (the "Series 2012A Note") issued under the Master Trust Indenture between the Borrower and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Trustee dated as of August 1, 2012 (the "Master Indenture").

3.      The Trustee has the right to enforce the Borrower's obligation to pay the amounts borrowed from the City of Carmel, pursuant to its rights under the Master Indenture, and by the fact that the City of Carmel's rights under the Loan Agreement (and its rights under the other Bond Documents) were assigned to the Trustee pursuant to the granting clauses of the Bond Indenture.

4.      The Trustee has a security interest, lien and mortgage on substantially all of the Borrower's assets. Specifically, pursuant to a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 1, 2012, between the Borrower and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Trustee (the "Mortgage"), the Trustee has (i) a first mortgage lien on the Land and the Facility, subject only to Permitted Encumbrances (as defined in the Master Indenture), and (ii) a security interest in the various personal property and fixtures located at the Facility (subject only to Permitted Encumbrances). In addition, pursuant to the Master Indenture, the Borrower granted to the Trustee a security interest in its Gross Revenues (as defined in the Master Indenture), which consist of substantially all of the revenues, income, and other moneys received or to be received by the Borrower. In addition, all moneys and securities held by the Trustee have been pledged and assigned to the Trustee as security for the payment amounts owed on account of the Bonds. All of the collateral described in this Paragraph C(4) is referred to as the "Prepetition Collateral". The Trustee's liens on the Prepetition Collateral are referred to herein as the "Prepetition Liens".

5.      The Bond Indenture, the Master Indenture, the Loan Agreement, the Series 2012A Note, the Mortgage and any other documents executed in connection with such documents are referred to herein as the "Bond Documents".

D.      An immediate and critical need exists for the Debtor to use cash ("Cash") on an interim basis in order to continue its operations and maximize the value of its estate for the benefit of all creditors. Without such funds, the Debtor will not be able to pay employees, suppliers, and other operating expenses, provide for the safety or care of its residents, and obtain goods and services needed to carry on its operations during this sensitive interim period for the purposes set forth in this Initial Interim Order in a manner that will avoid irreparable harm to the Debtor's estate, and the Debtor is only seeking in this Initial Interim Order to use funds in its Operating Account at Bank of America.

E.      The Trustee has asserted that all or a portion of the Debtor's Cash is cash collateral as it is defined in Section 363(a) of the Bankruptcy Code.

F.      Good cause has been shown for the entry of this Initial Interim Order. Among other things, entry of this Initial Interim Order will permit the Debtor to minimize disruption of the Debtor's businesses and operations and permit it to pay its payroll and other operating expenses, provide for the safety or care of its residents, make certain payments authorized by this Court pursuant to the other first day orders entered in this Chapter 11 Case, and obtain goods and services needed to carry on its operations during this sensitive initial interim period for the purposes set forth in this Initial Interim Order in a manner that will avoid irreparable harm to the Debtor's estate. The use of Cash authorized hereunder is necessary to maintain the ongoing operations of Debtor and the condition of Prepetition Collateral, to avoid immediate and irreparable harm to the Debtor's estate. Permitting the use of Cash on the terms and conditions as set forth herein thereof is in the best interests of the Debtor's estate. If the Debtor is not able to use Cash as provided herein it will be unable to fund its ongoing operations over the first two weeks of this Chapter 11 Case.

G. The Debtor has requested immediate entry of this Initial Interim Order pursuant to Bankruptcy Rule 4001(b)(2). This Court concludes that entry of this Initial Interim Order is in the Debtor's best interests and that of its estate, residents and creditors as its implementation will, among other things, allow for the Debtor to continue its operations.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

**Motion Granted**

1. The Motion is hereby granted on an interim basis in accordance with the terms and conditions set forth in this Initial Interim Order. Any objections to the Motion with respect to the entry of this Initial Interim Order that are inconsistent with the terms hereof have either been withdrawn, waived, or settled, or are hereby denied and overruled; provided, however, the Trustee reserves all rights to object to the Debtor's proposed use of Cash beyond the two week period authorized in this Initial Interim Order, including pursuant to any further interim order or any final order on the use of Cash.

**Authority to Use Cash**

2. The Debtor is authorized to use Cash from and after the filing of the Chapter 11 Case through and until February 19, 2019 of the budget attached hereto as **Exhibit A** (the "Budget") solely for the purposes set forth and in the amounts set forth in the corresponding weekly periods of the Budget and upon the terms and conditions set forth in this Initial Interim Order.

**Adequate Protection**

3.      Pending further hearing on the use of Cash, the Trustee is entitled to adequate protection of its asserted interest in the Cash. The Trustee is hereby granted the following adequate protection (collectively, the "Adequate Protection"):

(a)      Adequate Protection Liens: To the extent of any diminution in value of the of the Trustee's interests in the Prepetition Collateral from and after the Petition Date resulting from the use by the Debtor of the Cash, and the imposition or enforcement of the automatic stay, the Trustee is hereby granted, to the extent, validity and priority of the Trustee's interests in the Prepetition Collateral, additional and replacement security interests and liens (collectively, the "Adequate Protection Liens") in and on all of the Debtor's property, whether now owned or hereafter acquired or arising, other than claims and causes of action of the estate arising under Chapter 5 of the Bankruptcy Code, except (x) actions under section 550 of the Bankruptcy Code which seek to recover transfers of property avoided under section 549 of the Bankruptcy Code (and the proceeds of such actions) shall be encumbered by the Adequate Protection Liens, and (y) any lien or security interest avoided pursuant to sections 550, 551 and/or 552 of the Bankruptcy Code shall be encumbered by the Adequate Protection Liens (all such non-excluded property, the "Postpetition Collateral"). The Adequate Protection Liens shall be subject and subordinate only to (x) valid, perfected and non-avoidable liens which were senior to the Prepetition Liens as of the Petition Date or (y) valid liens in existence at the Petition Date which would have been senior to the Prepetition Liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and perfected thereafter as permitted by section 546(b) of the Bankruptcy Code; and

(b)     507(b) Claim: To the extent of any diminution in value of the Trustee's interests in the Prepetition Collateral, and to the extent of the validity, extent and priority of the Trustee's interests in the Prepetition Collateral, from and after the Petition Date, resulting from the use by the Debtor of the Cash, and the imposition or enforcement of the automatic stay, the Trustee is hereby granted, to the extent, validity and priority of the Trustee's interest in the Prepetition Collateral, a superpriority claim allowed under section 507(b) of the Bankruptcy Code (the "507(b) Claim") against the Postpetition Collateral.

4.     The Adequate Protection Liens shall be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection.

5.     Trustee Held Funds. Unless otherwise disputed by the Debtor prior to the entry of a subsequent interim order, the following shall be effective upon the entry of a subsequent interim order or a final order:

All funds held by the Trustee under the Master Indenture or the Bond Indenture as if the Petition Date (the "Trustee Held Funds") are held in trust for the holders of the Bonds. The Debtor acknowledges, and the Court funds that the Trustee holds a valid perfected senior possessory security interest in the Trustee Held Funds and is entitled to access the Trustee Held Funds in accordance with the terms of the Bond Documents. To the extent that the automatic stay otherwise applies to such Trustee Held Funds pursuant to section 362(a) of the Bankruptcy Code, as adequate protection for the use of the Trustee's Cash, the Debtor stipulates to relief from such stay for the purpose of allowing the Trustee to administer and apply the Trustee Held Funds in accordance with the Bond Documents. The Trustee Held Funds may be administered and applied by the Trustee as set forth in the Bond

Documents and for the express purposes set forth therein, and shall not be used or made available to the Debtor as Cash or otherwise pursuant to this Initial Interim Order, any subsequent interim order of the final order, or any other order entered in this case.

The Debtor reserves all rights to dispute that Trustee Held Funds are property of the estate prior to any agreement or court finding to the contrary in such subsequent interim order or final order.

### Reporting

6.      The Debtor shall provide to the Trustee and its counsel a weekly variance report to the Budget no later than the first Wednesday following the end of the prior measurement period. The Debtor shall also provide the Trustee access to the Debtor's books and records, advisors and professionals as may be reasonably requested by the Trustee from time to time.

### Termination

7.      The Debtor's right to use Cash pursuant to this Initial Interim Order shall immediately and automatically terminate upon the Debtor's failure to comply with the terms of this Initial Interim Order. Nothing herein shall be deemed a waiver of the Trustee's (or any other secured party's) rights to seek to terminate the Debtor's use of Cash.

### Miscellaneous

8.      This Initial Interim Order shall constitute valid and binding rights and obligations of the Debtor, enforceable by and against the Debtor in accordance with its terms. No obligation, payment, transfer or grant of security under this Initial Interim Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim, subject in each case to any modifications in the Final Order.

9. <u>Binding Effect</u>. Immediately upon entry by the Court, the provisions of this Initial Interim Order shall become binding upon and inure to the benefit of the Debtor, the Trustee, all other creditors of the Debtor, any committee appointed in this Chapter 11 Case and all other parties in interest in this Chapter 11 Case and their respective successors and assigns (including any estate representative, Chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).

10. <u>Subsequent Proceeding</u>. The provisions of this Initial Interim Order, including the grant of claims and liens to or for the benefit of the Trustee, and any actions taken pursuant to this Initial Interim Order, shall survive the entry of any order converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

11. <u>Third Party Beneficiaries</u>. Except as expressly provided for herein, this Initial Interim Order shall not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

12. <u>Authorization to Effectuate</u>. To the extent not already provided for in this Initial Interim Order, the Debtor and its officers, employees, advisors and agents are hereby authorized and empowered to take such actions as are necessary or appropriate to effectuate the relief granted pursuant to this Initial Interim Order.

13. <u>Findings of Fact</u>. This Initial Interim Order shall constitute findings of fact and conclusions of law and shall be immediately effective and enforceable upon entry of this Initial Interim Order.

14. <u>Compliance with Bond Documents</u>. The Debtor agrees to maintain its insurance and pay taxes as provided in the Bond Documents.

15. _Deemed Request for Stay Relief._ This Initial Interim Order shall be deemed to constitute a request by the Trustee for relief from the automatic stay with respect to the Prepetition Bond Collateral solely for the purposes of adequate protection for the use of Cash as of the Petition Date, and shall suffice for all purpose of Section 507(b) of the Bankruptcy Code.

16. _Effectiveness_. The rights and obligations of the parties under his Initial Interim Order shall be effective and enforceable as of the Petition Date. This Initial Interim Order shall be deemed effective immediately, and for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto. In accordance with Section 364(e) of the Bankruptcy Code, if any or all of the provisions are hereby reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority or enforceability of any obligation incurred prior to the actual receipt of written notice by the Trustee of the effective date of such reversal, modification, vacatur or stay or (ii) the validity, extent or enforceability of the liens and claims granted hereunder.

17. _Notice of Subsequent Interim Hearing_. The Debtor shall within two (2) business days after entry of this Initial Interim Order, mail a notice of the entry of this Initial Interim Order, together with a copy of the Motion and notice of the Subsequent Interim Hearing, to: (i) counsel to the Trustee; (ii) each of the Debtor's twenty largest unsecured creditors as set forth in the list filed by the Debtor in the Bankruptcy Court pursuant to Bankruptcy Rule 1007(d); (iii) the Indiana Securities Division; (iv) the Indiana Department of Health; (v) all known holders of liens on the Debtor's assets; (vi) all applicable governmental agencies to the extent required by the Bankruptcy Rules or local rules of this Court; and (vii) all parties that have filed a notice of appearance in this case; and (viii) the United States Trustee (the "_Notice Parties_").

18. <u>Subsequent Interim Hearing/Objections</u>. A subsequent interim hearing (the "<u>Subsequent Interim Hearing</u>") to consider the use of Cash shall be held on February 19, 2019 at 1:30 p.m. (prevailing Central Time) before The Honorable Harlin D. Hale, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Texas, Earle Cabell Federal Building,1100 Commerce Street, 14th floor, Courtroom #3, Dallas, Texas 75242-1496. Any party desiring to object, or supplement a previously filed objection, to the relief sought in the Motion on a further interim basis shall file a written objection with the Court on or before February 12, 2019 at 4:00 p.m. (prevailing Central Time), which deadline may be extended upon prior written agreement with the Debtor without a further court order, and shall contemporaneously serve that objection on the Notice Parties so as to be received by such parties on or before such date. Replies shall be due no later than February 15, 2019 at 4:00 p.m. (prevailing Central Time).

**###END OF ORDER###**

Agreed to by:

**DLA PIPER LLP (US)**

By: _/s/ Andrew Zollinger_
Andrew Zollinger, State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

- and -

**JACKSON WALKER L.L.P.**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000 – Telephone
(214) 953-5822 – Facsimile

_/s/ Vienna F. Anaya_
J. Scott Rose
State Bar No. 17252800
112 E Pecan Street, Suite 2400
San Antonio, TX 78205
(210) 978-7760 – Direct Dial
(210) 242-4645 – Direct Fax
Email: srose@jw.com

Kenneth Stohner, Jr.
State Bar No. 19263700
(214) 953-6803 – Direct Dial
(214) 661-6803 – Direct Fax
Email: kstohner@jw.com

Thomas R. Califano, NY Bar No. 2286144
(*pro hac vice admission pending*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501

- and -

Rachel Nanes (*pro hac vice admission
pending*)
rachel.nanes@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Tel: (305) 423-8563
Fax: (305) 675-8206

*Proposed Counsel for the Debtor*

Vienna F. Anaya
State Bar No. 24091225
(214) 953-6047 – Direct Dial
(214) 661-6647 – Direct Fax
Email: vanaya@jw.com
**LOCAL COUNSEL UMB BANK, N.A.,
AS TRUSTEE**

-and-

William W. Kannel, Esq. (#546724) (admitted
*pro hac vice*)
Charles W. Azano, Esq. (#655775) (*pro hac vice*
application pending)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
E-mail: wwkannel@mintz.com
          cwazano@mintz.com

Joseph R. Dunn, Esq. (#238069) (admitted *pro
hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
3580 Carmel Mountain Road
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501
Email: jrdunn@mintz.com

**ATTORNEYS FOR UMB BANK, N.A., AS
TRUSTEE**

**<u>Exhibit A</u>**

**<u>Budget</u>**

**Mayflower Communities, Inc. - The Barrington of Carmel**
Cash Collateral Budget
As of January 30, 2019
*($ amounts presented in thousands)*

| | | Interim Relief Requested | | | | |
|---|---|---|---|---|---|---|
| Week | | 1 | 2 | 3 | 4 | Total |
| Date | | 2/1/19 | 2/8/19 | 2/15/19 | 2/19/19 | |
| *Operating Cash Receipts* | | | | | | |
| Resident Receipts | | $  - | $ 282 | $ 855 | $ 73 | $ 1,210 |
| Medicare Receipts | | - | - | - | 10 | 10 |
| Entrance Fee Receipts | | - | - | - | - | - |
| Other | | - | - | - | - | - |
| Total Operating Receipts | | - | 282 | 855 | 83 | 1,220 |
| | | | | | | |
| *Operating Cash Disbursements* | | | | | | |
| Payroll, Payroll Taxes, & Benefits | | - | - | (256) | - | (256) |
| Dining Services | | - | (5) | (40) | (8) | (54) |
| Administrative & Marketing | | - | (1) | (159) | (3) | (163) |
| Buildings, Grounds, & Utilities | | - | (15) | (35) | (2) | (52) |
| Ancillary & Therapy Services | | - | (1) | (4) | (2) | (7) |
| Capital Expenditures | | - | - | (10) | (5) | (15) |
| Management Fees | | - | - | - | - | - |
| Entrance Fee Disbursements | | - | - | - | - | - |
| Other Disbursements | | - | (15) | (37) | (5) | (58) |
| Total Operating Disbursements | | - | (37) | (541) | (25) | (604) |
| | | | | | | |
| Debt Service | | - | - | - | - | - |
| | | | | | | |
| *Non-Operating Disbursements* | | | | | | |
| Debtor Counsel - DLA | | - | - | - | - | - |
| Debtor Chief Restructuring Officer | | - | - | - | - | - |
| Debtor Financial Advisor - Ankura | | - | - | - | - | - |
| Debtor Accounting Advisor - Larx | | - | - | - | - | - |
| Debtor Special Counsel - Thompson Knight | | - | - | - | - | - |
| Claims Agent - Donlan Recano | | - | - | - | - | - |
| Resident Counsel / UCC | | - | - | - | - | - |
| Independent Board Member | | - | (8) | - | - | (8) |
| Patient Ombudsman | | - | - | - | - | - |
| US Trustee and Filing Fees | | - | (2) | - | - | (2) |
| Adequate Assurance - Utilities | | - | - | (25) | - | (25) |
| Total Non-Operating Disbursements | | - | (9) | (25) | - | (34) |
| | | | | | | |
| **Net Cash Flow** | | $  - | $ 236 | $ 289 | $ 58 | $ 583 |
| (+) Beginning Book Cash Balance | | 3,355 | 3,355 | 3,591 | 3,880 | 3,355 |
| **Ending Book Cash Balance** | | $ 3,355 | $ 3,591 | $ 3,880 | $ 3,938 | $ 3,938 |