

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 11, 2019**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 19-30283-hdh11** |
| **MAYFLOWER COMMUNITIES, INC.,**[1] | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |

**FINAL ORDER (1) AUTHORIZING THE DEBTOR TO USE THE CASH
COLLATERAL OF UMB BANK, N.A., AS BOND TRUSTEE; (2) PROVIDING
UMB BANK, N.A., AS BOND TRUSTEE, ADEQUATE PROTECTION;
AND (3) MODIFYING THE AUTOMATIC STAY**

This Final Order (1) Authorizing the Debtor to Use the Cash Collateral of UMB Bank,

N.A., as Bond Trustee; (2) Providing UMB Bank, N.A., as Bond Trustee, Adequate Protection;

and (3) Modifying the Automatic Stay (this "Final Order") is entered upon the motion (the

"Motion") of the above-captioned debtor (the "Debtor" or "Borrower") for the entry of an order

authorizing the Debtor to use certain cash in which UMB Bank, N.A., in its capacity as Bond

---

[1] The last four digits of the Debtor's federal tax identification number are 6350.

Trustee (the "Bond Trustee"), asserts a security interest, and upon the terms agreed to by the Debtor and the Bond Trustee.

Upon the terms of the Motion, the stipulations, acknowledgements, statements and arguments of the Debtor and the Bond Trustee, including by their respective counsel at the interim and final hearings on the Motion, and based further on the record of these proceedings, the Court makes the following findings of fact and rulings of law:

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A.　　On January 30, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and thereby commenced a case thereunder (the "Chapter 11 Case").  The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.  On February 11, 2019, the United States Trustee appointed the Official Residents' Committee (the "Residents' Committee").

B.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

C.　　This Court held a hearing to consider granting the relief requested in the Motion on an interim basis on February 1, 2019, at which the Debtor and the Bond Trustee indicated to the Court that they had reached agreement on the terms of a consensual order that would allow the Debtor to use cash for an approximately two week period, which order was entered by the Court on February 7, 2019 (as such order was subsequently amended, the "Interim Order") [Docket No. 64].

D.　　Following a hearing on February 19, 2019, the Debtor and the Bond Trustee

2

agreed upon an extension of the Interim Order that allowed use of cash through March 8, 2019, which agreement was set forth in a consensual amendment to the Interim Order approved by the Court on February 21, 2019 [Docket No. 101].

       E.      Following a hearing on March 8, 2019, the Debtor and the Bond Trustee agreed upon an extension of the Interim Order that allowed use of cash through April 5, 2019, which agreement was set forth in a consensual amendment to the Interim Order approved by the Court on March 12, 2019 [Docket No. 138].

       F.      This Court held a hearing to consider the Motion on a final basis on April 5, 2019 (the "Final Hearing").

       G.      The Debtor has properly served notice of the Motion and the interim and final hearings thereon pursuant to sections 102, 361, 362 and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 4001, and the Local Bankruptcy Rules of this Court (the "Local Rules"), as applicable, as described more fully in Paragraph 3 hereof.

**The Secured Bond Obligations**

       H.      On August 1, 2012, the City of Carmel, Indiana (the "Issuer") issued the bonds (the "Bonds") in the original principal amount of $112,020,000 pursuant to the Bond Trust Indenture dated as of August 1, 2012 (the "Bond Indenture") between the Issuer and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Bond Trustee. The proceeds of the Bonds were loaned to the Borrower by the Issuer pursuant to a Loan Agreement dated August 1, 2012 (the "Loan Agreement") between the Issuer and the Borrower, and used by the Borrower to acquire, develop, market, equip, furnish and construct a continuing care retirement community known as "The Barrington of Carmel" (the "Facility").

       I.      The Borrower's obligation to repay the amounts borrowed is evidenced by,

among other things, a Direct Note Obligation, Series 2012A in the amount of $94,575,000 (the "Series 2012A Note") issued under the Master Trust Indenture between the Borrower and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Bond Trustee, dated as of August 1, 2012 (the "Master Indenture").

J.     The Bond Trustee has the right to enforce the Borrower's obligation to pay the amounts borrowed from the Issuer, pursuant to its rights under the Master Indenture, and by the fact that the Issuer's rights under the Loan Agreement (and its rights under the other Bond Documents) were assigned to the Bond Trustee pursuant to the granting clauses of the Bond Indenture.

K.     The Bond Trustee has a security interest, lien and mortgage on substantially all of the Borrower's assets.  Specifically, pursuant to a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 1, 2012, between the Borrower and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Bond Trustee (the "Mortgage"), the Bond Trustee has (i) a first mortgage lien on the Facility and the land on which the Facility is located, subject only to Permitted Encumbrances (as defined in the Master Indenture), and (ii) a security interest in the various personal property and fixtures located at the Facility (subject only to Permitted Encumbrances).  In addition, pursuant to the Master Indenture, the Borrower granted to the Bond Trustee a security interest in its Gross Revenues (as defined in the Master Indenture), which consist of substantially all of the revenues, income, and other moneys received or to be received by the Borrower.  In addition, all moneys and securities held by the Bond Trustee have been pledged and assigned to the Bond Trustee as security for the payment amounts owed on account of the Bonds.  All of the collateral described in this Paragraph K is referred to as the "Prepetition Collateral".  The Bond Trustee's liens on the

Prepetition Collateral are referred to herein as the "Prepetition Liens".

L.    The Bond Indenture, the Master Indenture, the Loan Agreement, the Series 2012A Note, the Mortgage and any other documents executed in connection with such documents or the Bonds are referred to herein as the "Bond Documents".

M.    In addition, under the terms of the Bond Documents, certain accounts were established and are held by the Bond Trustee, including, but not limited to the following funds, each as defined in the Bond Documents: the Revenue Fund, the Interest Fund, the Bond Sinking Fund, the Optional Redemption Fund, the Debt Service Reserve Fund, the Working Capital Fund, the Operating Reserve Fund, the Liquidity Support Fund, the Supplemental Liquidity Support Fund, and the Special Project Liquidity Support Fund (collectively, the "Trustee-Held Funds"). As of the Petition Date, the Trustee-Held Funds totaled approximately $8.071 million.

N.    The Debtor has acknowledged and agrees, and the Court finds, that the Trustee-Held Funds are held in trust for the holders of the Bonds (the "Bondholders"). In the alternative, the Debtor reaffirms its acknowledgement that the Bond Trustee holds a validly perfected possessory security interest in the Trustee-Held Funds, and is entitled to access the Trustee-Held Funds in accordance with the terms of the Bond Documents. To the extent that the automatic stay applies to such Trustee-Held Funds pursuant to section 362(a) of the Bankruptcy Code, as adequate protection for the use of the Trustee's Cash Collateral (as defined below), the Debtor stipulates to relief from such stay for the purpose of allowing the Bond Trustee to administer and apply the Trustee-Held Funds in accordance with the Bond Documents. The Trustee-Held Funds shall be administered and applied as set forth in the Bond Documents and for the express purposes set forth therein, and shall not be used or made available to the Debtor as Cash Collateral or otherwise pursuant to this Final Order or any other order entered in this Chapter 11

5

Case.

**The Bond Claim**

O.     The Debtor stipulates that as of the Petition Date, the amounts due and owing

under the Bonds and Bond Documents are not less than:

(i)     unpaid principal in the amount of $92,735,000;

(ii)    accrued but unpaid interest on the Bonds in the amount of $1,361,671.88 (the aggregate of (i) and (ii) are referred to herein as the "Bond Claim"), which interest continues to accrue on the Bonds at a per diem rate of $18,155.63, which interest will be added to the Bond Claim only to the extent that the value of the Prepetition Collateral exceeds the amount of the Bond Claim; and

(iii)   unliquidated, accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date (the "Prepetition Expense Claim"). Such amounts when liquidated shall be added to the Bond Claim.

The Bond Trustee reserves any and all rights to amend the Bond Claim. Nothing herein shall be

deemed to be a waiver of such rights. In the event the Bond Trustee amends the Bond Claim to

increase the amount of such claim, the Debtor may challenge any amounts in excess of (i) and

(ii) above.

**Use of Cash Collateral and Need for Adequate Protection**

P.     The Debtor has requested the use of the Bond Trustee's Cash Collateral (as

defined below) in connection with the Chapter 11 Case to preserve the value of its business.

Pursuant to the Bankruptcy Code, the Debtor is required to provide adequate protection to the

Bond Trustee for the use of such Cash Collateral. The Bond Trustee has informed the Debtor

and the Court that the Bond Trustee does not consent to the use of Cash Collateral except upon

the terms and conditions of this Final Order.

Q.     Without the use of Cash Collateral, the Debtor would suffer immediate and

irreparable harm and would likely be required to cease operations immediately or, at a minimum,

the Debtor's inability to use Cash Collateral would disrupt the Debtor as a going concern and

EAST\165103292.10

would otherwise not be in the best interests of the Debtor or its creditors, including the Bondholders and residents of the Debtor's Facility. In lieu of giving the Bond Trustee relief from the automatic stay or attempting to obtain this Court's approval for use of Cash Collateral (as defined below) on a non-consensual basis, the Debtor wishes to provide adequate protection of the liens and security interests of the Bond Trustee in Cash Collateral and other Prepetition Collateral on the terms set forth in this Final Order, reflecting the agreement of the Debtor and the Bond Trustee.

R.      The Bond Trustee is willing to consent to the use of its Cash Collateral by the Debtor on the terms set forth in this Final Order, including that Cash Collateral is used solely in the amounts and categories set forth in the Cash Collateral Budget (as defined below).

S.      The terms of the proposed use of Cash Collateral, and this Final Order are fair and commercially reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration. Good cause has been shown for the entry of this Final Order.

T.      To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so-stated.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.      <u>Disposition</u>. The Motion is granted on a final basis, on the terms set forth in this Final Order. The date of this Final Order shall be known as the "<u>Effective Date</u>." Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn, and all reservations of rights contained therein, are overruled on the merits.

2.      <u>Jurisdiction</u>. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C.

7

§ 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The Debtor

has operated its business and managed its property as Debtor in possession pursuant to 11 U.S.C.

§§ 1107 and 1108. The Residents' Committee was appointed on February 11, 2019.

3. <u>Notice</u>. The Debtor has properly served notice of the Motion and the final

hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code,

Bankruptcy Rules 2002 and 4001, and the Local Rules, which notice was sent to, among others:

(i) counsel to the Bond Trustee; (ii) each of the Debtor's twenty largest unsecured creditors as set

forth in the list filed by the Debtor in the Chapter 11 Case pursuant to Bankruptcy Rule 1007(d);

(iii) counsel to the Residents' Committee; (iv) the Indiana Securities Division; (v) the Indiana

Department of Health; (vi) all known holders of liens on the Debtor's assets; (vii) all applicable

governmental agencies to the extent required by the Bankruptcy Rules or Local Rules; (viii) all

parties that have filed a notice of appearance in this Chapter 11 Case; (ix) the United States

Trustee; and (x) those who have formally appeared and requested service in these proceedings

pursuant to Bankruptcy Rule 2002. This notice is appropriate in the particular circumstances and

is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules

and Local Rules in respect to the relief requested.

4. <u>Good Cause</u>. Good cause has been shown for entry of this Final Order.

5. <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized to use, as cash

collateral (as defined in Section 363 of the Bankruptcy Code), Gross Revenues (as defined in the

Master Indenture) and other cash received by the Debtor in the ordinary course of operations of

its business, including all amounts currently held in the Debtor's operating account at Bank of

America (collectively, the "<u>Cash Collateral</u>"), until the earlier of (i) the Debtor's ability to use

Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth

EAST\165103292.10

below) or (ii) September 16, 2019. Such use of Cash Collateral is only permitted in accordance with the terms of this Final Order. Use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget"). Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget; provided, however, that the Debtor shall have authority to use Cash Collateral in excess of, and at times different from, the amounts set forth in the Cash Collateral Budget to the extent such a variance does not constitute a Termination Event described in paragraph 15(i) of this Final Order.

6. Exclusion from Cash Collateral. No party, other than the Debtor, may use the Cash Collateral of the Bond Trustee. The Debtor is not authorized to use and shall not use any Gross Revenues not derived in the ordinary course of the Debtor's operations. Nothing in the Interim Order, this Final Order, or in any subsequent order concerning the extension of the use of Cash Collateral, or other order of this Court entitles the Debtor to use any Trustee-Held Funds. The Trustee-Held Funds are held in trust for the Bondholders. In the alternative, the Bond Trustee holds a validly perfected possessory security interest in the Trustee-Held Funds, and is entitled to access the Trustee-Held Funds in accordance with the terms of the Bond Documents. The Bond Trustee is granted relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code for the purpose of allowing the Bond Trustee to administer and apply the Trustee-Held Funds in accordance with the Bond Documents.

7. Prohibited Use of Cash Collateral. Except as expressly provided in this Final Order, no Cash Collateral or proceeds thereof shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Collateral, the Bond Claim, or any liens

or security interests with respect thereto, or any other rights or interests of the Bond Trustee therein or in the Trustee-Held Funds; (ii) asserting any claims or defenses or causes of action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond Documents, against the Bond Trustee, the Bondholders in their capacity as such, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) paying any material amounts on account of claims arising before the Petition Date, except to the extent provided for in the Cash Collateral Budget and approved by the Court; (iv) seeking to modify any of the rights granted to the Bond Trustee hereunder; (v) seeking to bifurcate any claims of the Bond Trustee; or (vi) pursuing confirmation of a plan of reorganization or liquidation other than a plan of reorganization or liquidation consummating or following a sale of the Debtor's Facility in accordance with the process (the "Solicitation Process") outlined in the term sheet referenced in the Joint Motion of the Debtor and the Trustee for Continuation of Hearing [Docket No. 126].

8.    <u>Amendment or Extension of Budget</u>.  The Debtor may, at any time, propose to the Bond Trustee in writing (including by email) an amended Cash Collateral Budget, for the period covered by this Final Order.  Any such proposed amendment or modification of the terms and conditions, or any amendment, modification, roll-forward or replacement of the Cash Collateral Budget itself, shall be subject to the prior written consent of the Bond Trustee.  At such time as the amended budget becomes the Cash Collateral Budget, the Debtor shall file a copy thereof with this Court and serve it upon all parties entitled to notice in accordance with Bankruptcy Rule 4001(b).

9.    <u>Replacement Lien</u>.  Except as otherwise provided in this Section 9, as further

adequate protection for any diminution in the value of Cash Collateral and other Prepetition Collateral resulting from the Debtor's use thereof after the Petition Date ("Diminution"), and solely to the extent of any Diminution, the Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Prepetition Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "Postpetition Bond Collateral"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof (the "Supplemental Collateral"; and, collectively with the Postpetition Bond Collateral, the "Collateral"); provided, however, Supplemental Collateral shall be exclusive of causes of action under Chapter 5 of the Bankruptcy Code and proceeds thereof with the exception of any causes of action pursuant to Section 542 of the Bankruptcy Code).  The Replacement Lien shall be subject and subordinate to only the Carve Out (as defined below) and any valid and perfected liens existing on the Petition Date that are senior to Liens of the Bond Trustee against the Prepetition Collateral ("Prior Liens").

10.     No Further Action Required.  The approval of this Final Order by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the Replacement Lien granted to the Bond Trustee, whether or not the Bond Trustee elects to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to

11

obtain, evidence, or perfect such liens under applicable law; provided, however, that upon the request of the Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the Bond Trustee's liens and security interests. No obligation, payment, transfer, or grant of security under this Final Order shall be stayed (other than by court order in an appeal from this Final Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

11.     Superpriority Claim.  As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the Debtor's estate, including but not limited to rights of the Debtor, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual that for any reason cannot be made the subject of the Replacement Lien (the "Superpriority Claim").  The Superpriority Claim shall be subject only to Prior Liens and the Carve Out (as defined below) and shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind

12

specified in Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

12.    _Allowance of Claim_.  As set forth in paragraph 24 below, the entry of this Final Order by the Court shall be a conclusive and binding determination on all parties (x) as to the amount and validity of the Bond Claim, and (y) as to the scope, extent, perfection, validity, and enforceability, in all respects, of the Bond Trustee's security interests and liens in the Prepetition Collateral, including, without limitation, the Cash Collateral.

13.    _Financial Information_.  As further additional adequate protection of the Bond Trustee's security interests in the Cash Collateral and the Prepetition Collateral, the Debtor shall allow the Bond Trustee and its professionals and designees reasonable access, during normal business hours and on not less than 48 hours' notice, to the premises of the Debtor in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral and the Collateral, and shall otherwise reasonably cooperate in providing any other financial information reasonably requested by the Bond Trustee for this purpose.  The Debtor shall provide to the Bond Trustee and the Residents' Committee bi-weekly on the same day of the week, and at the same time as any reports provided pursuant to paragraph 15(i), a report indicating all receipts received and disbursements made by the Debtor in the two weeks ending the prior Friday compared to the Cash Collateral Budget and detailing any variances of more than 10% and at least $10,000 from the expenditures and receipts in the Cash Collateral Budget.  The Debtor and its professionals shall be

13

available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee and its representatives and professionals to discuss the status of the Solicitation Process and any plan of reorganization, the results of operations, and other matters pertaining to the Facility and the Chapter 11 Case. The Debtor and its professionals shall be separately available once a week (subject to reasonable notice) for a telephone conference call with the Committee and its professionals to discuss matters related to the Chapter 11 Case. The Bond Trustee's financial advisor, RBC Capital Markets, LLC ("RBC") shall have independent access to the investment banker retained by the Debtor provided that either (i) RBC requests a call with the independent banker retained by the Debtor by making such request to the Debtor's Chief Restructuring Officer who shall then provide a date and time for such call within forty-eight (48) hours of the request by RBC, on a conference line to be provided by the investment banker, in order to allow the Debtor's Chief Restructuring Officer or his designee the opportunity to participate on such call if desired, or (ii) the Debtor's Chief Restructuring Officer consents to RBC having such independent access to the investment banker for a particular call. The Debtor shall provide to the Bond Trustee and the Residents' Committee such other reports and information as the Bond Trustee may reasonably request from time to time.

14. **Compliance With Bond Documents**. As further adequate protection against Diminution, the Debtor shall comply with those terms and provisions of the Bond Documents set forth on **Exhibit B** attached hereto and incorporated herein. The requirements of this Final Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents set forth on Exhibit B; provided, however, in the event of any inconsistency between the Bond Documents and this Final Order, the terms of this Final Order shall control.

15.    <u>Termination of Use of Cash Collateral With Notice</u>.  A Termination Event shall be deemed to have occurred five (5) business days after written notice sent by the Bond Trustee to the Debtor, its counsel, the Residents' Committee and the United States Trustee of the occurrence of any of the following (a "<u>Termination Event</u>"):

(i)    the payment of any expense that would cause aggregate actual expenditures on a cumulative basis in the Cash Collateral Budget measured during any consecutive four week period to exceed one hundred ten percent (110%) of the total budgeted expenses in the Cash Collateral Budget for such measuring period, <u>provided</u> <u>however</u>, professional fees (including all fees identified under the heading "Restructuring Disbursements" in the Cash Collateral Budget with the exception of U.S. Trustee fees) and any fees of Seniority, Inc.[2] shall not be subject to any such variance.  This foregoing variances shall be measured on a bi-weekly basis.   Any budgeted expenditures not paid in a particular budget period may be paid during a subsequent period and, for the purpose of calculating the variances set forth above, the Cash Collateral Budget will be revised to move such expenditures to the later period;

(ii)    the failure of the Debtor to pay, within ten (10) days of the applicable due date, all undisputed administrative expenses in full in accordance with their terms as provided for in the Cash Collateral Budget except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

(iii)    the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930; and

(iv)    the failure of the Debtor to comply with, keep, observe, or perform any of its agreements or undertakings under this Final Order.

Unless prior to the expiration of the five (5) business day period described in this paragraph 15 the Debtor has cured the Termination Event(s) specified in the Bond Trustee's notice, or obtained an order of this Court, on notice to and with the opportunity to be heard by the Bond Trustee, that no such Termination Event has occurred, the authority of the Debtor to use Cash Collateral hereunder shall terminate without further action of any kind (the "Termination

---

[2]    The parties have agreed that the management fee shall be calculated at an agreed-to fee of 3.75 percent of revenues (which shall be accounted for by a true-up in subsequent budget periods if actual revenues are greater than or less than what is set forth in the Cash Collateral budget) and subject to further proforma adjustment for entrance fee receipts and obligations that would be paid in the normal course outside of the current bankruptcy process which requires that entrance fee receipts be placed in escrow and entrance fee obligations be accrued as an administrative expense.

Date"). In the event the Bond Trustee provides notice to the Debtor that a Termination Event has occurred under this Paragraph 15, the Debtor shall schedule a status conference within the five business day period following receipt of notice of a Termination Event and shall request that such status conference be held during such five business day period to discuss the occurrence of the Termination Event and the impact on the Debtor. The Bond Trustee shall take no action with respect to the enforcement of its prepetition and postpetition liens and security interests in the Collateral or to collect the amounts due from the Debtor until such status conference has been held.

16.     Termination of Use of Cash Collateral Without Prior Notice.  The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (also a "Termination Event"):

> (i)     the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;
>
> (ii)     the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application, or other pleading consenting to or acquiescing in any such appointment;
>
> (iii)     the Debtor fails to obtain an order approving bidding procedures relating to the sale of the Facility in a form acceptable to the Bond Trustee on or before April 10, 2019 (the "Approved Bidding Procedures") which date shall be subject to extension by the Bond Trustee without further order of the Court, and which Approved Bidding Procedures include the following deadlines and requirements (a failure to meet any deadlines set forth in the  below (a) through (e) shall also constitute a "Termination Event"):
>
>> (a) April 26, 2019 as the deadline for submission of initial letters of interest, which letters of interest shall be provided to the

EAST\165103292.10

Bond Trustee and Residents' Committee within twenty-four (24) hours of receipt by the Debtor;

(b) June 6, 2019, as the last date for the Debtor to execute an agreement with a stalking horse bidder, which date shall be subject to extension by the Bond Trustee without further order of the Court and which (i) selection shall be upon approval of the Bond Trustee, which shall not be unreasonably withheld, and upon consultation of the Residents' Committee; and (ii) documentation shall be subject to review and approval by the Bond Trustee and consultation by the Residents' Committee;

(c) July 19, 2019 as the deadline for the Debtor to conduct an auction (the "Auction"), which date shall be subject to extension by the Bond Trustee without further order of the Court;

(d) July 26, 2019, as the deadline for the Debtor to obtain an order approving the sale of the Debtor's Facility to the successful bidder at the Auction, which date shall be subject to extension by the Bond Trustee without further order of the Court; and

(e) August 8, 2019, as the deadline for the Debtor to obtain an order confirming a plan of reorganization or liquidation, which shall be subject to extension by the Bond Trustee without further order of the Court;

(iv) an order is entered in the Chapter 11 Case over the objection of the Bond Trustee approving financing pursuant to Section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Bond Trustee under this Final Cash Collateral Order; and

(v) an adversary proceeding or contested matter is commenced or joined by either the Debtor or the Residents' Committee challenging the amount, validity, enforceability, priority, or extent of the Bond Trustee's liens, security interests, or claims.

Upon the occurrence of a Termination Event described in this paragraph 16, the Debtor's authority to use Cash Collateral hereunder shall automatically terminate, and all amounts owed under the terms of this Final Order and shall be accelerated and immediately due and payable,

17

the Bond Trustee shall be permitted to exercise all available remedies without further notice or court order, and the Bond Trustee shall be automatically relieved of any further stay under Section 362 of the Bankruptcy Code, or other restriction on enforcement of its prepetition and postpetition liens and security interests in the Collateral to collect the amounts due (also a "Termination Date").  Following the occurrence of a Termination Event under this Paragraph 16, the Debtor shall schedule a status conference within five business days after the occurrence of such Termination Event to discuss the occurrence of the Termination Event and the impact on the Debtor.  Notwithstanding the foregoing provision regarding relief from the stay under Section 362 of the Bankruptcy Code, the Bond Trustee shall take no action with respect to the enforcement of its prepetition and postpetition liens and security interests in the Collateral or to collect the amounts due from the Debtor until such status conference has been held.

17.    Claims and Causes of Action.  On behalf of itself and the estate, the Debtor reaffirms, and hereby waives, releases, and discharges the Bond Trustee, all Bondholders in their capacity as such, and their respective affiliates, agents, attorneys, professionals, officers, directors, and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part, the Bonds and the Bond Documents; any aspect of the prepetition relationship between the Bond Trustee and/or the Bondholders, and the Debtor; and any other acts or omissions by the Bond Trustee and/or the Bondholders in connection with either the Bond Documents or the Bond Trustee's and/or Bondholders' prepetition relationship with the Debtor.  Further, the Debtor reaffirms its waiver and hereby waives any and all rights to object to or contest the amount of the Bond Claim or the Bond Trustee's security interest in the Prepetition Collateral and agrees not to challenge that all such claims and security interests have been duly perfected and are in all respects valid and

18

enforceable first priority security interests and liens.

18.    <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of the Bond Trustee to assert a claim under Sections 364(c) and 507(b) of the Bankruptcy Code.

19.    <u>Deemed Request for Stay Relief</u>.  This Final Order shall be deemed to constitute a request as of the Petition Date by the Bond Trustee for relief from the automatic stay with respect to the Prepetition Collateral for purposes of any request for adequate protection granted hereunder.

20.    <u>No Charge on Collateral; Carve Out</u>.  In partial consideration of the Debtor's continuing acknowledgement of the debt due and owing and the waiver of any claims under Section 506(c) and Section 552(b) of the Bankruptcy Code, the Bond Trustee consents to certain expenses and professional fees incurred during the pendency of this Chapter 11 Case that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "<u>Carve Out</u>").  For purposes hereof, the "Carve Out" means (a) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court; and (b) for a particular professional retained by the Debtor or the Residents' Committee, the fees and expenses of such professional solely to the extent such fees and expenses (i) have actually been incurred by the corresponding professional between the Petition Date and the Termination Date, (ii) are less than the aggregate amount provided for in the Cash Collateral Budget for such corresponding professional for the period between Petition Date and the Termination Date, and (iii) are Unpaid.  The term "<u>Unpaid</u>" shall mean fees and expenses that (x) have been allowed by the Court; (y) have not been paid by the Debtor or any other party; and (z) for which no retainer, deposit, or other identified funds is available to pay such fees and expenses.  Nothing herein shall

19

constitute a waiver of any right of the Bond Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses are not Unpaid.  The entry of this Final Order shall continue to be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the Bond Trustee or the Prepetition Collateral or the Collateral under Section 105 of the Bankruptcy Code or Section 506(c) or Section 552(b) of the Bankruptcy Code, or otherwise.

21.    <u>Escrowed Funds</u>.  To the extent the Debtor is holding post-petition entrance fees (the "<u>Entrance Fees</u>") in an escrow account pursuant to that *Agreed Order Authorizing Debtor to Escrow Certain Entrance Fees and Refund Certain Entrance Fees* (the "<u>Escrow Order</u>"), such Entrance Fees shall not be subject to the liens of the Bond Trustee until all conditions under that escrow are satisfied and the Debtor is authorized to release the funds from escrow pursuant to the Escrow Order or other order of the Court at which time the Bond Trustee's liens will attach to the Debtor's right to receive any Entrance Fees released from the escrow account.  The Debtor is authorized to make refund payments in accordance with the Escrow Order.

22.    <u>Modification of Stay</u>. The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Bond Trustee to: (i) receive any payments or distributions made by the Debtor to the Bond Trustee for and on behalf of the Bondholders, (ii) apply, allocate, or make payments from any of the funds or accounts maintained by the Bond Trustee (including, without limitation, the Trustee-Held Funds) in accordance with the terms of the Bond Documents, and (iii) take any action authorized by the Interim Order or this Final Order.

23.    <u>Preservation of Rights</u>. If any or all of the provisions of this Final Order are, at

EAST\165103292.10

any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under the Interim Order, or this Final Order prior to such stay, modification, or vacation.

24.     Binding Effect.  This Final Order shall be binding on all creditors and parties in interest in this Chapter 11 Case, including, but not limited to: the Debtor and any successors thereto, any Chapter 11 or Chapter 7 trustee that is appointed or elected in this Chapter 11 Case, and the Residents' Committee and any successors thereto.

25.     No Competing Liens.  Except as set forth herein, the Debtor shall not grant liens on, or security interests in, the Prepetition Collateral or the Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the Bond Trustee.

26.     Reservation of Rights.  Except as provided in this Final Order, neither the Debtor nor the Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtor or the Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time.

27.     Further Relief.  Nothing herein shall (i) preclude the Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay; or (ii) prevent the Bond Trustee from asserting at some later time that its liens and security interests in the Prepetition Collateral are not being adequately protected.

28.     No Third Party Beneficiaries. Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

29.     <u>Effectiveness</u>. The rights and obligations of the parties under this Final Order shall be effective and enforceable as of the date of the Petition Date, and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

30.     <u>Notices</u>. All notices, requests, demands, waivers, and other communications required or permitted to be given under this Final Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, or (b) sent by email with a next-day or overnight mail or delivery:

    (a)     If to the Debtor to:

        Ankura Consulting Group, LLC
        Attn: Louis E. Robichaux IV
        15950 Dallas Parkway, Suite 750
        Dallas, TX 75248
        Telephone:  (214) 200-3689
        E-mail:  Louis.robichaux@ankura.com

        with a copy sent contemporaneously by email to:

        DLA Piper LLP (US)
        Attn: Thomas R. Califano, Esq.
        1251 Avenue of the Americas
        New York, NY 10020-1104
        Telephone:  (212) 335-4500
        E-mail:  thomas.califano@dlapiper.com

    (b)     If to the Bond Trustee to:

        UMB Bank, N.A.
        Attn: Virginia A. Housum
        Senior Vice President
        120 Sixth Street South, Suite 1400

Minneapolis, MN 55403
E-mail: Virginia.housum@umb.com

with a copy sent contemporaneously by email to:

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Attn: Daniel S. Bleck, Esq.
One Financial Center
Boston, MA 02111
Telephone: (617) 348-4498
E-mail: dsbleck@mintz.com

(c)    If to the Residents' Committee to:

Faegre Baker Daniels LLP
Attn: Jay Jaffe, Esq.
600 E. 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-4687
E-mail: Jay.Jaffe@FaegreBD.com

Faegre Baker Daniels LLP
Attn: George R. Mesires, Esq.
Wacker Drive, Suite 4300
Chicago IL 60606
Telephone: (312) 356-5101
E-mail: George.Mesires@FaegreBD.com

Neligan LLP
Attn: Patrick J. Neligan, Jr.
325 N. St. Paul Street, Suite 3600
Dallas, TX 75201
Telephone: (214) 840-5333
E-mail: pneligan@neliganlaw.com

### ###END OF ORDER###

Order submitted by:

**DLA PIPER LLP (US)**

By:/s/ Daniel B. Prieto
Daniel B. Prieto, State Bar No. 24048744
dan.prieto@dlapiper.com
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201

23

EAST\165103292.10

Tel:  (214) 743-4500
Fax:  (214) 743-4545

- and -

Thomas R. Califano  (*admitted pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501

- and -

Rachel Nanes (*admitted pro hac vice*)
rachel.nanes@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel:  (305) 423-8563
Fax:  (305) 675-8206

*Counsel for the Debtor*

EAST\165103292.10

# EXHIBIT A

## Cash Collateral Budget

EAST\165103292.10

Mayflower Communities, Inc. - The Barrington of Carmel
Cash Collateral Budget
As of January 30, 2019
($ amounts presented in thousands)

| Week | Act 1 | Act 2 | Act 3 | Act 4 | Fcst 5 | Fcst 6 | Fcst 7 | Fcst 8 | Fcst 9 | Fcst 10 | Fcst 11 | Fcst 12 | Fcst 13 | Fcst 14 | Fcst 15 | Fcst 16 | Fcst 17 | Fcst 18 | Fcst 19 | Fcst 20 | Fcst 21 | Fcst 22 | Fcst 23 | Fcst 24 | Fcst 25 | Fcst 26 | Fcst 27 | Fcst 28 | Fcst 29 | Fcst 30 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 2/1/19 | 2/8/19 | 2/15/19 | 2/22/19 | 3/1/19 | 3/8/19 | 3/15/19 | 3/22/19 | 3/29/19 | 4/5/19 | 4/12/19 | 4/19/19 | 4/26/19 | 5/3/19 | 5/10/19 | 5/17/19 | 5/24/19 | 5/31/19 | 6/7/19 | 6/14/19 | 6/21/19 | 6/28/19 | 7/5/19 | 7/12/19 | 7/19/19 | 7/26/19 | 8/2/19 | 8/9/19 | 8/16/19 | 8/23/19 | Total |

*Operating Cash Receipts* and subsequent line items (Resident Receipts, Medicare Receipts, Entrance Fee Receipts, Other, Total Operating Receipts, Operating Cash Disbursements, Payroll, Payroll Taxes, & Benefits, Dining Services, Administration & Marketing, Buildings, Grounds, & Utilities, Ancillary & Therapy Services, Capital Expenditures, Management Fees, Entrance Fee Disbursements, Other Disbursements, Total Operating Disbursements, Debt Service, Non-Operating Disbursements, Debtor Counsel - DLA, Debtor Chief Restructuring Officer, Debtor Financial Advisor - Ankura, Debtor Accounting Advisor - Larx, Debtor Counsel - Foley, Resident Counsel / UCC, Independent Board Member, Patient Ombudsman, 506(b)(6), US Trustee and Filing Fees, Adequate Assurance - Utilities, Total Non-Operating Disbursements, Net Cash Flow, (+) Beginning Book Cash Balance, Ending Book Cash Balance) — values illegible at available resolution.

| Line item | Total |
|---|---|
| Operating Cash Receipts | |
| Resident Receipts | $9,809 |
| Medicare Receipts | 441 |
| Entrance Fee Receipts | — |
| Other | 183 |
| Total Operating Receipts | 9,733 |
| Operating Cash Disbursements | |
| Payroll, Payroll Taxes, & Benefits | (4,472) |
| Dining Services | (811) |
| Administration & Marketing | (1,533) |
| Buildings, Grounds, & Utilities | (692) |
| Ancillary & Therapy Services | (585) |
| Capital Expenditures | (168) |
| Management Fees | (444) |
| Total Operating Disbursements | (9,074) |
| Debt Service | (1,276) |
| Non-Operating Disbursements | |
| Debtor Counsel - DLA | (847) |
| Debtor Chief Restructuring Officer | (145) |
| Debtor Financial Advisor - Ankura | (415) |
| Debtor Accounting Advisor - Larx | (272) |
| Debtor Counsel - Foley | (189) |
| Resident Counsel / UCC | (82) |
| Independent Board Member | (70) |
| 506(b)(6) | (115) |
| US Trustee and Filing Fees | (25) |
| Total Non-Operating Disbursements | (2,365) |
| Net Cash Flow | $(2,982) |
| (+) Beginning Book Cash Balance | 3,295 |
| Ending Book Cash Balance | $719 |

**EXHIBIT B**

**Bond Covenants**

<u>**Relating to the Master Indenture**</u>

Section 406(a), (b), (c), (d), (f), (i), (j) and (k) (relating to corporate existence and maintenance of property)
Section 407 (relating to insurance)

<u>**Relating to the Loan Agreement**</u>

Section 7.4 (relating to compliance with laws)
Section 8.7 (related to licensure)