| | |
|---|---|
| Daniel B. Prieto, State Bar No. 24048744<br>dan.prieto@dlapiper.com<br>DLA Piper LLP (US)<br>1900 North Pearl Street, Suite 2200<br>Dallas, Texas 75201<br>Tel: (214) 743-4500<br>Fax: (214) 743-4545<br><br>COUNSEL FOR THE DEBTOR | Thomas R. Califano (admitted *pro hac vice*)<br>thomas.califano@dlapiper.com<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel: (212) 335-4500<br>Fax: (212) 335-4501<br><br>Rachel Nanes (admitted *pro hac vice*)<br>rachel.nanes@dlapiper.com<br>DLA Piper LLP (US)<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, Florida 33131<br>Tel: (305) 423-8563<br>Fax: (305) 675-8206 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **MAYFLOWER COMMUNITIES, INC.**[1] | § | |
| | § | **CASE NO. 19-30283 (HDH)** |
| Debtor. | § | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER**
**PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THE**
**EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR**
**MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE BANKRUPTCY COURT, EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE ST., DALLAS, TX 75242-1496 BY 4:00 P.M. (PREVAILING CENTRAL TIME), ON JUNE 23, 2019, WHICH IS AT LEAST 24 DAYS FROM THE SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

---

[1]  The last four digits of the Debtor's federal tax identification number are 6350.

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), extending the period during which the Debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by fifteen (15) days through and including June 14, 2019, and extending the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including August 13, 2019. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are section 1121(d) of the Bankruptcy Code and Local Rule 3016-1.

## BACKGROUND

**A.  In General**

4. On January 30, 2019 (the "Petition Date"), the Debtor commenced this chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Debtor is a not-for-profit corporation that operates a continuing care retirement community ("CCRC"), which offers its residents a continuum of care through the aging process. As of the Petition Date, 271 residents resided at the Debtor's facility.

7. The substantial majority of the Debtor's indebtedness is long-term municipal bond debt. The Debtor and UMB Bank, N.A., as bond trustee (the "Bond Trustee"), are parties to a series of bond documents pursuant to which the Debtor owes certain payment obligations (the "Payment Obligations"). Shortly before the Petition Date, the Debtor defaulted on the Payment Obligations.

8. This Chapter 11 Case is large and complex, involving many parties in interest, and more than $150 million in indebtedness. Accordingly, on February 5, 2019, the Court entered the *Order Granting Complex Chapter 11 Bankruptcy Case Treatment* [Docket No. 51].

9. On February 11, 2019, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Residents' Committee (the "Committee") [Docket No. 79] comprised of five residents currently living at the Debtor's facility. No trustee or examiner has been appointed in this Chapter 11 Case.

10. On March 4, 2019, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket Nos. 129 & 130] (collectively, the "Schedules").

11. Additional information regarding the Debtor and this Chapter 11 Case, including the Debtor's business operations, capital structure, and financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the *Declaration of Louis E. Robichaux IV*

*in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 18] (the "Robichaux Declaration").[2]

**B.  The Settlement**

12. Shortly after the Petition Date, several disputes arose between the Debtor and the Bond Trustee with respect to, among other things, the appropriate venue for this Chapter 11 Case, the validity of the Bond Trustee's liens in cash, the timeline for the sale of substantially all of the Debtor's assets, and the terms of a consensual budget for operating purposes and payment of professionals (collectively, the "Disputed Matters").

13. The Debtor and the Bond Trustee, however, engaged in extensive negotiations directed at resolving all Disputed Matters, establishing procedures for the sale of the Debtor's assets, including the treatment of Continuing Care Contracts as part of the sale process, and reaching an agreement on a consensual path for the Chapter 11 Case that is in the best interests of the Debtor, the Bond Trustee, the Debtor's residents and the Debtor's other creditors. Those negotiations resulted in the settlement (the "Settlement") described in the *Motion of the Debtor for Entry of an Order (I) Approving the Settlement and Compromise Between the Debtor and UMB Bank, N.A., as Trustee and (II) Granting Related Relief* [Docket No. 139] (the "Settlement Motion").

14. Among other things, the Settlement:

    i.  Allows the Debtor to operate its business in the ordinary course and administer its Chapter 11 Case in accordance with an agreed upon budget;

    ii.  Avoids time-consuming and expensive litigation over the perfection and extent of the Bond Trustee's security interests;

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Robichaux Declaration.

    iii.    Provides for consensual bid procedures and a sale timeline that have been formulated to reach the greatest number of prospective buyers and protect the interests of the Debtor's residents;

    iv.    Ensures that all Continuing Care Contracts and all past, current and future resident obligations are assumed by the prospective buyer;

    v.    Obviates the need for time-consuming and expensive litigation concerning the proper venue for the Chapter 11 Case; and

    vi.    Provides for the expeditious conclusion of the Chapter 11 Case for the benefit of the Debtor's estate, residents and creditors.

15. Pursuant to the Settlement, the Debtor and the Bond Trustee have also agreed to the following timeline of events and deadlines:

- **March 8, 2019** – Deadline for the Debtor to distribute a Confidential Information Memorandum ("CIM"), which CIM shall be subject to review and approval by the Bond Trustee and consultation by the Committee prior to such distribution;

- **April 26, 2019** – Deadline for submission of initial letters of intents ("LOIs"), which LOIs shall be provided to the Bond Trustee and the Committee within twenty-four (24) hours of receipt by the Debtor or its agents;

- **June 6, 2019** – Deadline for the Debtor to execute a definitive agreement with the Stalking Horse Bidder (as defined in the Settlement Motion), which (i) selection shall be upon approval of the Bond Trustee (which approval shall not be unreasonably withheld) and upon consultation of the Committee; and (ii) documentation shall be subject to review and approval by the Bond Trustee and consultation by the Committee;

- **July 19, 2019** – Deadline for auction; and

- **August 23, 2019** – Target date for closing of sale.

16. On April 11, 2019, the Court approved the Settlement [Docket No. 216].

5

**C.     The Sale Process**

17.     On April 26, 2019, the Debtor received several LOIs from potential stalking horse bidders. After carefully considering each of the LOIs and consulting with counsel to the Bond Trustee and Committee, the Debtor has engaged in extensive negotiations with one potential buyer to serve as the Stalking Horse (the "Prospective Stalking Horse").[3] In accordance with the Settlement, the Debtor intends to file a definitive asset purchase agreement with the Prospective Stalking Horse on or before June 6, 2019.

**RELIEF REQUESTED**

18.     Pursuant to sections 1121(b) and (c) of the Bankruptcy Code, the Debtor has an exclusive period in which to submit a plan and solicit acceptances thereof. The Exclusive Periods will terminate on May 30, 2019 and July 29, 2019, respectively.

19.     By this Motion, the Debtor seeks the entry of an order, pursuant to section 1121(d) of the Bankruptcy Code, extending (a) the Exclusive Filing Period by fifteen (15) days through and including June 14, 2019, and (b) the Exclusive Solicitation Period by fifteen (15) days through and including August 13, 2019, without prejudice to the Debtor's right to seek further extensions of the Exclusive Period as may be appropriate under the circumstances and as permitted by Bankruptcy Code section 1121(d).

**BASIS FOR RELIEF**

20.     Section 1121(b) of the Bankruptcy Code provides a debtor with the exclusive right to propose and file a chapter 11 plan for an initial period of 120 days after the commencement of a chapter 11 case. *See* 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code further provides that, if a debtor files a plan within the 120-day period, then it

---

[3] As of the date hereof, the Prospective Stalking Horse and the Debtor have not entered into a binding asset purchase agreement and, as such, the identity of the Prospective Stalking Horse has yet to be disclosed.

has a period of 180 days after the commencement of the case to obtain acceptance of such plan, during which time competing plans may not be filed. *See* 11 U.S.C. § 1121(c)(3).

21. Pursuant to section 1121(d) of the Bankruptcy Code, where the initial exclusive periods provided for in the Bankruptcy Code prove to be an inadequate time frame for proposal and solicitation of a plan, the Court may extend such periods for cause. *See* 11 U.S.C. § 1121(d).

22. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

23. In determining whether "cause" exists to extend the exclusivity periods, a court may consider a variety of factors to assess the totality of circumstances in each case. *See The Official Comm. of Unsecured Creditors of Mirant Americas Generation, LLC v. Mirant Corp. (In re Mirant Corp.),* Case No. 4-04-CV-476-A, 2004 WL 2250986, at *2-3 (N.D. Tex. Sept. 30, 2004) (noting that "[i]n virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization."); *In re Express One Int'l, Inc.,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re McLean Indus., Inc.,* 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

24. Even though Bankruptcy Code section 1121(d) does not define "cause," the following factors, among others, have been identified by courts as being relevant in determining

7

whether "cause" exists: (a) the size and complexity of the case; (b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists. *See, e.g., McLean Indus.*, 87 B.R. at 834 (citations omitted); *accord Express One Int'l, Inc.,* 194 B.R. at 100 (identifying the above-listed factors as relevant in determining whether "cause" exists to extend exclusivity).

25. The primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan. The exclusive periods are intended to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan without the deterioration and disruption that is likely to be caused by the filing of competing plans by non-debtor parties. *See id*. Courts in this and other districts have, on numerous occasions, granted extensions of the exclusivity periods in complex chapter 11 cases. *See, e.g., In re R.E. Loans, LLC*, Case No. 11-35865 (BJH) (Bankr. N.D. Tex. Jan. 12, 2012); *In re Heartland Automotive Holdings, Inc.*, Case No. 08-40047 (DML) (Bankr. N.D. Tex. May 6, 2008); *In re Home Interiors & Gifts, Inc.,* Case No. 08-31961 (BJH) (Bankr. N.D. Tex. Sept. 5, 2008); *In re TSIC, Inc.*, Case No. 08-10322 (KG) (Bankr. D. Del. July 17, 2008); *In re SN Liquidation, Inc.,* Case No. 07-11666 (KG) (Bankr. D. Del. Mar. 28, 2008).

8

26. For the reasons discussed below, the Debtor submits that sufficient "cause" exists to extend the Exclusive Periods.

27. First, this Chapter 11 Case is large and complex involving a significant amount of indebtedness and many parties in interest, including, but not limited to, the Committee, the Bond Trustee, and the Debtor's residents.

28. Additionally, the fact that the Debtor is a non-profit corporation that operates a CCRC adds to the complexity of this Chapter 11 Case because the sale of the Debtor's assets necessarily implicates additional considerations, including input from regulatory agencies and the impact of the bankruptcy on the Debtor's residents. This Chapter 11 Case is precisely the type of case for which the extension of exclusivity provisions of the Bankruptcy Code were contemplated. *See Express One Int'l, Inc.*, 194 B.R. at 100 (citing *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) ("The traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization.").

29. Furthermore, an extension of the Debtor's Exclusive Periods is justified by the significant progress made by the Debtor to date notwithstanding the size and complexity of this Chapter 11 Case. Notably, since the Petition Date, the Debtor has, among other things: (a) negotiated and obtained Court approval of the Settlement with the Bond Trustee; (b) prepared and filed the Schedules; (c) engaged a real estate broker to solicit offers for the purchase of substantially all of the Debtor's assets; (d) evaluated the LOIs and negotiated with the Prospective Stalking Horse; and (e) secured other forms of relief vital to the Debtor.

30. The Debtor intends to file a chapter 11 plan within the next two (2) weeks and after entering into a definitive agreement with the Prospective Stalking Horse. In light of such

9

progress and to allow for additional time to continue negotiations with the Prospective Stalking Horse, the Debtor believes an extension of the Exclusive Periods is justified.

31. The remaining factors also support granting an extension of the Exclusive Periods: (a) only a nominal amount of time (approximately four months) has elapsed since the Petition Date (seventh factor); (b) no unresolved contingencies exist (ninth factor); (c) the Debtor has made good faith efforts towards reorganization (third factor) and has demonstrated reasonable prospects for filing a viable plan (fifth factor); and (d) the Debtor is only seeking a 15-day extension of the Exclusive Periods which should not prejudice creditors and the extension of exclusivity is not being requested in order to pressure creditors (eighth factor).

32. Lastly, the Debtor's requested extension of the Exclusive Periods does not exceed the eighteen (18) month limitation for the exclusive period to file a plan or the twenty (20) month limitation for the exclusive period to solicit acceptances of a plan set forth in section 1121(d) of the Bankruptcy Code. Rather, the Debtor's requested extension is substantially less than these limitations.

33. Based upon the foregoing, the Debtor submits that cause exists to extend the Exclusive Filing Period through and including June 14, 2019, and the Exclusive Solicitation Period through and including August 13, 2019.

## NOTICE

34. Notice of this Motion shall be provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bond Trustee; (iv) the Internal Revenue Service; (v) the Offices of the Attorney General of the States of Indiana and Texas; (vi) the State of Indiana Department of Health; (vii) the Indiana Secretary of State, Securities Division; and (viii) those parties who

have requested notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that such notice is sufficient and that no further notice of this Motion is required.

## NO PRIOR REQUEST

35. No previous motion for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests the entry of an order, in substantially the form attached hereto as **Exhibit A**, authorizing the extension of the Exclusive Periods and granting such other and further relief as the Court deems just and proper.

Dated: May 30, 2019
Dallas, Texas

**DLA PIPER LLP (US)**

By: _/s/ Daniel B. Prieto_
Daniel B. Prieto, State Bar No. 24048744
dan.prieto@dlapiper.com
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545

- and -

Thomas R. Califano (admitted *pro hac vice*)
thomas.califano@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501

- and -

Rachel Nanes (admitted *pro hac vice*)
rachel.nanes@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel:  (305) 423-8563
Fax:  (305) 675-8206

*Counsel for the Debtor*