

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 26, 2019**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **MAYFLOWER COMMUNITIES, INC.[1]** | § | |
| | § | **CASE NO. 19-30283 (HDH)** |
| Debtor. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

WHEREAS, Mayflower Communities, Inc., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), having proposed and filed with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") (i) the *Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (as further modified, amended, and/or supplemented from time to time, including as

---

[1]  The last four digits of the Debtor's federal tax identification number are 6350.  The mailing address for the Debtor is 1335 S. Guilford Road Carmel, Indiana 46032-2810.

modified herein, the "Plan"),[2] a copy of which is annexed hereto as **Exhibit A**, (ii) that certain related *First Amended Disclosure Statement for Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of August 5, 2019 [Docket No. 322-2] (the "Disclosure Statement"), and (iii) the *Notice of Filing of Plan Supplement to the Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of September 6, 2019 [Docket No. 335] (as amended, modified, and/or supplemented from time to time, the "Plan Supplement"); and

WHEREAS, on August 5, 2019, the Bankruptcy Court entered the *Order (I) Approving Disclosure Statement, (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Debtor's Chapter 11 Plan, (III) Scheduling a Confirmation Hearing, and (IV) Approving Related Notice Procedures* [Docket No. 320] (the "Solicitation Procedures Order"), which, among other things, approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing"), and approved certain procedures for the solicitation of votes to accept or reject the Plan (the "Solicitation Procedures"); and

WHEREAS, the appropriate Ballots for voting on the Plan were duly transmitted to Holders of Claims entitled to vote on the Plan in accordance with the Solicitation Procedures as set forth in the *Declaration of John Burlacu on Behalf of Donlin, Recano and Company, Inc. Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code,* dated as of September 12, 2019 [Docket No. 338] (the "Voting Certification"); and

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or in the Solicitation Procedures Order (as defined below).

WHEREAS, on September 12, 2019, the Debtor filed that certain *Declaration of Louis E. Robichaux IV in Support of Confirmation of the Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of September 12, 2019 [Docket No. 339] (the "Robichaux Declaration"), and *Debtor's Memorandum of Law in Support of Confirmation of the Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 340] (the "Memorandum of Law") in support of confirmation of the Plan; and

WHEREAS, due notice of the Confirmation Hearing has been given to Holders of Claims against and Interests in the Debtor and other parties in interest in compliance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and the Solicitation Procedures Order as established by the affidavits of service, mailing, and/or publication filed with the Bankruptcy Court, including (1) the *Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to First Amended Disclosure Statement for Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of August 14, 2019 [Docket No. 326] (the "Solicitation Affidavit"), and (2) *Affidavits of Publication*, dated as of August 15, 2019 and August 21, 2019 [Docket Nos. 330 & 337] (the "Publication Affidavits" and collectively with the Solicitation Affidavit, the "Confirmation Hearing Notice Affidavits"); and

WHEREAS, notice of the Confirmation Hearing, as evidenced by the Confirmation Hearing Notice Affidavits, is sufficient under the circumstances and no further notice is required; and

WHEREAS, the Bankruptcy Court having held the Confirmation Hearing on September 17, 2019, to consider confirmation of the Plan and having noted that there were no objections to the Plan, other than informal comments from the United States Trustee which were resolved by agreement; and

NOW, THEREFORE, based upon the Bankruptcy Court's consideration of the entire record of this Chapter 11 Case and the Confirmation Hearing, including (1) the Disclosure Statement, the Plan, the Plan Supplement, and the Voting Certification, (2) the Debtor's Memorandum of Law, (3) the Robichaux Declaration, and (4) the Confirmation Hearing Notice Affidavits; and no objections to the Plan having been filed or asserted; and upon the arguments of counsel and the evidence adduced at the Confirmation Hearing; and the Bankruptcy Court having found the Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Bankruptcy Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Findings and Conclusions.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Bankruptcy Rules.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)

and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

C. <u>Judicial Notice</u>. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of this Chapter 11 Case.

D. <u>Burden of Proof</u>. The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met its burden with respect to each applicable element of section 1129 of the Bankruptcy Code.

E. <u>Chapter 11 Petition</u>. On January 30, 2019 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtor continued as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

F. <u>Official Residents' Committee</u>. On February 11, 2019, the Office of the United States Trustee (the "<u>United States Trustee</u>") appointed an Official Residents' Committee (the "<u>Residents' Committee</u>") [Docket No. 79] comprised of five residents living at the Debtor's facility.

G. <u>Modifications to the Plan</u>. As a result of certain concerns raised by the United States Trustee in the Chapter 11 Case prior to the Confirmation Hearing, the Debtor has agreed to certain modifications to the Plan described below (collectively, the "<u>Modifications</u>"). To the

extent there are any inconsistences between the Plan and the Modifications, the Modifications shall control.

    i.     Section 11.4 of the Plan shall be amended and restated as follows (deletions shown in strikethrough):

*Releases by Holders of Claims.* ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO (I) VOTED TO ACCEPT THIS PLAN ~~OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE~~; OR (II) ~~ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO~~ VOTED TO REJECT THIS PLAN ~~OR ABSTAIN FROM VOTING~~ AND DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASE OR AFFECTING PROPERTY OF THE ESTATE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR

(C) THE HOLDER OF SUCH CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 OF THIS PLAN. THE RELEASES SET FORTH IN THIS PLAN, INCLUDING BUT NOT LIMITED TO IN THIS SECTION 11.4, SHALL NOT RELEASE ANY CLAIMS OR CAUSES OF ACTION AGAINST SENIORITY, INC. OR SQLC WITH RESPECT TO ACTIONS OR CONDUCT RELATED TO FACILITIES OTHER THAN THE DEBTOR.

ii. The definition of "Exculpated Party" in the Plan shall be amended and restated as follows (additions shown in underline and bold):

*Exculpated Party* means each of: (i) the Debtor; (ii) the Residents' Committee; (iii) the Bond Trustee; (iv) the Liquidating Trustee; (v) the Liquidating Trust; and (vi) the current and former officers, directors, members, managers, employees, attorneys, consultants and advisors, each in their respective capacities as such **that served in such capacities on or after the Petition Date,** of each of the foregoing.

### Notice and the Solicitation Process

H. <u>Solicitation</u>. In accordance with the Solicitation Procedures Order and as evidenced by the Confirmation Hearing Notice Affidavits and Voting Certification, on or around August 5, 2019, the Debtor caused the Voting Agent to distribute the Confirmation Hearing Notice, the appropriate Ballots, and return envelopes to Holders of Claims in the following Classes Impaired under the Plan and entitled to vote thereon (collectively, the "<u>Voting Classes</u>"):

| Class | Claims and Interests | Status | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 2 | Bondholder Secured Claim | Impaired | Yes |
| 3 | Other Secured Claims[3] | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |

[3] There were no Other Secured Claims asserted against the Debtor. Therefore, while Class 3 is listed as a Voting Class, there were no Ballots solicited or received in connection with Class 3.

The Voting Classes were the only Classes of Creditors entitled to vote to accept or reject the Plan. As evidenced by the Voting Certification and the Confirmation Hearing Notice Affidavits, the Solicitation Packages were transmitted and served in compliance with the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and other applicable law. The period during which the Debtor solicited acceptances to the Plan was a reasonable period of time for Holders entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

On or around August 5, 2019, and in accordance with the Solicitation Procedures Order and Solicitation Procedures approved thereby, the Debtor caused the Voting Agent to transmit and serve the Confirmation Hearing Notice and Non-Voting Notice (as defined in the Solicitation Procedures Order) on the following Classes, referred to herein as the "Deemed Accepting Class":

| Class | Claims and Interests | Status | Entitled to Vote |
|-------|----------------------|--------|------------------|
| 1 | Other Priority Claims | Unimpaired | No |

Pursuant to section 1126(f) of the Bankruptcy Code, the Debtor was not required to solicit votes from the Holders of Claims in the Deemed Accepting Class as such Class is Unimpaired under the Plan, and thus, the Holders of such Claims are deemed to have accepted the Plan.

On or around August 5, 2019, and in accordance with the Solicitation Procedures Order and Solicitation Procedures approved thereby, the Debtor caused the Voting Agent to transmit and serve the Confirmation Hearing Notice and Non-Voting Notice on the following Class, referred to herein as the "Deemed Rejecting Class":

| Class | Claims and Interests | Status | Entitled to Vote |
|-------|---------------------|--------|------------------|
| 5 | Interests in the Barrington | Impaired | No |

The Debtor was not required to solicit votes from the Holders of Interests in the Deemed Rejecting Class as each such Holder will not receive or retain any property under the Plan and, thus, the Holders of such Interests, as applicable, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

I.      Notice.  As evidenced by the Confirmation Hearing Notice Affidavits and/or the Robichaux Declaration, and in compliance with the Solicitation Procedures Order, the Debtor also caused the following to occur:

      i.      On or around August 8, 2019, the Debtor caused the Voting Agent to serve the Resident Notice on each of the Residents at the Debtor's Facility.  The Resident Notice, among other things, notified residents of the filing of the Plan, the deadline for objecting to the Plan and the date and time of the Confirmation Hearing;

      ii.      On or around August 12, 2019 and August 21, 2019, the Debtor caused the Publication Notice to be published in *The Northwest Indiana Times* and *The Times of Noblesville*; and

      iii.      On or around August 8, 2019, the Debtor caused the Voting Agent to serve the Confirmation Hearing Notice on all parties requesting notice under Rule 2002 of the Bankruptcy Rules.

J.      No Other or Further Notice or Solicitation Required.  As evidenced by the Voting Certification and Confirmation Hearing Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Solicitation Procedures Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had sufficient opportunity to appear and be heard

with respect thereto. The solicitation of votes on the Plan complied with the Solicitation Procedures and Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. No other or further notice or re-solicitation is required.

K. <u>Good Faith Solicitation</u>. Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor and its successors, predecessors, partners, representatives, control persons, members, officers, directors, employees, agents and their respective attorneys and other advisors (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of votes on the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan and, therefore, are not, and on account of any such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in section 11.5 of the Plan.

L. <u>Voting</u>. As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the

Solicitation Procedures Order, the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

M.    <u>Plan Supplement</u>.  All documents contained in the Plan Supplement, including the Liquidating Trust Agreement, comply with the terms of the Plan, and the filing, notice, and service of such documents were done in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, and no other or further notice is or shall be required.

<b><u>Compliance with the Requirements of Section 1129 of the Bankruptcy Code</u></b>

N.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated, identifies the Debtor as the plan proponent, and clearly identifies the injunction proposed under the Plan, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

i.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  With the exception of Administrative Expense Claims, Accrued Professional Compensation Claims and Priority Tax Claims which need not be classified, section 3 of the Plan classifies the Classes of Claims against and Interests in the Debtor.  The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan does not unfairly discriminate between Holders of Claims and Interests in each Class or between Classes.  Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

ii.    Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2)).  Section 3 of the Plan specifies which Classes of Claims and Interests are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

iii.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Sections 3 and 4 of the Plan specify which Classes of Claims and Interests are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to less favorable treatment for such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

v.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (i) the establishment of the Liquidating Trust and the appointment of the Liquidating Trustee, (ii) the transfer of the Liquidating Trust Assets to the Liquidating Trust to be administered in accordance with the terms of the Plan and the Liquidating Trust Agreement for the benefit of the Liquidating Trust's beneficiaries, and (iii) procedures for making distributions to Holders of Allowed Claims. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

vi. <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Plan does not provide for the issuance of nonvoting equity securities, therefore section 1123(a)(6) of the Bankruptcy Code is inapplicable to this Chapter 11 Case.

vii. <u>Appointment of Liquidating Trustee (11 U.S.C. § 1123(a)(7))</u>. Section 6.2 of the Plan and the Liquidating Trust Agreement contain provisions regarding the manner of selection of the Liquidating Trustee and any successor Liquidating Trustee that are consistent with the interests of Holders of Claims and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

viii. <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>. Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to this Chapter 11 Case.

ix. <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>. As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to sections 3 and 4 of the Plan, Claims or Interests in the Voting Classes and Deemed Rejecting Class are Impaired and Claims or Interests in the Deemed Accepting Class are Unimpaired.

x. <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>. Section 9 of the Plan governs the assumption and rejection of Executory Contracts and Unexpired Leases pursuant to sections 363 and 365 of the Bankruptcy Code, as applicable, thereby satisfying section 1123(b)(2) of the Bankruptcy Code.

xi. <u>Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3))</u>. Sections 6.2 and 11.14 of the Plan provide for the retention of Causes of Action not expressly settled or released under the Plan. Thus, the Plan satisfies the requirements of section 1123(b)(3) of the Bankruptcy Code.

xii.     Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4)).  As contemplated by section 1123(b)(4) of the Bankruptcy Code, the Plan provides for the distribution of the Net Sale Proceeds to Holders of the Bondholder Secured Claim in accordance with the Plan.  Thus, the Plan satisfies section 1123(b)(4) of the Bankruptcy Code.

xiii.     Modification of Rights (11 U.S.C. § 1123(b)(5)).  As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Interests in the Voting Classes and Deemed Rejecting Class.  The Plan leaves unaffected the rights of Holders of Claims in the Deemed Accepting Class.

xiv.     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in section 11 of the Plan. Based upon the facts and circumstances of this Chapter 11 Case, the release, exculpation, and injunction provisions in the Plan, as modified by the Modifications and this Confirmation Order, are integral and critical parts of the Plan, and the Released Parties and Exculpated Parties have relied on the efficacy and conclusive effects of such releases and injunctions when making concessions and exchanging consideration in connection with the Chapter 11 Case and the Plan. Such release, exculpation, and injunction provisions in section 11 of the Plan, as modified by the Modifications and this Confirmation Order, are:  (i) in exchange for the good, valuable, and reasonably equivalent consideration provided by the Released Parties; (ii) in the best interests of the Debtor, its Estate, and its Creditors; (iii) fair, equitable, and reasonable; and (iv) a bar to any of the Releasing Parties as set forth in the Plan asserting any Claims or Causes of Action released pursuant to the Plan.  Accordingly, based upon the record of this Chapter 11 Case, the

representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in section 11 of the Plan, as modified by the Modifications and this Confirmation Order, are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

xv.　Sale of Exempt Property (11 U.S.C. § 1123(c)).　The Debtor is not an individual. Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

xvi.　Cure of Defaults (11 U.S.C. § 1123(d)).　Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, including the Stalking Horse APA, each of the Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease:　(1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sale.　Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under the Plan or otherwise is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure.　If there is a dispute regarding (i) the nature or amount of any Cure, or (ii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.　As required by Bankruptcy Code section 365(b)(1), any monetary amounts by which any Executory Contract or Unexpired Lease that may be assumed in connection with the Sale is in default shall

be satisfied by payment or provision for payment of the required cure amount, if any. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O.      The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor, as the plan proponent, has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, and other applicable law in transmitting the Plan, the Disclosure Statement, the Plan Supplement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

P.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed the Plan, including the Plan Supplement and all documents necessary to effectuate the Plan, and the transactions contemplated by the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Assets and distributions to Creditors. Further, the Plan's classification, exculpation, release, and injunction provisions, as modified by the Modifications and this Confirmation Order, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Fifth Circuit, have been negotiated in good faith and at arms' length, are integral to the Plan, and supported by valuable consideration.

Q.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payments made or promised by the Debtor for services or for costs and expenses incurred in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter

11 Case, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

R. <u>Directors, Officers, and Trustees (11 U.S.C. § 1129(a)(5))</u>. The Plan satisfies section 1129(a)(5) of the Bankruptcy Code as the identity of the Liquidating Trustee has been fully disclosed in the Plan Supplement and at the Confirmation Hearing, and the appointment of the Liquidating Trustee is consistent with the interests of Holders of Claims against the Debtor and with public policy.

S. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable to this Chapter 11 Case.

T. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. Each Holder of an Impaired Claim or Interest (i) has accepted the Plan, (ii) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, or (iii) has agreed to receive less favorable treatment. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

U. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. The Deemed Rejecting Class is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As set forth herein, and pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Deemed Rejecting Class is Impaired under the Plan and is deemed to have rejected the Plan.

As evidenced by the Voting Certification, Class 2 (Bondholder Secured Claim) and Class 4 (General Unsecured Claims) (together, the "Accepting Classes")[4] voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, and such Classes do not include insiders of the Debtor (as that term is defined in section 101(31) of the Bankruptcy Code).

V. <u>Treatment of Administrative Expense Claims and Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Claims under the Plan of the type specified in section 507(a)(1) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

W. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. As evidenced by the Voting Certification, section 1129(a)(10) of the Bankruptcy Code is satisfied as the Accepting Classes have accepted the Plan, determined without including any acceptances of the Plan by any insider.

X. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information in the Disclosure Statement, the Plan Supplement, the Robichaux Declaration, and the evidence proffered or adduced at or prior to the Confirmation Hearing (a) is reasonable, persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that the Plan is feasible and that there is a reasonable prospect that the Debtor will be able to meet its financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

---

[4] There were no Other Secured Claims asserted against the Debtor. Therefore, while Class 3 is listed as a Voting Class, there were no Ballots solicited or received in connection with Class 3.

Y. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. As provided in section 14.1 of the Plan, all fees payable under section 1930 of title 28 of the United States Code have either been paid or will be paid under the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code. Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees. All statutory fees under 28 U.S.C. § 1930 with respect to the period prior to the Effective Date shall be paid by the Debtor from funds of the Estate on or prior to the Effective Date as and when such fees become due and payable.

Z. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtor has no obligations for retiree benefits as that term is defined in section 1114 of the Bankruptcy Code, thus the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable.

AA. <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

BB. <u>Debtor Is Not An Individual (11 U.S.C. § 1129(a)(15))</u>. The Debtor is not an individual. Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

CC. <u>Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. All transfers of property under the Plan have been made in accordance with applicable provisions of nonbankruptcy law that govern the transfer of such property by a corporation that is not a

moneyed, business or commercial corporation or trust, thereby satisfying the requirements of section 1129(a)(16) of the Bankruptcy Code.

DD.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Based upon the evidence proffered, adduced, and presented by the Debtor at the Confirmation Hearing, in the Disclosure Statement, and in the Robichaux Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Class as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any Claim or Interest that is junior to such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by the Deemed Rejecting Class.

EE.    Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan being confirmed in this Chapter 11 Case.  Thus, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

FF.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    Exemption from Transfer Tax (11 U.S.C. § 1146(a)).  All transactions contemplated by the Plan, and the purchase, sale, and assignment transactions under the Plan are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax,

20

Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

HH.    Modifications of the Plan (11 U.S.C. § 1127).  Any modifications made to the Plan since the solicitation thereof, including the Modifications described herein, do not constitute changes that materially and adversely change the treatment of any Claims or Interests. Accordingly, these modifications comply in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and none of the modifications requires additional disclosure or resolicitation of votes on the Plan.  Under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified.  The Plan as modified shall constitute the Plan submitted for confirmation.

II.    Implementation.  All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and are in the best interests of the Debtor, and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

JJ.    Injunction, Exculpation, and Releases.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Section 11 and elsewhere in the Plan and this Confirmation Order.  Section 105(a) of the Bankruptcy Code permits issuance of injunction and approval of the releases and exculpations set forth in Section 11 and elsewhere in the Plan and this Confirmation Order, if, as has been established here based upon the record in the Chapter 11 Case and the evidence presented in the Robichaux Declaration and the Confirmation Hearing,

such provisions (i) were integral to the agreement amount the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtor's Estate, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtor, its Estate, and parties in interest.

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunction set forth in the Plan, as modified by the Modifications and this Confirmation Order, and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtor, its Estate and Creditors. The Robichaux Declaration and the record of the Confirmation Hearing and the Chapter 11 Case are sufficient to support the releases, exculpation, and injunction provided for in section 11 of the Plan. Accordingly, based upon the record of the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Robichaux Declaration and the Confirmation Hearing, the Bankruptcy Court finds that the injunction, exculpation, and releases set forth in section 11 of the Plan, as modified by the Modifications and this Confirmation Order, are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, release, and exculpation provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan.

KK.    _Preservation of Causes of Action_.  It is in the best interests of the Debtor, and Holders of Claims against and Interests in the Debtor that all Causes of Action, including, without limitation, any avoidance or recovery actions under sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and any other Causes of Action that may be pending or exist on the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, shall vest in the Liquidating Trust, and from and after the

Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or, subject to the Plan, abandon such Causes of Action as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.

LL.     Satisfaction of Confirmation Requirements.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.      Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though more fully set forth herein.

2.      Notice of the Confirmation Hearing.  Notice of the Confirmation Hearing complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

3.      Plan Modifications.  The modifications and amendments to the Plan through the date hereof, including the Modifications described herein, meet the requirements of section 1127(a) and (c) of the Bankruptcy Code, such modifications do not materially and adversely affect the treatment of the Claim of any Creditor of Interest Holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.  The Plan is hereby amended to include the Modifications described herein.

4.      Solicitation and Tabulation.  The solicitation and tabulation of votes on the Plan complied with applicable bankruptcy and nonbankruptcy law, were appropriate and satisfactory

based upon the circumstances of the Chapter 11 Case, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order and applicable non-bankruptcy law.

5.      Confirmation of the Plan.  The Plan and each of its provisions and exhibits, including the Plan Supplement, as modified in accordance with section 1127 of the Bankruptcy Code, shall be, and hereby are, CONFIRMED pursuant to section 1129 of the Bankruptcy Code. The Liquidating Trust Agreement contained in the Plan Supplement is authorized and approved. Each provision of the Plan, as modified herein, is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified, as modified at the Confirmation Hearing, and as modified herein, are incorporated by reference into and are an integral part of this Confirmation Order. The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and all related documents be approved and confirmed in their entirety.

6.      Satisfaction of Claims.  To the fullest extent provided under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided herein or in the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction and settlement, as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor's Estate, the Debtor, or any of the Debtor's assets

or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the Holder of such a Claim or Interest has accepted the Plan. This Confirmation Order shall be a judicial determination of the satisfaction of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided herein or in the Plan.

7.      <u>Compromise of Controversies</u>.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order shall constitute this Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. After the Effective Date, the Liquidating Trustee, on behalf of the Debtor, may, and shall have

the exclusive right to, compromise and settle any Claims against the Debtor or Liquidating Trust, as the case may be, and Causes of Action against any other Person subject to the provisions of the Plan.

8.  Administrative Expense Claims. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim, including, but not limited to, a Claim pursuant to section 503(b)(9) of the Bankruptcy Code ("Section 503(b)(9) Claims"), that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim or Proof of Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court). **Any Administrative Expense Claims, including Section 503(b)(9) Claims, that are not asserted in accordance herewith and with Section 2.1 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, its Estate, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.** In connection with Section 503(b)(9) Claims only, objections to such Claims must be filed on or before forty-five (45) days following the filing of the Claim or the Effective Date, whichever is later. If no objection is timely filed in accordance with the foregoing sentence, the Section 503(b)(9) Claim shall be deemed Allowed and the requested amount shall be promptly paid by the Liquidating Trustee. In the event a timely objection to a Section 503(b)(9) Claim is filed with the Bankruptcy Court, the Liquidating Trustee shall pay such Section 503(b)(9) Claim within five (5) Business Days after the date such Claim is Allowed by Order of the Bankruptcy Court. With respect to Administrative Expense Claims, other than Section 503(b)(9) Claims,

filed in accordance herewith and section 2.1(a) of the Plan, the Liquidating Trustee shall pay the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court.

9. Accrued Professional Compensation Claims. All Professionals seeking payment of Accrued Professional Compensation Claims shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is thirty (30) days after the Effective Date and (b) be paid (i) the full unpaid amounts as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtor or Liquidating Trustee. **Any Accrued Professional Compensation Claim that is not asserted in accordance herewith and with Section 2.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, its Estate, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.**

10. Liquidating Trust. The provisions of the Plan governing the Liquidating Trust and the appointment of the Liquidating Trustee are approved and found to be reasonable and appropriate.

11. Liquidating Trust Reserve. Pursuant to section 6.2(b) of the Plan, on the Effective Date, a Liquidating Trust Reserve in the amount of $5,528,500.00 will be funded to the Liquidating Trust for purposes of the line items set forth in (i) the budget attached to the *Agreed Amendment to Final Order (1) Authorizing the Debtor to Use Cash Collateral of UMB Bank,*

*N.A., as Bond Trustee; (2) Providing UMB Bank, N.A., as Bond Trustee, Adequate Protection; and (3) Modifying the Automatic Stay* filed contemporaneously herewith (the "Revised Budget") and (ii) the wind down budget attached hereto as **Exhibit B** (the "Wind Down Budget") and to permit the Debtor and the Liquidating Trustee to satisfy all obligations under the Plan and Liquidating Trust Agreement, including: (i) 100% of the Allowed Accrued Professional Compensation Claims that may be allowed yet have not been previously paid; (ii) 100% of the Allowed Administrative Expenses Claims that have not been previously paid; (iii) 100% of the Allowed Priority Claims that have not been previously paid; (iv) such other amounts that need to be paid pursuant to the Plan and Liquidating Trust Agreement; and (v) such amounts that are necessary to administer and operate the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Professionals reserve the right to seek payment of professional fees and expenses in excess of the amounts provided for in the Revised Budget. The Bond Trustee reserves all rights to object to the fees referenced in the foregoing sentence, as well as to all other professional fees paid or sought during the Chapter 11 Case, or otherwise reserved for in the Liquidating Trust Reserve. The Professionals reserve all rights to the contrary. The issue will be heard by this Court at the hearing on the Professionals' final fee applications. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, including any budgetary limitation in the Plan's definition of "Allowed Accrued Professional Compensation Claims," or any amounts budgeted in the Revised Budget, in the event the Bankruptcy Court determines that the fees and expenses of the Professionals are Allowed, the Liquidating Trustee shall be authorized to pay such Allowed amounts from the Liquidating Trust Reserve.

Notwithstanding anything in the Plan to the contrary, the Liquidating Trust Reserve shall be funded from the Debtor's Cash on hand on the Effective Date, which includes, but is not limited to, the Distribution Reserve established pursuant to the *Order (I) Approving the Asset Purchase Agreement Between the Debtor and Prairie Landing Community, Inc.; (II) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* [Docket No. 318]. All book Cash of the Debtor on the Effective Date remaining after the funding of the Liquidating Trust Reserve totaling approximately $2,913,889.00 shall be remitted to the Bond Trustee within three (3) Business Days of the Effective Date. To the extent not paid prior to the Effective Date, the Liquidating Trustee shall be authorized to pay all Allowed Accrued Professional Compensation Claims as set forth in the foregoing paragraph, Allowed Administrative Expense Claims, Allowed Priority Claims and such amounts necessary to administer and operate the Liquidating Trust from the Liquidating Trust Reserve in accordance with the Plan and the Liquidating Trust Agreement. To the extent the Liquidating Trust Reserve is not needed to fund the foregoing Claims and amounts as determined by the Liquidating Trustee in her reasonable discretion, such excess funds shall remain subject to the Bond Trustee's Lien and transferred to the Bond Trustee.

12. <u>General Authorizations</u>. The Debtor and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or

contemplated by the Plan. The Debtor or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Debtor or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan. Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the officers, directors, partners, or managers, direct or indirect, of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the State of Texas and any other relevant jurisdiction, without any further vote, consent, approval, authorization, or other action by such officers, directors, partners, or managers of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

13.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, including the Stalking Horse APA, each of the Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sale.

14.     <u>Rejection Damages</u>.  Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of

Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtor or the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided, that* any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by section 502(b)(6) of the Bankruptcy Code. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor or the Liquidating Trustee, the Debtor's Estate or their property without the need for any objection by the Debtor or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the Debtor and shall be treated in accordance with the Plan.

15. <u>Claims Objections</u>. The Debtor (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan. Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Debtor and the Liquidating Trustee reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

16.    <u>Distributions</u>.  The provisions of the Plan governing distributions and procedures for resolving and treating Disputed Claims under the Plan are approved and found to be fair and reasonable.

17.    <u>Consents and Approvals</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or governmental authority with respect to the implementation or consummation of the Plan and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, any documents, instruments or agreement that may be necessary or appropriate for the implementation or consummation of the Plan, and any other acts referred to in, or contemplated by the Plan.

18.    <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, but subject to section 10.2 of the Plan, on the Effective Date, and effective as of the Effective Date, the Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, the Liquating Trust, the Bond Trustee, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Person acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, any other party in interest in the Chapter 11 Case, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

19.    <u>Releases by the Debtor</u>.  On and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims,

obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Sale or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtor Released Claims"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

20.     _Releases by Holders of Claims_.   ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THE PLAN, ALL PERSONS WHO VOTED TO ACCEPT THE PLAN AND DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE

CHAPTER 11 CASE OR AFFECTING PROPERTY OF THE ESTATE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THE PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR (C) THE HOLDER OF SUCH CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THE PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 OF THE PLAN. THE RELEASES SET

FORTH IN THE PLAN, INCLUDING BUT NOT LIMITED TO IN SECTION 11.4, SHALL NOT RELEASE ANY CLAIMS OR CAUSES OF ACTION AGAINST SENIORITY, INC. OR SQLC WITH RESPECT TO ACTIONS OR CONDUCT RELATED TO FACILITIES OTHER THAN THE DEBTOR.

21. <u>Exculpation</u>. None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Chapter 11 Case, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; *provided, however*, that to the extent the exculpation provision, as modified by this Confirmation Order, is not authorized under the applicable provisions of the Bankruptcy Code and binding precedent in the Fifth Circuit, this Confirmation Order does not approve the exculpation provision (other than the jurisdictional provisions contained in this paragraph), solely to the extent that such provision exceeds the foregoing limitations. The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on any claim or Cause of Action against an Exculpated Party in connection with any act or omission in connection with, related to, or arising out of, in whole or in part, the Chapter 11 Case, and any Person (including, without limitation, any Governmental Unit) bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The protections provided to the Exculpated Parties in this Confirmation Order shall be in addition to, and shall not limit, all

other releases, injunctions, exculpations and any other applicable law or rules protecting the Exculpated Parties from liabilities; *provided however*, that other than the jurisdiction provisions contained in this Paragraph which shall be binding on Governmental Units, the exculpation provision approved in the Plan shall not affect the police or regulatory activities of Governmental Units.

22.     Injunction.  From and after the Effective Date, all persons who have held, hold or may hold Claims against or Interests in the Debtor are permanently enjoined from commencing or continuing in any manner, any cause of action released or to be released pursuant to the Plan or this Confirmation Order.

From and after the Effective Date, to the extent of the releases and exculpation granted in the Plan, the Releasing Parties shall be permanently enjoined from commencing or continuing in any manner against the Released Parties and the Exculpated Parties and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan.

Except as otherwise expressly provided in the Plan, the Plan Supplement or related documents, or for obligations issued pursuant to the Plan, all persons who have held, hold or may hold Claims or Interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any

such Claims or Interests; (c) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estates of such persons on account of or in connection with or with respect to any such Claims or Interests; and (d) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled or discharged pursuant to the Plan.

The rights afforded in the Plan and the treatment of all Claims or Interests therein shall be in exchange for and in complete satisfaction of all Claims or Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or any of its assets, property or Estate. On the Effective Date, all such Claims against the Debtor shall be fully released, and the Interests shall be cancelled (except as otherwise expressly provided in the Plan).

Except as otherwise expressly provided for in the Plan or in obligations pursuant thereto from and after the Effective Date, all Claims against the Debtor shall be fully released, and all interests shall be cancelled, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code.

All Persons shall be precluded from asserting against the Debtor, the Debtor's Estate, its respective successors and assigns, and its assets and properties, any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

23.    Injunction Against Interference with the Plan.  Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or

principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Liquidating Trust's, the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

24. <u>Governmental Units</u>. Unless otherwise agreed or consented to by a Governmental Unit, no provision in the Plan or this Confirmation Order (a) releases or exculpates any Released Party or Exculpated Party from any claim or cause of action held by a Governmental Unit, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States, or (b) enjoins, limits, impairs or delays any Governmental Unit from commencing or continuing any claims, suit, action, proceeding, cause of action, or investigation against any Released Party or Exculpated Party.

25. <u>Release of Liens</u>. Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in the Plan or this Confirmation Order, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code. The liens of the Secured Lenders on their respective Encumbered Excluded Assets, including but not limited

to the Bond Trustee's liens against the Distribution Reserve, shall not be released or discharged until such assets are distributed to the applicable Secured Lender in accordance with the Plan.

26.    <u>Corporate Action</u>.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor.

27.    <u>Cancellation of Documents</u>.  On the Effective Date, except to the extent otherwise provided in the Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Debtor including, without limitation, the Bond Documents shall be deemed inoperative and unenforceable against the Debtor and the Debtor shall have no continuing obligations thereunder; *provided, however*, the Bonds and the Bond Documents shall be deemed to continue in effect solely to the extent they relate to and are necessary to: (i) allow applicable distributions pursuant to the Plan and Bond Documents, (ii) permit the Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals and enforce its indemnity and other rights and protections with respect to and pursuant to the Bond Documents, (iii) permit the Bond Trustee to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial holders of the Bonds, (iv) permit the Bond Trustee to appear in the Chapter 11 Case with respect to matters relevant to the holders of the Bonds and to enforce their rights under the Plan, (v) otherwise continue to govern relationships of the Bond Trustee and holders of the Bonds, and

(vi) permit the Bond Trustee to perform any functions that are necessary in connection with the foregoing clauses (i) through (v).

28. <u>Dissolution of the Debtor</u>. On the Effective Date and upon the Debtor causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.2 of the Plan, the Debtor shall have no further duties or responsibilities in connection with implementation of the Plan. Upon entry of a final decree closing the Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes in accordance with applicable state law without the need to take any further action or file any plan of dissolution, notice, or application with any applicable Governmental Unit.

29. <u>Preservation of Causes of Action of the Debtor</u>. In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Debtor and exculpation provisions provided in the Plan), the Debtor and Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action.

30. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in section 10.2 of the Plan have been satisfied or waived pursuant to section 10.3 of the Plan. In the event that one or more of the conditions specified in section 10.2 of the Plan have not been satisfied or waived in accordance with section 10.3 of the Plan, (i) this Confirmation Order shall be vacated, (ii) no Distributions under the Plan shall be made, (iii) the Debtor and all Holder of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iv) all of the Debtor's obligations with respect to Claims and Interests shall

remain unchanged and nothing contained in the Plan or in this Confirmation Order shall constitute or deemed a waiver or release of any Claims or Interests in or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or otherwise.

31. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to section 13 of the Plan and sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relates to the matters set forth in section 13 of the Plan.

32. <u>Payment of Statutory Fees</u>. All fees then due and payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date by the Debtor. All such fees that become due and payable thereafter shall be paid by the Liquidating Trust. The Debtor or Liquidating Trust, as applicable, shall pay quarterly fees to the United States Trustee until the Chapter 11 Case is closed or converted and/or upon the entry of a final decree. The Liquidating Trust shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.

33. <u>Dissolution of the Resident Committee</u>. On the Effective Date, the Resident Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Debtor's Chapter 11 Case, except for the purposes of (i) any appeal or request for reconsideration, stay pending appeal, other disputes, or litigation regarding the Plan or this Confirmation Order, and (ii) prosecuting and/or objecting to applications described in section 2 of the Plan.

34. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

35. <u>Exemption from Certain Taxes</u>. To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under or pursuant to the Plan, and the execution, delivery, or recording of any instrument of transfer under or pursuant to the Plan, and the revesting, transfer, or sale of any property of or to the Liquidating Trust or the Stalking Horse at the Sale, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or other Governmental Unit in which any instrument hereunder is to be recorded in accordance with the Plan shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

36. <u>The Automatic Stay</u>. The stay in effect in this Chapter 11 Case pursuant to sections 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force of effect, subject to the injunctions set forth in the Plan, this Confirmation Order, and/or sections 524 and 1141 of the Bankruptcy Code; *provided, however*, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, and bills of sale) or the taking of such actions as are

necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

37. <u>Conflicts Between Confirmation Order and Plan</u>. The provisions of this Confirmation Order and the Plan shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that, if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

38. <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

39. <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>. If any or all of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Liquidating Trustee, as applicable, pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

40.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

41.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

42.    <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after, the Effective Date pursuant to this Confirmation Order, without further application to, or order of, the Bankruptcy Court, or further action by the respective officers or directors of the Debtor and with the effect that such actions has been taken by unanimous action of such officers and directors.

43.    <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit C</u>** (the "<u>Notice of Confirmation and Effective Date</u>"), to the United States Trustee, all parties that hold a Claim or Interest in this Chapter 11 Case, and any other party requesting notice under Bankruptcy Rule 2002.  The Notice of Confirmation and Effective Date shall also be posted on the Debtor's case information website, available at https://www.donlinrecano.com/mayflower.  Such notice is

hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

44. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

45. <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

46. <u>Waiver of Stay</u>. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)) is hereby waived. This Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

**###END OF ORDER###**

Order submitted by:

**DLA PIPER LLP (US)**

By:*/s/ Daniel B. Prieto*
Daniel B. Prieto, State Bar No. 24048744
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: dan.prieto@dlapiper.com

- and -

Thomas R. Califano (*admitted pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

E-mail:  thomas.califano@dlapiper.com

- and -

Rachel Nanes (*admitted pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone:  (305) 423-8563
Facsimile:  (305) 675-8206
E-mail:  rachel.nanes@dlapiper.com

*Counsel for the Debtor*

## Exhibit A

## THE PLAN

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **MAYFLOWER COMMUNITIES, INC.[1]** | § | |
| | § | **CASE NO. 19-30283 (HDH)** |
| Debtor. | § | |

## DEBTOR'S FIRST AMENDED PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Daniel B. Prieto, State Bar No. 24048744
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: dan.prieto@dlapiper.com

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

*Attorneys for the Debtor and Debtor in Possession*

Dated: August 5, 2019

---

[1] The last four digits of the Debtor's federal tax identification number are 6350. The mailing address for the Debtor is 1335 S. Guilford Road Carmel, Indiana 46032-2810.

## TABLE OF CONTENTS

**SECTION 1.    DEFINITIONS AND INTERPRETATION** ............................................................ **4**

1.1    Definitions ............................................................................................................ 4

1.2    Interpretation, Application of Definitions and Rules of Construction............................ 14

1.3    Computation of Time .......................................................................................... 14

**SECTION 2.    ADMINISTRATIVE AND PRIORITY CLAIMS** ............................................ **15**

2.1    Administrative Expense Claims ............................................................................ 15

2.2    Accrued Professional Compensation Claims ........................................................ 15

2.3    Priority Tax Claims .............................................................................................. 16

**SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS** ....................................... **16**

**SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS** ............................................ **17**

4.1    Other Priority Claims (Class 1) ........................................................................... 17

4.2    Bondholder Secured Claim (Class 2) ................................................................. 17

4.3    Other Secured Claims (Class 3) ......................................................................... 17

4.4    General Unsecured Claims (Class 4) ................................................................... 18

4.5    Interests in the Barrington (Class 5) .................................................................... 18

**SECTION 5.    CRAMDOWN.** ...................................................................................... **18**

**SECTION 6.    MEANS FOR IMPLEMENTATION OF THE PLAN** ....................................... **18**

6.1    Transfers to Bond Trustee................................................................................... 18

6.2    Liquidating Trust ................................................................................................. 18

**SECTION 7.    DISTRIBUTIONS** .................................................................................. **24**

7.1    Distribution Record Date ..................................................................................... 24

7.2    Date of Distributions ........................................................................................... 24

7.3    Disbursing Agent ................................................................................................ 25

7.4    Rights and Powers of Disbursing Agent .............................................................. 25

7.5    Delivery of Distributions in General ..................................................................... 25

7.6    Payments and Distributions on Disputed Claims ................................................. 25

7.7    Manner of Payment ............................................................................................. 25

7.8    Undeliverable Distributions and Unclaimed Property............................................. 26

7.9    Withholding and Reporting Requirements ............................................................ 26

7.10   Surrender Instruments ......................................................................................... 26

7.11   Setoffs................................................................................................................. 26

7.12   Insurance Claims ................................................................................................ 26

7.13   Applicability of Insurance Policies ....................................................................... 26

7.14   No Postpetition Interest ....................................................................................... 27

7.15   Distributions Free and Clear ............................................................................... 27

7.16    Fractional Dollars; De Minimis Distributions ................................................... 27

**SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS ................................................... 27**

8.1    Allowance of Claims and Interests ................................................... 27

8.2    Objections to Claims ................................................... 27

8.3    Estimation of Claims ................................................... 28

8.4    No Distribution Pending Allowance ................................................... 28

8.5    Distributions after Allowance ................................................... 28

8.6    Preservations of Rights to Settle Claims ................................................... 28

8.7    Disallowed Claims ................................................... 28

**SECTION 9.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................... 29**

9.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ................ 29

9.2    Inclusiveness ................................................... 29

9.3    Rejection Claims ................................................... 29

9.4    Cure of Defaults ................................................... 29

9.5    Full Release and Satisfaction ................................................... 29

9.6    Reservation of Rights ................................................... 30

**SECTION 10.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ................................................... 30**

10.1    Conditions Precedent to Confirmation ................................................... 30

10.2    Conditions Precedent to the Effective Date ................................................... 30

10.3    Waiver of Conditions ................................................... 31

10.4    Effect of Failure of Conditions ................................................... 31

**SECTION 11.    EFFECT OF CONFIRMATION ................................................... 31**

11.1    Immediate Binding Effect ................................................... 31

11.2    Compromise and Settlement of Claims, Interests and Controversies ................ 31

11.3    Releases by the Debtor ................................................... 31

11.4    Releases by Holders of Claims ................................................... 32

11.5    Exculpation ................................................... 33

11.6    Injunction ................................................... 33

11.7    Term of Injunctions or Stays ................................................... 34

11.8    Injunction Against Interference with Plan ................................................... 34

11.9    Release of Liens ................................................... 35

11.10    Effectuating Documents and Further Transactions ................................................... 35

11.11    Corporate Action ................................................... 35

11.12    Cancellation of Documents ................................................... 35

11.13    Dissolution of the Debtor ................................................... 36

11.14    Preservation of Causes of Action of the Debtor ................................................... 36

**SECTION 12.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN ...... 36**

    12.1    Modification and Amendments ....................................................................... 36

    12.2    Effect of Confirmation on Modifications ...................................................... 36

    12.3    Revocation or Withdrawal of this Plan ......................................................... 36

**SECTION 13.    RETENTION OF JURISDICTION ........................................................... 37**

**SECTION 14.    MISCELLANEOUS PROVISIONS .......................................................... 38**

    14.1    Payment of Statutory Fees ............................................................................. 38

    14.2    Dissolution of Residents' Committee ............................................................ 39

    14.3    Section 1125(e) Good Faith Compliance ....................................................... 39

    14.4    Substantial Consummation ............................................................................ 39

    14.5    Section 1146 Exemption ................................................................................ 39

    14.6    Closing of the Chapter 11 Case ..................................................................... 39

    14.7    Plan Supplement ............................................................................................ 39

    14.8    Further Assurances ........................................................................................ 39

    14.9    Exhibits Incorporated .................................................................................... 39

    14.10    Inconsistency ................................................................................................. 40

    14.11    No Admissions ............................................................................................... 40

    14.12    Reservation of Rights .................................................................................... 40

    14.13    Successors and Assigns .................................................................................. 40

    14.14    Entire Agreement ........................................................................................... 40

    14.15    Notices ........................................................................................................... 40

    14.16    Severability .................................................................................................... 41

    14.17    Governing Law ............................................................................................... 41

    14.18    Request for Confirmation .............................................................................. 42

## INTRODUCTION

On January 30, 2019, Mayflower Communities, Inc. d/b/a The Barrington of Carmel filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and rule 3019 of the Federal Rules of Bankruptcy Procedure, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this *Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* prior to its substantial consummation. Reference is made to the *First Amended Disclosure Statement for the Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan. Capitalized terms used but not defined herein have the meanings ascribed to them in Section 1 of this Plan.

## SECTION 1. DEFINITIONS AND INTERPRETATION

### 1.1 *Definitions*.

The following terms used herein shall have the respective meanings below:

**Accrued Professional Compensation Claim** means, at any given time, all accrued, contingent and/or unpaid fees (including any payments owed to Cushman & Wakefield U.S., Inc. in connection with the Sale) for legal, financial advisory, investment banking, accounting, real estate brokerage and other services and obligations for reimbursement of expenses rendered or incurred before the Effective Date under sections 328, 330(a), 331 or 363 of the Bankruptcy Code by any retained Professional in the Chapter 11 Case, or under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid and all subject to the amounts set forth in the Budget and all other orders entered by the Bankruptcy Court related to the foregoing.

**Administrative Expense Claim** means any Claim for costs and expenses of administration pursuant to sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; (c) Claims for the value of any goods received by the Debtor within twenty (20) days before the Petition Date allowed in accordance with section 503(b)(9) of the Bankruptcy Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

**Administrative Expense Claims Bar Date** means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.

**Allowed** means, with reference to any Claim against the Debtor, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by

4

an agreement between the Holder of such Claim and the Debtor or Liquidating Trustee or (c) pursuant to the terms of this Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), neither the Debtor nor the Liquidating Trustee waives its rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced. An Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim. Unless otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date.

*Assets* means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to section 541 of the Bankruptcy Code, Cash, Avoidance Actions, Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

*Avoidance Actions* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

*Ballot* means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan have indicated their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

*Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

*Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas having jurisdiction over the Chapter 11 Case.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

*Barrington* means the Debtor.

*Beneficiaries* means Holders of Allowed General Unsecured Claims and Deficiency Claims against the Debtor's Estate as beneficiaries of the Liquidating Trust, as defined in the Liquidating Trust Agreement.

*Bond Claims* means, collectively, the Bondholder Secured Claim and the Bondholder Deficiency Claim, which Claims are Allowed in the total amount of $94,096,671.88 pursuant to the Final Cash Collateral Order.

**Bond Documents** means, collectively, the Bond Indenture, Master Indenture, Mortgage and Security Agreement, Loan Agreement, and any other documents entered into in connection with the Bonds.

**Bond Indenture** means that certain Bond Trust Indenture, dated as of August 1, 2012, between the City of Carmel, Indiana and The Bank of New York Mellon Trust Company, N.A., as predecessor to the Bond Trustee.

**Bond Trustee** means (i) UMB Bank, N.A., in its capacity as successor trustee under the Bond Indenture, (ii) UMB Bank, N.A., in its capacity as successor master trustee under the Master Indenture, and (iii) any successor trustee in either capacity.

**Bondholder Deficiency Claim** means the Allowed General Unsecured Claim of the holders of the Bonds for the difference between (a) $94,096,671.88 and (b) the amount of the Bondholder Secured Claim.

**Bondholder Secured Claim** means the Allowed Secured Claim of the holders of the Bonds in the amount of the value paid to the holders of the Bonds pursuant to section 4.2 of the Plan.

**Bonds** means, collectively, the Series 2012A Bonds, the Series 2012B Bonds, the Series 2012C Bonds, and the Series 2012D Bonds.

**Budget** shall mean the cash collateral budget agreed to between the Debtor and the Bond Trustee attached to the *Final Order (1) Authorizing the Debtor to Use the Cash Collateral of UMB Bank, N.A. as Bond Trustee; (2) Providing UMB Bank, N.A. as Bond Trustee, Adequate Protection; and (3) Modifying the Automatic Stay* [Docket No. 217].

**Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in Dallas, Texas.

**Cash** means cash and cash equivalents including, without limitation, checks and wire transfers; *provided, that* other than as set forth in the Bond Documents, as applicable, no Distributions to be made in Cash under this Plan shall be comprised of any funds held by the Bond Trustee pursuant to the Bond Documents.

**Causes of Action** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, asserted or which may be asserted by or on behalf of the Debtor and/or the Estate, including: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance

6

Action; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

*Chapter 11 Case* means the Debtor's chapter 11 case pending in the Bankruptcy Court under case number 19-30283-hdh11.

*Claim* has the meaning set forth in section 101(5) of the Bankruptcy Code.

*Class* means a class or category of Claims or Interests as classified and described in Section 3 of this Plan.

*Closing Date* means the date on which the Debtor closes on the sale of substantially all of its Assets to the Stalking Horse.

*Collateral* means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

*Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket in the Chapter 11 Case.

*Confirmation Hearing* means the hearing on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

*Confirmation Order* means the order entered by the Bankruptcy Court confirming this Plan in accordance with chapter 11 of the Bankruptcy Code.

*Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against the Debtor.

*Continuing Care Contract* means those certain residence and care agreements entered into by and between the residents of the Barrington, on the one hand, and the Barrington, on the other hand, and any additional documents related thereto including resident parking agreements.

*Creditor* means a Holder of a Claim.

*Cure* means the payment of Cash by the Debtor, the Stalking Horse, or the Liquidating Trustee, as applicable, as necessary to (i) cure a monetary default by the Debtor in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtor, and (ii) permit the Debtor to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

*Debtor* means the Barrington as debtor and debtor in possession, and includes the Estate.

7

***Debtor in Possession*** means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

***Debtor Released Claims*** shall have the meaning set forth in section 11.3.

***Deficiency Claim*** means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

***Disallowed Claim*** means any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

***Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan, as such disclosure statement may be altered, modified, or amended.

***Disputed Claim*** means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, Liquidating Trustee, or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtor, the Liquidating Trustee, or any other party in interest which has not been withdrawn or determined by a Final Order.

***Distribution*** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

***Distribution Record Date*** means five (5) Business Days prior to the Confirmation Date.

***Effective Date*** means the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10 of this Plan have been either satisfied or waived.

***Encumbered Excluded Assets*** shall have the meaning set forth in section III(L)(b) of the Disclosure Statement.

***Estate*** means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to section 541 of the Bankruptcy Code.

8

**Excluded Assets** shall have the meaning set forth in section III(L)(b) of the Disclosure Statement.

**Exculpated Claim** means any claim related to any act or omission in connection with, relating to or arising out of (i) any in-court or out-of-court forbearance or restructuring arrangement involving the Debtor and its current and former employees, agents, representatives, advisors, consultants and attorneys, (ii) the Chapter 11 Case, (iii) the negotiation or consummation of the Sale, (iv) the negotiation, administration or consummation of any cash collateral arrangement in the Chapter 11 Case, (v) the formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, (vi) the filing of the Chapter 11 Case, (vii) the pursuit of confirmation of this Plan, (viii) the administration and implementation of this Plan, or (ix) the Distribution of property under this Plan and/or any other related agreement; *provided*, *however*, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct under applicable non-bankruptcy law. No Cause of Action, obligation or liability expressly preserved by the Plan or the Plan Supplement constitutes an Exculpated Claim.

**Exculpated Party** means each of: (i) the Debtor, (ii) the Residents' Committee; (iii) the Bond Trustee, (iv) the Liquidating Trustee, (v) the Liquidating Trust, and (vi) the current and former officers, directors, members, managers, employees, attorneys, consultants and advisors, each in their respective capacities as such, of each of the foregoing.

**Executory Contract** means a contract to which the Debtor is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

**Facility** means the continuing care retirement community owned and operated by the Barrington, known as "The Barrington of Carmel."

**Final Cash Collateral Order** means any order, whether interim or final, authorizing the use by the Debtor during the Chapter 11 Case of the cash collateral of the Bond Trustee.

**Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has been entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, and, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

**General Unsecured Claim** means a Deficiency Claim and any Claim asserted against the Debtor which is not included within the other specifically defined Classes hereunder.

**Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**Gross Holdback Escrow Amount** means any amount of the Purchase Price held in a third-party escrow account in connection with the Sale.

**Holdback Escrow Termination Date** means the date that is the twelve (12) month anniversary of the Closing Date or such other date on which the Debtor's interest in the Gross Holdback Escrow Amount is released from escrow.

**Holder** means the legal or beneficial holder of a Claim or Interest.

**Impaired** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of section 1124 of the Bankruptcy Code.

**Insurance Policies** means, collectively, all of the Debtor's insurance policies.

**Interest** means the interest of any Holder in an equity security of the Debtor, within the meaning of section 101(16) of the Bankruptcy Code represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor.

**Issuer** means the City of Carmel pursuant to the Bond Indenture.

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Liquidating Trust** means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

**Liquidating Trust Agreement** means the agreement, substantially in the form included in the Plan Supplement, governing the operations of the Liquidating Trust, as it may be subsequently modified from time to time.

**Liquidating Trust Assets** means the assets held in the Liquidating Trust comprised of (i) Liquidating Trust Contribution; (ii) the Encumbered Excluded Assets that are subject to the Bond Trustee's Lien and not otherwise turned over to the Bond Trustee on the Effective Date; (iii) the Excluded Assets from the Sale, to the extent such assets are not encumbered by a Lien; (iv) all Causes of Action of the Debtor's Estate, except those expressly waived herein, and (v) all other unencumbered assets of the Debtor's Estate remaining after all required payments have been made pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, as applicable.

*Liquidating Trust Contribution* means $100,000 to be funded, first, from any Cash on hand of the Debtor on the Effective Date, and, second, from the proceeds of the Sale that would otherwise be paid to the Bond Trustee.

*Liquidating Trust Distributable Cash* means all Liquidating Trust Assets, other than the Encumbered Excluded Assets that are subject to the Bond Trustee's Lien and not otherwise turned over to the Bond Trustee on the Effective Date, reduced to Cash.

*Liquidating Trust Monthly Fee Statements* shall have the meaning set forth in section 6.2(f).

*Liquidating Trust Professionals* shall have the meaning set forth in section 6.2(f).

*Liquidating Trust Reserve* shall have the meaning set forth in section 6.2(b).

*Liquidating Trustee* means the individual or entity designated and retained as the trustee to the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust.

*Loan Agreement* means that Loan Agreement dated as of August 1, 2012 between Barrington and the Issuer.

*Master Indenture* means that Master Trust Indenture dated as of August 1, 2012, between Barrington, as the initial member of the obligated group, and the Master Trustee.

*Master Trustee* means the Bank of New York Mellon Trust Company, N.A. in its capacity as prior master trustee under the Bond Indenture and the Master Indenture.

*Mortgage and Security Agreement* means that Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated as of August 1, 2012 between Barrington and the Master Trustee.

*Net Holdback Escrow Amount* means the Debtor's interest in the Gross Holdback Escrow Amount on the Holdback Escrow Termination Date. The Bond Trustee shall continue to have a Lien on the Debtor's right to receive the Net Holdback Escrow Amount.

*Net Sale Proceeds* means the gross proceeds of the Sale, net of (i) the Gross Holdback Escrow Amount; (ii) the Liquidating Trust Reserve; (iii) the Liquidating Trust Contribution, to the extent not funded from Cash on hand of the Debtor on the Effective Date; and (iv) any proceeds of the Sale previously distributed to the Bond Trustee pursuant to the *Order (I) Approving the Asset Purchase Agreement Between the Debtor and Prairie Landing Community, Inc.; (II) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* [Docket No. 318].

*Other Priority Claim* means any Claim entitled to priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

11

**Other Secured Claim** means a Secured Claim other than the Bondholder Secured Claim.

**Person** means an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Debtor.

**Petition Date** means January 30, 2019.

**Plan** means this plan of liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, together with any and all exhibits and schedules hereto.

**Plan Supplement** means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, to be filed ten (10) days prior to the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

**Priority Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Accrued Professional Compensation Claim or Priority Tax Claims.

**Priority Tax Claim** means any Claim of a Governmental Unit of a kind entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**Pro Rata** shall mean the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless the Plan otherwise provides.

**Professionals** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 363 and 1103 of the Bankruptcy Code.

**Proof of Claim** means a proof of Claim filed against the Debtor in the Chapter 11 Case.

**Purchase Price** shall have the meaning set forth in section I(B) of the Disclosure Statement.

**Related Persons** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time prior to or after the Petition Date, and any Person claiming by or through any of them.

12

*Released Parties* means (i) the Debtor, (ii) the Residents' Committee, (iii) the Bond Trustee, (iv) the Liquidating Trustee, (v) the Liquidating Trust, (vi) Seniority, Inc., (vii) SQLC, and (viii) the current and former officers, directors, members, managers, employees, attorneys, consultants and advisors, each in their respective capacities as such, of each of the foregoing.

*Releasing Parties* means all Persons who have held, hold or may hold Claims or Interests that have been released, discharged or are subject to exculpation pursuant to this Plan.

*Residents* shall mean all persons that reside at the Facility and are parties to Continuing Care Contracts.

*Residents' Committee* means the statutory committee of Residents appointed in the Chapter 11 Case by the United States Trustee on February 11, 2019.

*Sale* shall have the meaning set forth in section I(B) of the Disclosure Statement.

*Schedules* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been or may be amended, modified, or supplemented from time to time.

*Secured Claim* means any Claim of a Creditor that is secured by property of the Estate, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in section 506(a) of the Bankruptcy Code. Secured Claim also means a Claim of a Creditor that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in section 506(a) of the Bankruptcy Code. To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a *"Deficiency Claim"* unless the holder of such Claim validly elects under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

*Secured Lender* means, collectively, the Bond Trustee and Holders of Other Secured Claims.

*Series 2012A Bonds* means those certain Series 2012A Revenue Bonds, issued by the Issuer pursuant to the Bond Indenture.

*Series 2012B Bonds* means those certain Series 2012B Revenue Bonds, issued by the Issuer pursuant to the Bond Indenture.

*Series 2012C Bonds* means those certain Series 2012C Revenue Bonds, issued by the Issuer pursuant to the Bond Indenture.

*Series 2012D Bonds* means those certain Series 2012D Revenue Bonds, issued by the Issuer pursuant to the Bond Indenture.

*SQLC* means Senior Quality Lifestyles Corporation, the Debtor's sole corporate member.

*Stalking Horse* means Prairie Landing Community, Inc.

*Stalking Horse APA* means that certain Asset Purchase Agreement between the Debtor and Prairie Landing Community, Inc.

*Unexpired Lease* means a lease to which the Debtor is a party that is subject to assumption, assumption or assignment or rejection under section 365 of the Bankruptcy Code.

*Unimpaired* means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

*United States Trustee* means the Office of the United States Trustee for the Northern District of Texas.

*Voting Agent* means Donlin, Recano & Company, Inc.

*Voting Record Date* shall have the meaning ascribed to such term in the Disclosure Statement.

1.2    *Interpretation, Application of Definitions and Rules of Construction.* Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In the event of any ambiguity or conflict between this Plan and the Disclosure Statement, the provisions of this Plan shall govern. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires.

1.3    *Computation of Time*. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

14

**SECTION 2. ADMINISTRATIVE AND PRIORITY CLAIMS**

2.1 *Administrative Expense Claims*.

(a) Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtor or Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession, or liabilities arising under obligations incurred by the Debtor, as Debtor in Possession, prior to the Effective Date, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, the Budget, Final Cash Collateral Order and all other orders entered by the Bankruptcy Court related to the foregoing. In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Debtor, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidating Trustee in accordance with the applicable schedule for payment of such fees.

(b) *Administrative Expense Claims Bar Date*. To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the Administrative Expense Claims Bar Date. Any Administrative Expense Claim that is not asserted in accordance herewith shall be deemed disallowed under the Plan and shall be forever barred against the Debtor, the Debtor's Estate, the Liquidating Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.2 *Accrued Professional Compensation Claims*. All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is thirty (30) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within five (5) Business Days after the date that such Claim is Allowed by order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Debtor or Liquidating Trustee; *provided, however*, in no event shall any amounts paid to any Professional exceed the amounts set forth for such Professional in the Budget, the Final Cash Collateral Order and all other orders entered by the Bankruptcy Court related to the foregoing. Any Accrued Professional Compensation Claim that is not asserted in accordance with this section 2.2 shall be deemed disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, the Liquidating Trust, or any of

their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

2.3 ***Priority Tax Claims***. Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by a Holder of an Allowed Priority Tax Claim and the Debtor, or the Liquidating Trustee, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, payment in full in Cash of the Allowed amount of the Priority Tax Claim on the later of the Effective Date or as soon as practicable after the date when such Claim becomes an Allowed Claim.

## SECTION 3. CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 Except as set forth herein, all Claims against and Interests in the Debtor are placed in a particular Class. The Debtor has not classified Administrative Expense Claims, Accrued Professional Compensation Claims, and Priority Tax Claims.

The following table classifies Claims against and Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in section 4 herein. This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept the Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject the Plan, or (iv) deemed to accept the Plan.

| Class | Claims and Interests | Status | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No | 100% |
| 2 | Bondholder Secured Claim | Impaired | Yes | Net Sale Proceeds, Net Holdback Escrow Amount and Encumbered Excluded Assets |
| 3 | Other Secured Claims | Impaired | Yes | Cash equal to the amount of such Other Secured Claims; the Collateral securing such Other Secured Claims; or satisfaction of such Other Secured Claims |

| | | | | pursuant to such other terms and conditions as may be agreed upon by the Liquidating Trustee and the Holder of such Other Secured Claims |
|---|---|---|---|---|
| 4 | General Unsecured Claims | Impaired | Yes | Pro Rata share of Liquidating Trust Distributable Cash |
| 5 | Interests in the Barrington | Impaired | No | $0.00 |

## SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS

4.1  ***Other Priority Claims (Class 1)***.  This Class consists of all Allowed Other Priority Claims against the Debtor that are specified as having priority in section 507(a) of the Bankruptcy Code, if any such Claims exist as of the Effective Date.  Except to the extent that a Holder of an Allowed Other Priority Claim against the Debtor has agreed to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtor and the Holder of the Allowed Other Priority Claim against the Debtor.

4.2  ***Bondholder Secured Claim (Class 2)***.  This Class consists of the Bondholder Secured Claim of the holders of the Bonds and Bond Trustee against the Debtor.  The Bondholder Secured Claim is an Allowed Claim.  Upon the terms and subject to the conditions set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Bondholder Secured Claim, the Bond Trustee shall receive, on behalf of the Holders of the Bondholder Secured Claim, (i) on the Effective Date or as soon as practicable thereafter, the Net Sale Proceeds of the Sale and the Encumbered Excluded Assets, including the Debtor's Cash on hand on the Effective Date, following funding of the Liquidating Trust Contribution; and (ii) as soon as practicable after the Holdback Escrow Termination Date, the Net Holdback Escrow Amount.  In addition, the Liquidating Trustee shall pay to the Bond Trustee on account of the Bondholder Secured Claim the proceeds of any Liquidating Trust Assets on which the Bond Trustee has a Lien.  All distributions made on account of the Bondholder Secured Claim shall be paid to the Bond Trustee, and the Bond Trustee shall make further distributions to the holders of the Bonds as set forth in the Bond Documents.  In addition to the foregoing and as allowed by the Final Cash Collateral Order, the Bond Trustee may apply any and all funds in its possession as set forth in the Bond Documents free from the automatic stay imposed by section 362 of the Bankruptcy Code or any rights of the Debtor.

4.3  ***Other Secured Claims (Class 3)***.  This Class consists of all Other Secured Claims against the Debtor.  In full satisfaction of an Allowed Other Secured Claim, on the later of the Effective Date and the date on which the Other Secured Claim is Allowed, each Holder of an Allowed Other Secured Claim shall receive, at the sole and exclusive option of the Liquidating Trustee:  (a) Cash equal to the amount of such Claim; (b) the Collateral securing such Claim; or (c) satisfaction of such Claim pursuant to such other terms and conditions as may be agreed upon by the Liquidating Trustee and the Holder of such Other Secured Claim.

17

4.4 ***General Unsecured Claims (Class 4)***. This Class consists of all General Unsecured Claims against the Debtor, including the Bondholder Deficiency Claim of the holders of Bonds. Except to the extent that a Holder of an Allowed General Unsecured Claim against the Debtor agrees to a different treatment of such Claim, in full and final satisfaction of each Allowed General Unsecured Claim against the Debtor, each Holder of an Allowed General Unsecured Claim against the Debtor will receive its Pro Rata share of Liquidating Trust Distributable Cash as soon as practicable as determined by the Liquidating Trustee.

4.5 ***Interests in the Barrington (Class 5)***. This Class consists of SQLC's interests in the Barrington, which will be cancelled as of the Effective Date. SQLC shall not be entitled to a Distribution on account of its Interests in the Debtor.

## SECTION 5. CRAMDOWN.

If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

## SECTION 6. MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 ***Transfers to Bond Trustee***.

The Bond Trustee shall receive the following on account of the Bondholder Secured Claim: (i) on the Effective Date or as soon as practicable thereafter, the Net Sale Proceeds of the Sale and the Encumbered Excluded Assets, including the Debtor's Cash on hand on the Effective Date, following funding of the Liquidating Trust Contribution; and (ii) as soon as practicable after the Holdback Escrow Termination Date, the Net Holdback Escrow Amount. In addition, the Liquidating Trustee shall pay to the Bond Trustee, on account of the Bondholder Secured Claim, the proceeds of any Liquidating Trust Assets transferred to the Liquidating Trust on which the Bond Trustee has a Lien. All distributions made on account of the Bondholder Secured Claim shall be paid to the Bond Trustee, and the Bond Trustee shall make further distributions to the holders of the Bonds as set forth in the Bond Documents.

6.2 ***Liquidating Trust***

(a) ***Establishment of Liquidating Trust***. On the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and, in his capacity as Liquidating Trustee, accept all Liquidating Trust Assets on behalf of the Beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Liquidating Trust Assets not in his possession. The Liquidating Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidating Trust shall be established for the purposes of (i) liquidating any non-Cash Liquidating Trust Assets; (ii) maximizing recovery of the Liquidating Trust Assets for the benefit of the Beneficiaries; and (iii) distributing the proceeds of the Liquidating Trust Assets to the Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement, with no objective

18

to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidating Trust.

(b) **_Liquidating Trust Reserve_**. On the Effective Date, an amount to be negotiated between the Debtor and the Bond Trustee ten (10) days prior to the Confirmation Hearing will be funded to the Liquidating Trust that is sufficient to permit the Debtor and the Liquidating Trustee to satisfy all obligations under this Plan and Liquidating Trust Agreement, including: (i) 100% of the Allowed Accrued Professional Compensation Claims that have not been previously paid; (ii) 100% of the Allowed Administrative Expenses Claims that have not been previously paid; (iii) 100% of the Allowed Priority Claims that have not been previously paid; (iv) such other amounts that need to be paid pursuant to this Plan and Liquidating Trust Agreement; and (v) an amount the Debtor determines, with the approval of the Bond Trustee, is necessary to administer and operate the Liquidating Trust in accordance with this Plan and Liquidating Trust Agreement (the "**_Liquidating Trust Reserve_**"). The Liquidating Trust Reserve will be funded, first, from any Cash on hand of the Debtor on the Effective Date, and, second, from the proceeds of the Sale that would otherwise be paid to the Bond Trustee. To the extent not paid prior to the Effective Date, the Liquidating Trustee shall be authorized to pay all Allowed Professional Compensation Claims, Allowed Administrative Expense Claims, Allowed Priority Claims and such amounts necessary to administer and operate the Liquidating Trust from the Liquidating Trust Reserve in accordance with this Plan and the Liquidating Trust Agreement. To the extent the Liquidating Trust Reserve is not needed to fund the foregoing Claims and amounts, such excess funds shall remain subject to the Bond Trustee's Lien and transferred to the Bond Trustee.

(c) **_Appointment of the Liquidating Trustee_**. The Liquidating Trustee shall be appointed pursuant to the Confirmation Order and subject to removal only by the Bankruptcy Court upon application or motion by a Beneficiary of the Liquidating Trust, after notice and a hearing, and for cause shown, including (i) the willful and continued refusal by the Liquidating Trustee to perform his duties under this Plan and the Liquidating Trust Agreement, and (ii) gross negligence, gross misconduct, fraud, embezzlement or theft. The Liquidating Trustee will be chosen by the Debtor, after consultation with the Bond Trustee. During the term of the Liquidating Trust, the Liquidating Trustee shall be entitled to compensation payable from the Liquidating Trust Assets as set forth in the Liquidating Trust Agreement.

(d) **_Beneficiaries of Liquidating Trust_**. The Holders of Allowed General Unsecured Claims against the Debtor that are entitled to Distributions shall be the Beneficiaries of the Liquidating Trust. Such Beneficiaries shall be bound by the Liquidating Trust Agreement. The interests of the Beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

(e) **_Vesting and Transfer of Liquidating Trust Assets to the Liquidating Trust_**. On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, the Liquidating Trust Assets, including the Liquidating Trust Contribution, shall vest in the Liquidating Trust free and clear of all Liens, Claims and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; _provided, however_, that the Liquidating Trustee may abandon or otherwise not accept any non-Cash Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any non-Cash Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall not be

property of the Liquidating Trust. Notwithstanding the foregoing, all Excluded Encumbered Assets, including, but not limited to, the accounts receivable of the Debtor as of the Closing Date, whether in the possession, dominion or control of the Debtor or transferred to the Liquidating Trust, shall remain subject to the Bond Trustee's Lien and be promptly distributed to the Bond Trustee on behalf of the holders of Bonds.

(f) *Retention of Professionals*. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals (collectively, the "*Liquidating Trust Professionals*") that are necessary to assist the Liquidating Trustee in the performance of his duties pursuant to this Plan, the Liquidating Trust Agreement and the Confirmation Order. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trustee from the Liquidating Trust Reserve and, if necessary, the Liquidating Trust Assets upon submission of monthly statements ("*Liquidating Trust Monthly Fee Statements*") for services rendered and costs incurred to the Liquidating Trustee and Bond Trustee for review and approval. The Liquidating Trustee and Bond Trustee will have thirty (30) days from receipt of each Liquidating Trust Monthly Fee Statement to object to the Liquidating Trust Monthly Fee Statement. In the event that any objection is received by the relevant Liquidating Trust Professional that cannot be promptly resolved by the Liquidating Trust Professional and the objecting party, the dispute will be submitted by the Liquidating Trustee to the Bankruptcy Court for adjudication. The Bankruptcy Court will retain jurisdiction to adjudicate objections to Liquidating Trust Monthly Fee Statements. In the event that no objection is raised to a Liquidating Trust Monthly Fee Statement within the thirty (30) day period, the requested amount in the Liquidating Trust Monthly Fee Statement will be promptly paid by the Liquidating Trustee, subject to any requirements under the Plan.

(g) *Liquidating Trust Expenses*. Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from, as applicable, the Liquidating Trust shall be a charge against the Liquidating Trust Reserve and, if necessary, the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee. Such expenses shall be paid in accordance with the Liquidating Trust Agreement.

(h) *Certain Powers and Duties of the Liquidating Trust and Liquidating Trustee*.

(i) *General Powers of the Liquidating Trustee*. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Liquidating Trust Assets; (b) pay taxes or other obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Liquidating Trust Assets; (d) calculate and implement Distributions of Liquidating Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidating Trust Agreement, Causes of Action vested

20

in the Liquidating Trust; (f) resolve issues involving Claims and Interests in accordance with this Plan; and (g) undertake all administrative functions of the Chapter 11 Case, including the payment of fees payable to the United States Trustee and the ultimate closing of the Chapter 11 Case. The Liquidating Trust is the successor to the Debtor and its Estate.

(ii) *Books and Records*. On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and its Estate; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trust determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or required.

(iii) *Investments of Cash*. The Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, *provided, however,* that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(iv) *Claims Process*. The Liquidating Trust shall have the right to object to Claims not otherwise Allowed in connection with post-Effective Date Claims allowance process or other order of the Bankruptcy Court. Following any such objection, the Liquidating Trustee may resolve any such Claims, which shall require: (i) approval only of the Liquidating Trustee if the resolved Claim amount and the amount of any reduction from the asserted amount of the Claim are each less than One Hundred Thousand Dollars ($100,000.00); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount asserted by the claimant or the amount of the reduction is equal to or greater than One Hundred Thousand Dollars ($100,000.00).

(v) *Reporting*. In no event later than thirty (30) days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidating Trust has been distributed in accordance with this Plan, the Liquidating Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidating Trustee under this Plan through each applicable reporting period.

(vi) *Tax Reporting*. The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidating Trust also shall annually (for tax years in which Distributions from the Liquidating Trust are made) send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; *provided, however,* that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidating Trust. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust's Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

21

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes. The Liquidating Trust may request an expedited determination of taxes of the Debtor or of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall be responsible for filing all federal, state, and local tax returns for the Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements; *provided, however*, that, if the Liquidating Trustee fails to withhold in respect of amounts received or distributable with respect to any Beneficiaries and the Liquidating Trustee is later held liable for the amount of such withholding, such Beneficiaries shall reimburse the Liquidating Trustee for such liability. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such Beneficiaries for all purposes of the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Liquidating Trust Agreement and the Confirmation Order. In order to receive distributions under the Plan, all Beneficiaries will need to identify themselves to the Liquidating Trustee and provide tax information and the specifics of their holdings, to the extent the Liquidating Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable).

(vii) **Payment of Taxes**. The Liquidating Trust shall be responsible for payments of all Allowed tax obligations of the Debtor.

(i) **Preservation of Right to Conduct Investigations**. The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtor prior to the Effective Date shall vest with the Liquidating Trust and shall continue until dissolution of the Liquidating Trust.

(j) **Prosecution and Resolution of Causes of Action**.

(i) **The Liquidating Trust's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action**. From and after the Effective Date, prosecution and settlement of all Causes of Action, including Avoidance Actions, transferred to the Liquidating Trust shall be the sole responsibility of the Liquidating Trust pursuant to the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trust shall have exclusive rights, powers, and interests of the Debtor's Estate to pursue, settle or abandon such Causes of Action as the sole representative of the Debtor's Estate pursuant to section 1123(b)(3) of the Bankruptcy Code. Proceeds recovered from all Causes of Action will be deposited into the Liquidating Trust and will be distributed by the Liquidating Trustee to the Beneficiaries in

accordance with the provisions of the Plan and Liquidating Trust Agreement. All Causes of Action, including Avoidance Actions, that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trust in accordance with this Plan. No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or Liquidating Trustee will not pursue any and all available Causes of Action against such Person. The Liquidating Trustee expressly reserves all Causes of Action, except for any Causes of Action against any Person that are expressly released or waived under the Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or consummation of the Plan. No claims or Causes of Action against the Released Parties expressly released or waived pursuant to the Plan shall be transferred to the Liquidating Trust, the Liquidating Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan.

(ii) *Settlement of Causes of Action*. Settlement by the Liquidating Trust of any Cause of Action transferred to the Liquidating Trust shall require: (i) approval only of the Liquidating Trustee if the amount claimed by the Liquidating Trust against a defendant is less than One Hundred Thousand Dollars ($100,000.00); and (ii) approval of the Liquidating Trustee and the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the Liquidating Trust against a defendant is unliquidated or equals to or exceeds One Hundred Thousand Dollars ($100,000.00).

(k) *Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets*. For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Debtor's Estate of an undivided interest in each of the Liquidating Trust Assets in satisfaction of their Allowed Claims (to the extent of the value of their respective share in the applicable assets) and then contributed such interests to the Liquidating Trust in exchange for their interests in the Liquidating Trust, and the Liquidating Trust's Beneficiaries will be treated as the grantors and owners thereof.

(l) *Limitation of Liability*. No recourse will ever be had, directly or indirectly, against the Liquidating Trustee or his or her respective employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Trust under this Plan or by reason of the creation of any indebtedness by the Liquidating Trust or the Liquidating Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Liquidating Trust Assets. The Liquidating Trust and the Liquidating Trustee and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; *provided, however*, that this section will not apply to any gross negligence or willful misconduct

23

by the Liquidating Trust and the Liquidating Trustee or their respective officers, directors, employees, professionals, representatives, agents, successors or assigns.

(m)  **Term of Liquidating Trust**.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trust under this Plan and the Liquidating Trust Agreement have been made, and (v) the Chapter 11 Case has been closed; *provided, however*, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension not to exceed one (1) year is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(n)  **Conflicts Between the Liquidating Trust Agreement and the Plan**. In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

(o)  **Excess Funds**.  In the event there is Liquidating Trust Distributable Cash remaining after all required Distributions under the Plan and the Liquidating Trust Agreement have been made, such Cash will be turned over to the Attorney General for the State of Indiana in accordance with Indiana law.

## SECTION 7.  DISTRIBUTIONS

7.1  **Distribution Record Date**.  As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its agents shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Debtor or the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring after the Distribution Record Date.  The Debtor, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under the Plan only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

7.2  **Date of Distributions**.  Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided therein.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in the Plan, no interest shall be payable by the Debtor or the Liquidating Trustee with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed

on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on Distributions provided for thereunder, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

7.3 ***Disbursing Agent.*** Except as otherwise provided in this Plan, all Distributions under this Plan shall be made by the Liquidating Trustee as Disbursing Agent or such other Person designated by the Liquidating Trustee as a Disbursing Agent on the Effective Date.

7.4 ***Rights and Powers of Disbursing Agent.*** The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities, subject to the review and approval of the Bond Trustee; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of this Plan.

7.5 ***Delivery of Distributions in General.*** Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent. Distributions to Holders of Allowed Claims will be made at the address of each such Holder as set forth in the Debtor's books and records. Distributions under this Plan on account of such Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan. None of the Debtor, the Liquidating Trustee, and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under this Plan except for gross negligence, willful misconduct or fraud. Any distributions on account of the Bond Claims shall be made to the Bond Trustee, and the Bond Trustee shall make such further distributions to the holders of the Bonds as set forth in the Bond Documents.

7.6 ***Payments and Distributions on Disputed Claims.*** Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date. Notwithstanding any provision otherwise in this Plan and except as may be agreed to by the Debtor or the Liquidating Trustee, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

7.7 ***Manner of Payment.*** Any Distributions to be made by or on behalf of the Debtor or the Liquidating Trustee, as applicable, pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtor or the Liquidating Trustee, respectively, or by wire transfer if circumstances justify, at the option of the Debtor or the Liquidating Trustee, as applicable; *provided, however*, any payments made to the Bond Trustee shall be made by wire transfer.

7.8 ***Undeliverable Distributions and Unclaimed Property***. In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable; *provided, however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the date of the Distribution. After such date, all "unclaimed property" or interests in property shall revert to the Liquidating Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property shall be discharged and forever barred.

7.9 ***Withholding and Reporting Requirements***. In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

7.10 ***Surrender Instruments***. Pursuant to section 1143 of the Bankruptcy Code, as a condition precedent to receiving any Distribution under the Plan, except with respect to the Bonds, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any such holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent, as applicable, before the fifth anniversary of the Confirmation Date shall be deemed to have forfeited all rights and claims and may not participate in any Distribution hereunder. Any Distribution so forfeited shall become property of the Liquidating Trust.

7.11 ***Setoffs***. Except for the payments to be made to the Bond Trustee*,* the Debtor and the Liquidating Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made), any claims of any nature whatsoever that the Debtor and the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor and the Liquidating Trustee of any such claim the Debtor and the Liquidating Trustee may have against the Holder of such Claim.

7.12 ***Insurance Claims***. Except for the payments to be made to the Bond Trustee, no Distributions under this Plan shall be made on account of Allowed Claims until the Holder of such Allowed Claim has exhausted all remedies with respect to the Debtor's Insurance Policies. To the extent that the Debtor's insurers agree to satisfy in full a Claim, then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

7.13 ***Applicability of Insurance Policies***. Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor, Liquidating Trustee or any Person may hold against any insurers under any of the Debtor's Insurance Policies, nor shall anything contained in

the Disclosure Statement or herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

7.14    *No Postpetition Interest*.  Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on such Claim or Interest. Notwithstanding the foregoing, nothing in this Plan shall prohibit holders of the Bonds from allocating payments received from the Bond Trustee or the Debtor to principal or interest on the Bonds, in their sole discretion in accordance with applicable law.

7.15    *Distributions Free and Clear*.  Except as may be otherwise provided herein, all Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

7.16    *Fractional Dollars; De Minimis Distributions*.  Notwithstanding any other provision of this Plan, Cash payments of fractions of dollars shall not be made.  Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down.  Neither the Debtor nor the Liquidating Trustee shall be required to make any Cash payment of less than ten dollars ($10.00) with respect to any Claim or Interest unless a request therefor is made in writing to the Debtor or the Liquidating Trustee, as applicable; *provided, however*, that neither the Debtor nor the Liquidating Trustee shall have any obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim or Interest is equal to or greater than ten dollars ($10.00).

## SECTION 8.  PROCEDURES FOR DISPUTED CLAIMS

The provisions of this section 8 shall not be applicable to the Bond Claims which are Allowed Claims.

8.1    *Allowance of Claims and Interests*.  Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or Allowed by the Bankruptcy Court by entry of a Final Order allowing such Claim or Interest.  On and following the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

8.2    *Objections to Claims*.  The Debtor (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan.  Any objections to Claims shall be filed and served on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court.  From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Debtor and the

Liquidating Trustee reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

8.3 ***Estimation of Claims***. The Debtor (before the Effective Date) or the Liquidating Trustee (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim; *provided, however*, the Liquidating Trustee may elect not to pursue such supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

8.4 ***No Distribution Pending Allowance***. Notwithstanding any other provision of this Plan, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.5 ***Distributions after Allowance***. At such time as a Contingent Claim or a Disputed Claim becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Contingent Claim or Disputed Claim becomes a Final Order. To the extent that all or a portion of a Contingent Claim or a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed.

8.6 ***Preservations of Rights to Settle Claims***. In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall have the discretion to retain and enforce, sue on, settle, or compromise all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity without the approval of the Bankruptcy Court, subject to the terms of this Plan, the Confirmation Order, the Liquidating Trust Agreement, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Liquidating Trustee may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Liquidating Trust and its Beneficiaries.

8.7 ***Disallowed Claims***. All Claims held by persons or entities against whom or which the Debtor or Liquidating Trustee has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. Disallowed Claims pursuant

28

to this Section shall continue to be Disallowed Claims for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtor or Liquidating Trustee from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases*. Except as otherwise provided in this Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, including the Stalking Horse APA, each of the Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease:  (1) was assumed or rejected previously by the Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to assume or reject filed on or before the Effective Date; or (4) is identified as an Executory Contract or Unexpired Lease to be assumed in connection with the Sale.

9.2    *Inclusiveness*.  Unless otherwise specified, each Executory Contract and Unexpired Lease assumed or rejected by the Debtor shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease.

9.3    *Rejection Claims*.  Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtor or the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; *provided, that* any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by section 502(b)(6) of the Bankruptcy Code.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor or the Liquidating Trustee, the Debtor's Estate or their property without the need for any objection by the Debtor or the Liquidating Trustee or further notice to, or action, order or approval of the Bankruptcy Court.  All Allowed Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the Debtor and shall be treated in accordance with this Plan.

9.4    *Cure of Defaults*.  Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under this Plan or otherwise is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure.  If there is a dispute regarding (i) the nature or amount of any Cure, or (ii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

9.5    *Full Release and Satisfaction*.  Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction

of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of the assumption.

      9.6    ***Reservation of Rights***.   Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Liquidating Trustee have any liability thereunder.

## SECTION 10. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

      10.1    ***Conditions Precedent to Confirmation***.   Confirmation of this Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

      (a)    The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance acceptable to the Debtor, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law;

      (b)    The Bankruptcy Court shall have entered one or more orders, in form and substance acceptable to the Debtor and the Bond Trustee, (i) authorizing the Sale to the Stalking Horse pursuant to section 363 of the Bankruptcy Code and (ii) authorizing the assumption and assignment of those Executory Contracts and Unexpired Leases identified to be assumed and assigned in the Stalking Horse APA;

      (c)    The proposed Confirmation Order shall be in form and substance satisfactory in all respects to the Debtor and the Bond Trustee; and

      (d)    The Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, acceptable to the Debtor and the Bond Trustee.

      10.2    ***Conditions Precedent to the Effective Date***.   The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

      (a)    The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtor and the Bond Trustee, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under section 1144 of the Bankruptcy Code;

      (b)    The Debtor shall have closed on the Sale; and

(c)    All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, the Liquidating Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.

10.3    ***Waiver of Conditions***.  The conditions to confirmation and consummation of this Plan set forth herein may be waived at any time by the Debtor, with the consent of the Bond Trustee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing; *provided, however*, that the Debtor may not waive the conditions set forth in sections 10.1(b), 10.2(a) and 10.2(b) herein or the entry of the order approving the Disclosure Statement and the Confirmation Order.

10.4    ***Effect of Failure of Conditions***.  If consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other Person in any respect.

## SECTION 11.  EFFECT OF CONFIRMATION

11.1    ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of this Plan and the Liquidating Trust Agreement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, the Liquating Trust and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan, each Person acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

11.2    ***Compromise and Settlement of Claims, Interests and Controversies***.  Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and Holders of Claims and Interests and is fair, equitable and reasonable.

11.3    ***Releases by the Debtor***.  Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious liquidation of the Debtor and the consummation of the transactions contemplated by

the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the Sale or the transactions or events giving rise to any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "***Debtor Released Claims***"), other than Debtor Released Claims against a Released Party arising out of the gross negligence, willful misconduct, intentional fraud, or criminal liability of any such person or entity.

11.4 ***Releases by Holders of Claims.*** **ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS PLAN, ALL PERSONS WHO (I) VOTED TO ACCEPT THIS PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS PLAN UNDER SECTION 1126(f) OF THE BANKRUPTCY CODE; OR (II) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN AND WHO VOTE TO REJECT THIS PLAN OR ABSTAIN FROM VOTING AND DO NOT MARK THEIR BALLOTS AS OPTING OUT OF THE RELEASES GRANTED UNDER THIS SECTION, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASE OR AFFECTING PROPERTY OF THE ESTATE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO ANY OF THE RELEASED PARTIES AND THEIR SUCCESSORS AND ASSIGNS WHETHER AT LAW, IN EQUITY OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION OCCURRENCE, TRANSACTION OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE, THE CONSUMMATION OF THIS PLAN OR THE ADMINISTRATION OF THIS PLAN, INCLUDING WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM OR EQUITY INTEREST HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM OR EQUITY INTEREST IS ALLOWED OR (C) THE HOLDER OF SUCH**

**CLAIM OR EQUITY INTEREST HAS VOTED TO ACCEPT OR REJECT THIS PLAN, EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED HEREIN SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH SECTION 4 OF THIS PLAN. THE RELEASES SET FORTH IN THIS PLAN, INCLUDING BUT NOT LIMITED TO IN THIS SECTION 11.4, SHALL NOT RELEASE ANY CLAIMS OR CAUSES OF ACTION AGAINST SENIORITY, INC. OR SQLC WITH RESPECT TO ACTIONS OR CONDUCT RELATED TO FACILITIES OTHER THAN THE DEBTOR.**

11.5   ***Exculpation***.   None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, with respect to any Exculpated Claim, including, without limitation, any act or omission in connection with, related to, or arising out of, in whole or in part, the Chapter 11 Case, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

11.6   ***Injunction***.   **FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTEREST IN THE DEBTOR ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.**

**FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH**

**PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.**

**THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS THEREUNDER SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS PURSUANT THERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE.**

**ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, ITS RESPECTIVE SUCCESSORS AND ASSIGNS, AND ITS ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.**

11.7 **_Term of Injunctions or Stays_**. Unless otherwise provided in this Plan or Confirmation Order, all injunctions or stays provided for under this Plan and ordered in the Confirmation Order or pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Case, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Confirmation Order, as applicable.

11.8 **_Injunction Against Interference with Plan_**. Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Liquidating

Trust's, the Liquidating Trustee's, and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

11.9 ***Release of Liens***. Except as otherwise provided in this Plan, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in this Plan, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code. The liens of the Secured Lenders on their respective Encumbered Excluded Assets shall not be released or discharged until such assets are distributed to the applicable Secured Lender in accordance with this Plan.

11.10 ***Effectuating Documents and Further Transactions***. Upon entry of the Confirmation Order, the appropriate officers of the Debtor and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonably necessary or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtor or Liquidating Trustee, as applicable, may, and all Holders of Allowed Claims or Interests receiving Distributions pursuant to this Plan, at the request or direction of the Debtor or Liquidating Trustee, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

11.11 ***Corporate Action***. Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date). All matters provided for in this Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor.

11.12 ***Cancellation of Documents***. On the Effective Date, except to the extent otherwise provided in this Plan, any and all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in the Debtor including, without limitation, the Bond Documents shall be deemed inoperative and unenforceable against the Debtor and the Debtor shall have no continuing obligations thereunder; *provided, however*, the Bonds and the Bond Documents shall be deemed to continue in effect solely to the extent they relate to and are necessary to: (i) allow applicable distributions pursuant to this Plan and Bond Documents, (ii) permit the Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals and enforce its indemnity and other rights and protections with respect to and pursuant to the Bond Documents, (iii) permit the Bond Trustee to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial holders of

the Bonds, (iv) permit the Bond Trustee to appear in the Bankruptcy Case with respect to matters relevant to the holders of the Bonds and to enforce their rights under this Plan, (v) otherwise continue to govern relationships of the Bond Trustee and holders of the Bonds, and (vi) permit the Bond Trustee to perform any functions that are necessary in connection with the foregoing clauses (i) through (v).

        11.13   *Dissolution of the Debtor*.   On the Effective Date and upon the Debtor causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with section 6.2 of this Plan, the Debtor shall have no further duties or responsibilities in connection with implementation of this Plan.  Upon entry of a final decree closing the Chapter 11 Case, the Debtor shall be deemed dissolved for all purposes in accordance with applicable state law without the need to take any further action or file any plan of dissolution, notice, or application with any applicable Governmental Unit.

        11.14   *Preservation of Causes of Action of the Debtor*.  In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the releases by the Debtor and exculpation provisions provided in the Plan), the Debtor and Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action.

## SECTION 12.  MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

        12.1   *Modification and Amendments*.   This Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, the Debtor or Liquidating Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

        12.2   *Effect of Confirmation on Modifications*.  Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re solicitation under Bankruptcy Rule 3019.

        12.3   *Revocation or Withdrawal of this Plan*.  The Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date does not occur, then:  (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Person.

**SECTION 13.  RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the  Chapter 11 Case and this Plan, including, but not limited to, jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b) decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c) resolve any matters related to:  (i) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including rejection Claims and cure Claims, pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract or Unexpired Lease; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease in connection with the Sale; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d) ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e) adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f) adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including, but not limited to, the Causes of Action, involving the Liquidating Trustee or the Liquidating Trust;

(g) adjudicate, decide or resolve any and all matters related to any Cause of Action;

(h) adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(i) enter and enforce any order for the sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of this Plan;

(k)      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(l)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)      resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, the Liquidating Trust Agreement, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(n)      adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(o)      consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(p)      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(q)      hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(r)      hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

(s)      enforce all orders previously entered by the Bankruptcy Court;

(t)      hear any other matter not inconsistent with the Bankruptcy Code; and

(u)      enter a final decree closing the Chapter 11 Case.

## SECTION 14.  MISCELLANEOUS PROVISIONS

14.1    ***Payment of Statutory Fees***.  All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date by the Debtor.  After the Effective Date, the Liquidating Trustee shall be liable for payment of any such fees until entry of a final decree closing the Chapter 11 Case.

38

14.2    ***Dissolution of Residents' Committee***.    On the Effective Date, the Residents' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Case.

14.3    ***Section 1125(e) Good Faith Compliance***.    As of and subject to the occurrence of the Confirmation Date, the Debtor and its Related Persons shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

14.4    ***Substantial Consummation***.    On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

14.5    ***Section 1146 Exemption***.    To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under or pursuant to this Plan, and the execution, delivery, or recording of any instrument of transfer under or pursuant to this Plan, and the revesting, transfer, or sale of any property of or to the Liquidating Trust or the Stalking Horse at the Sale, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or other Governmental Unit in which any instrument hereunder is to be recorded in accordance with this Plan shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax, or similar tax.

14.6    ***Closing of the Chapter 11 Case***.    When all Liquidating Trust Assets have been liquidated and converted into Cash and such Cash has been distributed in accordance with the Liquidating Trust Agreement and the Confirmation Order, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

14.7    ***Plan Supplement***.    Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

14.8    ***Further Assurances***.    The Debtor or the Liquidating Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Liquidating Trustee, and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

14.9    ***Exhibits Incorporated***.    All exhibits to the Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth herein.

14.10  *Inconsistency*.  In the event of any inconsistency among this Plan, the Disclosure Statement and any exhibit to the Disclosure Statement, the provisions of this Plan shall govern.

14.11  *No Admissions*.  If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

14.12  *Reservation of Rights*.  Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date has occurred.  None of this Plan, any statement or provision contained in this Plan or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

14.13  *Successors and Assigns*.  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

14.14  *Entire Agreement*.  On the Effective Date, this Plan, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

14.15  *Notices*.  All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

MAYFLOWER COMMUNITIES, INC.
c/o Ankura Consulting Group LLC
Attention: Louis E. Robichaux IV
15950 Dallas Parkway
Dallas, Texas 75248
Telephone: (214) 200-3689
Facsimile: (214) 200-3686
E-mail: louis.robichaux@ankura.com

with copies to:

DLA PIPER LLP (US)
Attention:  Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone:  (212) 335-4500

Facsimile: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

- and -

DLA PIPER LLP (US)
Attention: Rachel Nanes
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

- and -

DLA PIPER LLP (US)
Attention: Daniel B. Prieto
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
E-mail: dan.prieto@dlapiper.com

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the Chapter 11 Case. Any such Holder of a Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

14.16   *Severability*.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.17   *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

14.18  ***Request for Confirmation***.  The Debtor requests entry of the Confirmation Order under section 1129(a) of the Bankruptcy Code and, to the extent necessary, section 1129(b) of the Bankruptcy Code.

Dated: August 5, 2019                              Respectfully submitted,


                                                   Mayflower Communities, Inc.


                                                   By:    */s/ Louis E. Robichaux IV*
                                                          Name: Louis E. Robichaux IV
                                                          Title: Chief Restructuring Officer

**Exhibit B**

**WIND DOWN BUDGET**

**Mayflower Communities, Inc. d/b/a The Barrington of Carmel**
Wind Down Budget
Assumes Case Confirmation Date of September 17, 2019

**Sources of Funds**

| | | | |
|---|---|---|---:|
| [A] | Gross Cash Proceeds at Closing | $ | 60,000,000 |
| [B] | Estimated Ending Cash per Cash Collateral Budget After Wind-Down Period | | 483,350 |
| [C] | Post-Closing Collection of Medicare and Other Receivables | | 107,581 |
| [D] | Post-Closing Collection of Holdback | | 1,000,000 |
| | Subtotal Sources of Funds | $ | 61,590,930 |

**Uses of Funds**

| | | | |
|---|---|---|---:|
| [E] | Cushman & Wakefield Fee | $ | (926,539) |
| [F] | US Trustee Fee | | (267,834) |
| [G] | Liquidating Trustee Fees | | (89,992) |
| [H] | Liquidating Trust Legal Fees | | (40,008) |
| [I] | General Wrap-Up Management Costs | | (38,500) |
| [J] | Preparation of Medicare Cost report | | (5,000) |
| | 2019 W2 Preparation | | (3,000) |
| | Contingency | | (50,000) |
| | Preparation of Debtor and Trust Tax Returns | | (25,000) |
| [K] | Post-Confirmation Noticing Costs | | (45,000) |
| [L] | General Unsecured Claims Reserve | | (100,000) |
| [M] | Professional Fee Reserve | | (501,000) |
| | Total Wind Down and Administrative Expenses | | (2,091,873) |
| | | | |
| [N] | Cash Distributed to Bond Trustee at Closing of Transaction | | (54,908,399) |
| [O] | Estimated Distribution to Bond Trustee Upon Effective Date | | (2,999,728) |
| [P] | Estimated Final Distribution to Bond Trustee at Case Conclusion | | (1,590,930) |
| | Total Cash Distribution to Bond Trustee | | (59,499,057) |
| | | | |
| | Subtotal Uses of Funds | $ | (61,590,930) |

Notes:

[A] Gross sales price exclusive of pro-rated items, less Holdback of $1 million pursuant to the Asset Purchase Agreement

[B] Estimated available cash on the confirmation date after consideration for projected, accrued but unpaid, pre-closing administrative expenses, excluding Debtor's and Residents professional fees pursuant to the Draft Extended Cash Collateral Budget Dated September 13, 2019

[C] Timing of receipts assumed to be received in the normal course with no set-off claims and prorated for August 2019

[D] Pursuant to the Asset Purchase Agreement and assumes no indemnification of claims

[E] Pursuant to the terms of Cushman & Wakefield U.S., Inc.'s (the "**Broker**") *Exclusive Right to Sell Agreement* and the entered Order employing the Broker (Dkt. No. 162)

[F] Related only to the period after September 20, 2019

[G] Subject to the Plan and agreed upon by the Liquidating Trustee and Bondholder's

[H] Estimated legal fees to assist the Liquidating Trustee and the liquidating Debtor during the wind down process

[I] Estimated cost for (i) processing and payment of operating trade payables post-closing, (ii) treasury and accounting oversight between closing and effective date, and (iii) final closing of the books and records of the

[J] Post-closing cost report required within 90 days of a change of ownership

[K] Estimated expense for post-closing noticing

[L] Pursuant to the Plan

[M] Professional Fee Reserve includes (i) $400 thousand for DLA Piper, (ii) $5 thousand for Debtor's Chief Restructuring Officer, (iii) $31 thousand for Ankura, (iv) $13 thousand for Larx Advisors, (v) $26 thousand for Donlin Recano, and $26 thousand for the Resident Counsel

[N] Assumes $54.9 million paid at Closing exclusive of $7.8 million in restricted funds held by Indenture Trustee

[O] Amount to be released to the Bond Trustee Upon the Effective Date

[P] Remaining $1.6 million paid one-year post closing pursuant to the terms of the Holdback; assumes no indemnification claims against the Holdback escrow funds

**<u>Exhibit C</u>**

**NOTICE OF CONFIRMATION AND EFFECTIVE DATE**

Daniel B. Prieto, State Bar No. 24048744
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel:  (214) 743-4500
Fax:  (214) 743-4545
E-mail:  dan.prieto@dlapiper.com

COUNSEL FOR THE DEBTOR

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501
E-mail:  thomas.califano@dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel:  (305) 423-8563
Fax:  (305) 675-8206
E-mail:  rachel.nanes@dlapiper.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CHAPTER 11** |
| **MAYFLOWER COMMUNITIES, INC.**[1] | § | |
| | § | **CASE NO. 19-30283 (HDH)** |
| Debtor. | § | |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE DEBTOR'S**
**FIRST AMENDED PLAN OF LIQUIDATION PURSUANT TO**
**CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that an order (the "Confirmation Order") of the Honorable Harlin D. Hale, United States Bankruptcy Judge for the Northern District of Texas, approving the *Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 5, 2019 [Docket No. 322-1] (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to time, the "Plan"), was entered on September [●], 2019 [Docket No. ●]. Unless otherwise defined in this notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan and Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan, Confirmation Order and other related documents may be (i) inspected in the offices of the Clerk of the Court during normal business hours; (ii) downloaded from the Court's web site at http://www.txnb.uscourts.gov/ (please note that prior registration with the PACER Service Center and payment of a fee may be required to access such documents); and (iii) downloaded free of charge from the website of Donlin, Recano & Company, Inc., the Debtor's claims and noticing agent, https://www.donlinrecano.com/mayflower.  Requests may also be made to counsel for the Debtor using the contact information below.

---

[1]  The last four digits of the Debtor's federal tax identification number are 6350.  The mailing address for the Debtor is 1335 S. Guilford Road Carmel, Indiana 46032-2810.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on September [●], 2019.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtor, the Liquidating Trustee, the Liquating Trust, the Bond Trustee and any holder of a Claim against or Interest in the Debtor, as provided in the Plan.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Confirmation Order, the deadline to file a request for payment of an Administrative Expense Claim must be filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date (unless such request for payment or Proof of Claim has already been filed with the Bankruptcy Court).

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court and served on counsel to the Debtor and the Liquidating Trustee on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Dated: September [●], 2019
      Dallas, Texas

**DLA PIPER LLP (US)**

By: */s/ Daniel B. Prieto*
Daniel B. Prieto, State Bar No. 24048744
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545
E-mail: dan.prieto@dlapiper.com

– and –

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

– and –

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel: (305) 423-8563
Fax: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

*Counsel for the Debtor*