**Hearing Date: December 18, 2019 at 1:30 p.m. (CST)**
**Objection Deadline: December 6, 2019 at 4:00 p.m. (CST)**

Andrew B. Zollinger, State Bar No. 24063944
DLA Piper LLP (US)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
Tel: (214) 743-4500
Fax: (214) 743-4545
E-mail: andrew.zollinger@dlapiper.com

COUNSEL FOR THE DEBTOR

Thomas R. Califano (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: (212) 335-4500
Fax: (212) 335-4501
E-mail: thomas.califano@dlapiper.com

Rachel Nanes (admitted *pro hac vice*)
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Tel: (305) 423-8563
Fax: (305) 675-8206
E-mail: rachel.nanes@dlapiper.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: § | |
| § | **CHAPTER 11** |
| **MAYFLOWER COMMUNITIES, INC.**[1] § | |
| § | **CASE NO. 19-30283 (HDH)** |
| Debtor. § | |

**FIRST AND FINAL APPLICATION OF CUSHMAN & WAKEFIELD U.S., INC. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS REAL ESTATE BROKER TO THE DEBTOR FOR THE PERIOD FROM JANUARY 30, 2019 THROUGH AUGUST 30, 2019**

**FEE APPLICATION COVERSHEET**

**Final Fee Application of:** Cushman & Wakefield U.S., Inc.

**Capacity:** Real Estate Broker to the Debtor

**Time Period:** January 30, 2019 through August 30, 2019

**Bankruptcy Petition Filed:** January 30, 2019

**Date of Entry of Retention Order:** March 25, 2019 [Docket No. 162]

---

[1] The last four digits of the Debtor's federal tax identification number are 6350. The mailing address for the Debtor is 1335 S. Guilford Road Carmel, Indiana 46032-2810.

**Status of Case:**  On August 2, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Between the Debtor and Prairie Landing Community, Inc.; (II) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* [Docket No. 318].  On August 30, 2019, the Debtor closed on the sale of substantially all of its assets to Prairie Landing Community, Inc.  On September 26, 2019, the Court entered an order confirming the *Debtor's First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 352].  On October 8, 2019, the Plan became effective [Docket No. 373].

| **Amount Requested for Application Period:** | **Expense Detail:** |
|---|---|
| Fees:  $915,000.00[1] | A summary of actual, out-of- pocket costs and expenses incurred on behalf of the Debtor is annexed hereto as **Exhibit C**. |
| Expenses:  $11,538.11 | |
| **Total: $926,538.11** | |

This is a(n): _____ monthly   _____ interim   __X__ final application

---

[1] As explained in greater detail herein, Cushman & Wakefield U.S., Inc. is to be compensated on a commission basis. As a result, no interim compensation, billable hours, etc. have been conducted or calculated.

EAST\168772425.5

2

**SUMMARY COVER SHEET OF FEE APPLICATION**

| Name of Applicant | Cushman & Wakefield U.S., Inc. |
|---|---|
| Name of Client | Mayflower Communities, Inc. |
| Time Period Covered by Fee Application | January 30, 2019 to August 30, 2019 |
| Total Compensation Sought in Application | $915,000.00 |
| Total Expenses Sought in Application Period | $11,538.11 |
| Petition Date | January 30, 2019 |
| Retention Date | January 23, 2019 |
| Date of Retention Order | March 25, 2019 [Docket No. 162] |
| Are there any rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the application. | No. |

**EXHIBITS ATTACHED TO FEE APPLICATION**

Exhibit A    Engagement Agreement dated January 23, 2019

Exhibit B    Cushman & Wakefield Invoice for Services Rendered During the Compensation Period from January 30, 2019 through August 30, 2019

Exhibit C    Expense Summary for the Compensation Period from January 30, 2019 through August 30, 2019

Exhibit D    Proposed Order

| | |
|---|---|
| Andrew B. Zollinger, State Bar No. 24063944<br>DLA Piper LLP (US)<br>1900 North Pearl Street, Suite 2200<br>Dallas, Texas  75201<br>Tel:  (214) 743-4500<br>Fax:  (214) 743-4545<br>E-mail:  andrew.zollinger@dlapiper.com<br><br>COUNSEL FOR THE DEBTOR | Thomas R. Califano (admitted *pro hac vice*)<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel:  (212) 335-4500<br>Fax:  (212) 335-4501<br>E-mail:  thomas.califano@dlapiper.com<br><br>Rachel Nanes (admitted *pro hac vice*)<br>DLA Piper LLP (US)<br>200 South Biscayne Boulevard, Suite 2500<br>Miami, Florida 33131<br>Tel:  (305) 423-8563<br>Fax:  (305) 675-8206<br>E-mail:  rachel.nanes@dlapiper.com |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CHAPTER 11** |
| **MAYFLOWER COMMUNITIES, INC.**[1] | § | |
| | § | **CASE NO. 19-30283 (HDH)** |
| **Debtor.** | § | |

**FIRST AND FINAL APPLICATION OF CUSHMAN & WAKEFIELD U.S., INC. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS REAL ESTATE BROKER TO THE DEBTOR FOR THE PERIOD FROM JANUARY 30, 2019 THROUGH AUGUST 30, 2019**

Pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), Cushman & Wakefield U.S., Inc. ("Cushman & Wakefield"), as real estate broker to the above-captioned debtor (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits this *First and Final Application*

---

[1] The last four digits of the Debtor's federal tax identification number are 6350.  The mailing address for the Debtor is 1335 S. Guilford Road Carmel, Indiana 46032-2810.

EAST\168772425.5

4

*of Cushman & Wakefield U.S., Inc. for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Real Estate Broker to the Debtor for the Period from January 30, 2019 through August 30, 2019* (the "Application"). By this Application, Cushman & Wakefield seeks entry of an order approving and allowing, on a final basis, compensation for actual and necessary professional services rendered totaling $915,000.00 and reimbursement of actual and necessary expenses totaling $11,538.11 incurred during the period from January 30, 2019 through and including August 30, 2019 (the "Compensation Period"). In support of this Application, Cushman & Wakefield respectfully represents as follows:

**JURISDICTION**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Rules.

**BACKGROUND**

**A.    The Chapter 11 Case**

3. On January 30, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas (the "Court").

4. On February 11, 2019, the Office of the United States Trustee appointed an official residents' committee (the "Committee") comprised of residents living at the Debtor's facility. *See* Docket No. 79. No trustee or examiner was appointed in this Chapter 11 Case.

5.      Additional information regarding the Debtor and this Chapter 11 Case, including the Debtor's business operations, capital structure, and financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the *Declaration of Louis E. Robichaux IV in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 18].

**B.      The Retention of Cushman & Wakefield**

6.      On February 13, 2019, the Debtor filed the *Application of the Debtor for an Order Authorizing the Employment and Retention of Cushman & Wakefield U.S., Inc. as Real Estate Broker Pursuant to 11 U.S.C. §§ 327(A) and 328(A) Nunc Pro Tunc to the Petition Date* [Docket No. 88], seeking authorization to retain and employ Cushman & Wakefield to provide real estate brokerage services in connection with the sale of substantially all of the Debtor's assets (the "Sale").

7.      On March 25, 2019, the Court entered the *Order Authorizing the Employment and Retention of Cushman & Wakefield U.S., Inc. as Real Estate Broker Pursuant to 11 U.S.C. §§ 327(A) and 328(A) Nunc Pro Tunc to the Petition Date* [Docket No. 162] (the "Retention Order"), which authorizes Cushman & Wakefield to be compensated on a commission basis, and to be reimbursed for expenses incurred by Cushman & Wakefield, for services related to those outlined in its engagement agreement with the Debtor. Specifically, Cushman & Wakefield is to be (i) paid a commission of 1.5% (or a minimum of $500,000.00) of the total purchase price of the sale of the Debtor's assets and (ii) reimbursed for costs, not to exceed $15,000.00, including, but not limited to, costs related to travel and maintaining the virtual data site containing due diligence material for prospective purchasers.

C.     **The Bidding Procedures and the Sale**

8.     On March 26, 2019, the Debtor filed the *Debtor's Motion for Entry of Orders (I) Approving Bid Procedures, (II) Authorizing the Debtor to Offer Certain Bid Protections to Stalking Horse, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Authorizing (A) the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (V) Approving the Forms of Notices Related to the Sale, and (VI) Granting Related Relief* [Docket No. 164] seeking, among other things, (i) approval of certain bid procedures (the "Bid Procedures") with respect to the Sale of substantially all of the Debtor's assets (the "Assets"); (ii) authorization to sell the Debtor's Assets free and clear of all liens, claims, interests and encumbrances; and (iii) approval of certain procedures to assume and assign certain executory contracts and unexpired leases of the Debtor in connection with the Sale of the Assets by the Debtor.

9.     On April 22, 2019, the Court entered the *Order (I) Approving Bid Procedures, (II) Authorizing the Debtor to Offer Certain Bid Protections to Stalking Horse, (III) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Approving the Forms of Notices Related to the Sale, and (V) Granting Related Relief* [Docket No. 223], which approved, among other things, the Bid Procedures.

10.    After consulting with the Debtor's professionals to identify the most likely candidates to purchase the Debtor's Assets, Cushman & Wakefield began contacting potential buyers. Cushman & Wakefield identified over 750 parties as potential purchasers, including strategic for-profit and not-for-profit investors, real estate and private equity investors, and real estate investment trusts. Of those contacted, over ninety (90) signed confidentiality agreements

and received additional information from Cushman & Wakefield regarding the Debtor's business and Assets.

11. On April 26, 2019, the Debtor received several letters of intent ("LOIs") from potential stalking horse bidders. After carefully considering each of the LOIs and consulting with counsel for the Bond Trustee and Committee, the Debtor engaged in extensive negotiations with Prairie Landing Community, Inc., an Indiana not-for-profit corporation and an affiliate of BHI Retirement Communities, Inc., to serve as the stalking horse (the "Stalking Horse").

12. On June 13, 2019, the Debtor entered into an asset purchase agreement (the "Stalking Horse APA") with the Stalking Horse pursuant to which the Debtor agreed to sell its Assets to the Stalking Horse, subject to higher and better offers.

13. In order to ensure that maximum value was received for its business and Assets, the Debtor, with the assistance of Cushman & Wakefield, conducted an open-market bidding process in which qualified bidders were able to submit offers that were higher and better than the offer submitted by the Stalking Horse on all or a portion of the Debtor's Assets.

14. The deadline for any potential bidders to submit bids intending to compete with the Stalking Horse APA was July 16, 2019 at 4:00 p.m. (prevailing Central Time) (the "Bid Deadline"). The Debtor did not receive any other bids by the Bid Deadline and, therefore, deemed the Stalking Horse the successful bidder.

15. On August 2, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Between the Debtor and Prairie Landing Community, Inc.; (II) Authorizing the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims, Interests and Encumbrances, Except for Certain Assumed Liabilities; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith;*

*and (IV) Granting Related Relief* [Docket No. 318] (the "Sale Order"), which approved, among other things, the Sale of the Debtor's Assets pursuant to section 363 of the Bankruptcy Code.

16. On August 30, 2019, the Debtor and the Stalking Horse closed on the Sale of the Assets pursuant to the Stalking Horse APA for $61,000,000.00 (the "Purchase Price").

**COMPENSATION REQUESTED**

17. Cushman & Wakefield seeks the allowance and payment, on a final basis, for professional services rendered in the sum of $915,000.00 during the Compensation Period.

18. All services for which compensation is requested by Cushman & Wakefield were performed for or on behalf of the Debtor. Cushman & Wakefield seeks the allowance and payment of compensation for professional services rendered totaling $915,000.00, or 1.5% of the Purchase Price, during the Compensation Period.

19. During the Compensation Period, Cushman & Wakefield received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between Cushman & Wakefield and any other person, other than the executive directors of Cushman & Wakefield, for the sharing of compensation to be received for services rendered in this Chapter 11 Case.

20. To the best of Cushman & Wakefield's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the United States Trustee's Guidelines for Reviewing Applications for Compensation filed under 11 U.S.C. § 330 in (1) larger chapter 11 cases by those seeking compensation who are not attorneys, (2) all chapter 11 cases below the larger case thresholds, and (3) cases under other chapters of the Bankruptcy Code (the "Guidelines"), the Guidelines for Compensation and Expense Reimbursement of Professionals for

the United States Bankruptcy Court for the Northern District of Texas, Rule 2016-1 of the Local Rules.

## ACTUAL AND NECESSARY EXPENSES

21. Cushman & Wakefield seeks the allowance and reimbursement, on a final basis, of actual and necessary expenses incurred during the Compensation Period in the sum of $11,538.11. Cushman & Wakefield charges its clients for expenses including, among other things, travel, maintaining the virtual site containing due diligence material, and miscellaneous expenses. A summary of actual and necessary expenses incurred by Cushman and Wakefield during the Compensation Period is included in **Exhibit C**.

## SUMMARY OF SERVICES RENDERED

22. As reflected in the engagement agreement dated January 23, 2019 (the "Engagement Agreement"),[2] attached hereto as **Exhibit A**, Cushman & Wakefield was retained as the sole selling agent on behalf of the Debtor including, but not limited to:

   i. the exclusive right to sell the real property located at 1335 South Guilford Road, Carmel, Indiana 46032 (the "Real Property") as well as all other tangible and intangible assets related to the operating of the property as a continuing care retirement community;

   ii. conducting an on-site visit of the Real Property and determining what further information and diligence items are needed to support the sale process;

   iii. assembling, distributing, soliciting, and marketing of the sale of the Real Property to a broad audience;

   iv. assisting all parties in interest with the data on the local and national continued care retirement community market;

   v. preparation of marketing materials relating to the sale to furnish to prospective participants;

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Engagement Agreement.

      vi.      coordinating and circulation of the initial Letters of Intent and offering memorandum to all interested parties;

      vii.     execution of definitive agreements with the Stalking Horse; and

      viii.    providing the Debtor with monthly written updates and weekly oral updates on the marketing and sale efforts as well as they status of any discussions with the Stalking Horse and/or potential buyers.

23. The managers, associates, and employees of Cushman & Wakefield, who have rendered professional services in the Chapter 11 Case during the Compensation Period are: David Kliewer, Allen McMurtry, and Paul Carr.

**TERMS AND CONDITIONS OF COMPENSATION OF CUSHMAN & WAKEFIELD**

24. The terms of Cushman & Wakefield's compensation for the agreed-upon services are set forth in the Engagement Agreement. Specifically, as set forth in the Engagement Agreement, Cushman & Wakefield is entitled to the following compensation for its services:

      i.       commission of 1.5% (or a minimum of $500,000.00) of the final purchase price if the solicitation process ran by Cushman & Wakefield produces a closed transaction with any party other than Lifespace Communities, Inc. or an affiliate of Lifespace Communities, Inc.; and

      ii.      reimbursement of out-of-pocket expenses reasonably incurred in the preparation of marketing materials for the Project, not to exceed fifteen thousand dollars ($15,000.00).

**VALUATION OF SERVICES**

25. The nature of the work performed by Cushman & Wakefield is fully set forth in the invoice attached hereto as **Exhibit B**. The reasonable value of the services rendered by Cushman & Wakefield to the Debtor during the Compensation Period is $915,000.00.

**RELIEF REQUESTED**

26. By this Application, Cushman & Wakefield respectfully seeks entry of an order:

      i.       allowing and awarding, on a final basis, compensation for professional services rendered by Cushman & Wakefield during the Compensation Period totaling $915,000.00 and the reimbursement of expenses incurred by

    Cushman & Wakefield during the Compensation Period totaling $11,538.11;

 ii. authorizing the Debtor to remit payment to Cushman & Wakefield for the compensation and reimbursement sought herein; and

 iii. granting such other and further relief as this Court deems just and proper.

## **BASIS FOR RELIEF**

27. Section 330 of the Bankruptcy Code governs compensation of professionals in a bankruptcy case and provides that, when determining the amount of reasonable compensation to award to a professional, the Court should consider the nature, extent, and value of the services to the bankrupt estate and all other relevant factors, including the following:

 i. the time spent on such services;

 ii. the rates charged for such services;

 iii. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

 iv. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

 v. with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

 vi. whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. § 330(a)(3).

28. Cushman & Wakefield rendered thorough and complete services to the Debtor, including among other things: (i) preparing the offering, marketing or other transaction materials concerning the Project; (ii) assembling and distributing a marketing teaser to generate awareness and interest in the Sale of Real Property; and (iii) facilitating a negotiation process to select a

qualified "stalking horse" bidder for an auction and subsequent Sale. Cushman & Wakefield has made every effort to minimize its costs while providing the highest quality of real estate brokerage services. In addition, tasks were delegated to associates where appropriate. Cushman & Wakefield submits that its services to the Debtor have conferred a significant benefit to the estate in a cost–effective manner.

29. Section 330(a)(1)(B) of the Bankruptcy Code permits for reimbursement for actual and necessary expenses. Cushman & Wakefield's services and expenses incurred during the Compensation Period constitute only those necessary expenses that were incurred for the benefit of the Debtor's estate. Cushman & Wakefield has properly requested reimbursement of only actual, necessary and appropriate expenses. The expense summary of the actual and necessary expenses incurred by Cushman & Wakefield on behalf of the Debtor is attached hereto as **Exhibit C**.

30. No agreement or undertaking exists between Cushman & Wakefield and/or any third person for the sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Debtor.

31. Pursuant to the standards set forth in sections 330 and 331 of the Bankruptcy Code, Cushman & Wakefield submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

## NOTICE

32. Notice of this Application shall be provided to: (i) counsel for the Debtor; (ii) the U.S. Trustee; (iii) counsel for UMB Bank, N.A., as Bond Trustee; (iv) counsel for the Committee; and (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002. Any objections to this Application must be in writing, and served timely so as to be received no later than **December 6, 2019** at **4:00 p.m. (Central Standard Time)**.

## CONCLUSION

**WHEREFORE**, Cushman & Wakefield respectfully requests that the Court enter an order, in substantially the form attached hereto as **Exhibit D**, (i) allowing and authorizing, on a final basis, payment of compensation totaling $915,000.00 for services rendered by Cushman & Wakefield during the Compensation Period, (ii) allowing and authorizing, on a final basis, reimbursement of actual and necessary expenses totaling $11,538.11 during the Compensation Period for a total award of $926,538.11; and (iii) granting such other and further relief as the Court may deem proper.

Dated: November 7, 2019
    Dallas, Texas

Respectfully submitted,

**CUSHMAN & WAKFIELD, U.S., INC.**

By: */s/Allen McMurtry*
Allen McMurtry, Executive Director
One Tampa City Center, Suite 3300
Tampa, Florida 33602
Telephone: (813) 349-8349
E-mail: allen.mcmurtry@cushwake.com

*Real Estate Broker to the Debtor*