## EXHIBIT A

**Engagement Agreement Dated January 23, 2019**

Cushman & Wakefield
4301 Anchor Plaza Parkway, Suite 400
Tampa, FL 33634

## EXCLUSIVE RIGHT TO SELL AGREEMENT

January 23, 2019

Mr. Louis E. Robichaux IV, Chief Restructuring Officer
Mayflower Communities, Inc.
15601 Dallas Parkway, Suite 200
Dallas, Texas 75001

Mr. Collier:

Mayflower Communities, Inc. (The Barrington of Carmel) (the "**Owner**") hereby appoints Cushman & Wakefield U.S., Inc. ("**C&W**") as its sole selling agent and grants to C&W the exclusive right to sell: (i) the real property located at 1335 South Guilford Road, Carmel, IN 46032 (the "**Property**"), and (ii) the going concern business and all other tangible and intangible assets related to operating the Property as a continuing care retirement community (the "**Business**", and together with the Property, the "**Project**") as provided below.

1. Term. The term of this agreement (the "**Agreement**") will commence on January 23, 2019 and will expire on July 23, 2019 (the "**Expiration Date**").

2. Services. C&W agrees that it will use commercially reasonable efforts to solicit a sale of the Project to a satisfactory purchaser(s), upon terms and conditions satisfactory to Owner in its sole and absolute discretion and subject to procedures to be established by the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") in the chapter 11 case Owner intends to file (the "**Bankruptcy Case**"). For the avoidance of doubt and notwithstanding anything herein to the contrary, C&W understands and acknowledges that Owner strongly prefers "all cash" transactions in exchange for a full transfer of ownership of the Project however this preference shall be subject to Bankruptcy Court approval. Transactions that include assumption or restructuring of existing bond indebtedness or seller financing are not favored. Should C&W deem it necessary or advisable or should local laws require, C&W shall have the right to solicit the cooperation of a local licensed real estate broker to assist C&W in representing Owner in providing the services hereunder. To the extent requested by the Owner and appropriate under the circumstances, C&W agrees to perform the following services:

    a. Conduct the process to facilitate a sale of the assets and going concern business of the Owner subject to Bankruptcy Court approval;
    b. Conduct a site-visit of the Project and determine what further information & diligence items are needed to support the process;
    c. Assemble and distribute a marketing teaser to generate awareness and interest in the sale of the Project;
    d. Assemble, distribute, solicit and market the sale of the Project to a broad audience through and including:
        i. Prepare offering, marketing, or other transaction materials concerning the Project and the transaction;
        ii. Establish and maintain a virtual data room ("**VDR**");
        iii. Interact with interested parties to generate bids;
        iv. Facilitate a negotiation process to select a qualified 'stalking horse' bidder for an auction;
        v. Assisted the Owner and its advisors in negotiating an asset purchase agreement or equivalent agreement;
        vii. Assist other professionals employed by Owner to close and consummate the transaction, and;

Cushman & Wakefield
4301 Anchor Plaza Parkway, Suite 400
Tampa, FL 33634

        viii. Participate in bankruptcy court hearings with respect to the matters upon which C&W has provided advice, including, as relevant, coordinating with C&W's legal counsel with respect to testimony in connection therewith.

    e. Advise the Owner and parties in interest of current conditions in the local and national relevant skilled nursing and/or senior living market, and other general information and economic data;

    f. Solely with respect to C&W's involvement pursuant to this Agreement, coordinate with Owner, creditors and other interested parties as necessary and interface with counsel, other outside professionals and representatives of the Owner and parties in interest in the Bankruptcy Case, and;

    g. Attend meetings and conference calls with Owner and other parties in interest as needed.

    h. The parties agree that the below planned milestones are target dates, subject to change after consultation with Owner and the parties in interest in the Bankruptcy Case:

        i. Populate VDR by February 1, 2019;

        ii. Circulate marketing teaser and begin process to enter into confidentiality agreements with interested parties by February 4, 2019;

        iii. Circulate Offering Memorandum to interested parties by February 18, 2019;

        iv. Receive initial Letters of Intent by March 20, 2019; and,

        v. Execute definitive agreements with Stalking Horse party (subject to overbid process and Bankruptcy Court approval) by April 24, 2019.

3. <u>Insolvency Proceeding</u>: The Owner intends to file the Bankruptcy Case and agrees to use its reasonable best efforts to ensure that the Bankruptcy Court approves this Agreement, *nunc pro tunc* to the date the insolvency proceeding was commenced.

4. <u>Core Team</u>. Allen McMurtry, an Executive Director at C&W, and other C&W personnel will be primarily responsible for this engagement.

5. <u>Marketing</u>. C&W will prepare marketing materials relating to the Project to furnish to prospective participants. Owner shall approve all materials relating to the Project to be provided to prospective participants and any and all advertising and other collateral material, if any, prepared by or for C&W with respect to Project. C&W shall be responsible for the out-of-pocket expenses reasonably incurred in the preparation of marketing materials for the Project. Owner agrees to reimburse C&W for such costs, including, but not limited to, costs related to travel and maintaining the virtual data site containing due diligence material. Such reimbursable costs to be incurred by C&W shall not exceed fifteen thousand dollars $15,000. C&W will provide documentation of all such expenses to be reimbursed by Owner.

6. <u>Referrals</u>. During the term of this Agreement, Owner will refer to C&W all inquiries and offers received by Owner with respect to the Project, regardless of the source of such inquiries or offers.

7. <u>Commission</u>. If, during the term hereof, Owner sells any interest in the Project, whether by affiliation transaction or sale to a purchaser(s) or affiliation partner, Owner will pay to C&W a commission in accordance with the attached "Exhibit A: Schedule of Commissions." Any commissions earned by C&W hereunder shall be paid in full by Owner as soon as authorized by the Bankruptcy Court. Except as otherwise provided for herein, if a sale of the Project or affiliation transaction does not close for any reason, C&W shall not be entitled to a commission. Within 10 days after the Expiration Date, C&W will provide to Owner a list of prospective purchasers to whom the Project was submitted for consideration by C&W during the term (the "***Buyer Contact List***"). If a prospective purchaser or affiliation partner, appearing on the Buyer Contact List, enters into a purchase and sale agreement within 180 days after the end of the term, and thereafter the sale is closed, Owner will pay a commission to C&W as provided above. Owner agrees that such 180-day period will be extended while actual negotiations are taking place with any prospective purchaser or affiliation partner that appears on the Buyer Contact List.

Cushman & Wakefield
4301 Anchor Plaza Parkway, Suite 400
Tampa, FL 33634

8. <u>Outside brokers</u>. If C&W recognizes an outside broker representing the purchaser in a transaction for which a commission is payable hereunder, C&W will advise such broker that it must look to its own client for payment of any and all compensation which may become due it for the proposed transaction. Except as discussed in Section 2, it is acknowledged and agreed that C&W shall not be required to share the commission payable hereunder with any outside broker. In no event whatsoever shall Owner be required to pay any commission to any outside broker.

9. <u>Fees and Expenses</u>. If either party commences litigation against the other party to enforce its rights under this Agreement, the prevailing party will be entitled to recover from the other party the costs and expenses (including reasonable attorneys' fees) incurred.

10. <u>Authority</u>. Owner represents that it is in fact the owner of the Project and has the right to sell the Project. The individuals signing below represent that they are authorized to sign this Agreement on behalf of the entity indicated.

11. <u>Professional Advice</u>. C&W recommends that Owner obtain legal, tax or other professional advice relating to this Agreement and the proposed sale of the Project as well as the condition and/or legality of the Project, including, but not limited to, the Project's improvements, equipment, soil, tenancies, title, environmental aspects and compliance with the Americans with Disabilities Act. C&W will have no obligation to investigate any such matters unless expressly otherwise agreed to in writing by Owner and C&W. Owner further agrees that in determining the financial soundness of any prospective purchaser, Owner will rely solely upon its own investigation and evaluation, notwithstanding C&W's assistance in gathering any financial information.

12. <u>Communication</u>. C&W will provide Owner a monthly written update and weekly oral updates, on the marketing effort and the status of any discussions with any potential buyers. Representatives of C&W will also make themselves available to the Owner to discuss the transaction solicitation process on a monthly basis, or more frequently as requested by the Owner. C&W shall participate in bi-weekly (or more frequently if reasonably requested) a representative of Owner will be present for any direct discussions with the Trustee and its professionals. In addition, C&W shall provide the Trustee and its professionals with copies of all written materials relating to the sale of the Project, including, without limitation, marketing materials, the confidential offering memorandum, all transaction documents, potential interested party lists, correspondence between potential interested parties and the Company or its representatives, and all offers received.

13. <u>OFAC</u>. Each party represents and warrants to the other party that it, and all persons and entities owning (directly or indirectly) an ownership interest in it: (a) are not, and will not become, a person or entity with whom a party is restricted from doing business with under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order 13224 Blocking Project and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action; and (b) are not knowingly engaged in, and will not knowingly engage in, any dealings or transactions or be otherwise associated with such persons or entities described in clause (a) above.

14. <u>Anti-Bribery & Corruption</u>. Each party represents and warrants to the other that it (and any party acting on its behalf) has not, in order to enter into this agreement, offered, promised, authorized or made any payments or transfers of anything of value which have the purpose or effect of public or commercial bribery, kickbacks or other unlawful or improper means of doing business ("Prohibited Activity") and will not engage in Prohibited Activity during the term of this agreement.

In the event of any violation of this section, the non-offending party shall be entitled to immediately terminate this agreement and take such other actions as are permitted or required to be taken under law or in equity.

Cushman & Wakefield
4301 Anchor Plaza Parkway, Suite 400
Tampa, FL 33634

15. Miscellaneous. This Agreement shall be governed by the laws of the State of Delaware, without giving effect to principles of conflicts of law. The Bankruptcy Court shall have sole and exclusive jurisdiction over any disputes. This Agreement constitutes the entire agreement between the parties regarding the subject matter herein, and no amendments, changes or modifications may be made to this Agreement without the express written consent of each of the parties. If any term or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms and provisions of the Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. No failure or delay by a party in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or prohibit any other or further exercise of any right hereunder. This Agreement shall benefit and be binding upon the parties and their respective successors and assigns. This Agreement may be executed and delivered (including by facsimile, "pdf" or other electronic transmission) in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. The following contact information shall be used for noticing purposes related to this Agreement.

| | |
|---|---|
| C&W: | Cushman & Wakefield U.S., Inc.<br>One Tampa City Center, Suite 3300<br>Tampa, Florida 33602<br>Attention: Allen McMurtry |
| OWNER: | Chairman of the Board<br>Mayflower Communities, Inc. (The Barrington of Carmel)<br>15601 Dallas Parkway, Suite 200<br>Dallas, Texas 75001 |
| WITH A COPY TO: | Thomas R. Califano, Esq.<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, 27th Floor<br>New York, NY 10020-1104 |

[Signature Page Follows]

Cushman & Wakefield
4301 Anchor Plaza Parkway, Suite 400
Tampa, FL 33634

Owner and C&W acknowledge receipt of a copy of this Exclusive Right to Sell Agreement and accepts the terms and conditions contained in this Agreement.

**IN WITNESS WHEREOF,** Owner and C&W have caused this agreement to be executed as of the date first above written.

**OWNER: MAYFLOWER COMMUNITIES INC. (THE BARRINGTON OF CARMEL)**

Signature: *[signature]*
Name: Louis E. Robichaux IV
Title: Chief Restructuring Officer
Date: January 28, 2019

**AGREED:**
**CUSHMAN & WAKEFIELD U.S., Inc.**

By: *[signature]*
Name: Timothy J. Micitta
Title: Managing Principal
Date: 1/31/19

Cushman & Wakefield
4301 Anchor Plaza Parkway, Suite 400
Tampa, FL 33634

## EXHIBIT A
SCHEDULE OF COMMISSIONS FOR SALE

1. **COMMISSION**

   *Asset Sale*
   The commission percentage payable to C&W is set forth below. The commission payable to C&W shall be calculated as the applicable percentage multiplied by the total gross sales proceeds ("**Gross Proceeds**") received by Owner or Trustee from the transaction (excluding any operating or debt service reserve or other funds held by or for the benefit of the Trustee or the Owner) as computed below.

   The commission shall be computed based upon the total gross sales proceeds received by Owner from the sale of the Project. In calculating the gross sales proceeds of any sale of the Project, the following shall be excluded from the calculation: (i) the amount of any mortgages, loans or other obligations of Owner assumed by the purchaser or other debt or non-cash proceeds retained or received by the Trustee; and (ii) any operating, reserve or other funds held by or on behalf of the Trustee or Owner. In calculating the gross sales proceeds of any sale of the Project the following shall be included in the calculation: the sales price of any fixtures or other personal property (exclusive of any operating or debt service reserve or other funds held by or on behalf of the Trustee or Owner) sold by separate agreement between Owner and purchaser as part of the overall sale of the Project, it being understood that such inclusion shall not increase the commission above the amount of the commission payable to C&W had such fixtures or other personal property not been sold by separate agreement.

   Commission percentage and minimum commission amount shall be one of the following, as applicable:

   - **1.5%** and **$500,000**, respectively, if the solicitation process run by C&W produces a closed transaction with any party other than Lifespace Communities, or an affiliate of Lifespace Communities; or,

   - **1.125%** and **$400,000**, respectively, if the solicitation process run by C&W produces a closed transaction with Lifespace Communities, or an affiliate of Lifespace Communities.

   If as of the Expiration Date the Project is not under agreement and an extension of the listing is desired, the parties agree that an additional retainer and modification to the minimum fee will be negotiated between the parties.

2. **TIME OF PAYMENT**

   The commission shall be earned, due and payable in full at the time of the closing of the transaction.